**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison L. Mangiatordi (AL 1020)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800
www.PeltonGraham.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YASER OMAR, EMMANUEL GARCIA, and CHARLES GARCIA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>1 FRONT STREET GRIMALDI, INC. d/b/a GRIMALDI'S PIZZERIA, SIXTH AVENUE GRIMALDI, INC. d/b/a GRIMALDI's PIZZERIA, GRIMALDI'S LUNA PARK INC. d/b/a GRIMALIDI'S PIZZERIA, FRANK CIOLLI, and JOHN DOES #1-45, Jointly and Severally,<br><br>Defendants. | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Yaser Omar, Emmanuel Garcia, and Charles Garcia (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief and the investigation of their counsel as to other matters, allege as follows:

## I.  INTRODUCTION

1.      Defendant Frank Ciolli owns 1 Front Street Grimaldi, Inc. ("Front Street"), Sixth Avenue Grimaldi, Inc. ("Sixth Avenue"), Grimaldi's Luna Park Inc. ("Luna Park") and many other corporate entities doing business around the United States under the trade name "Grimaldi's Pizzeria" (sued herein as John Does #1-45), which comprise one of the most famous pizzeria chains in New York City. Grimaldi's Pizzeria (or Grimaldi's) is well-known for its coal-burning ovens and booming cash-only, whole-pies only (no slices), no reservation and no delivery business.

2.      The first and most famous Grimaldi's, located at 1 Front Street in Brooklyn, under the Brooklyn Bridge, is a major tourist destination and is constantly busy, typically with a line out the door and down the block.

3.      While Ciolli opened two (2) additional Grimaldi's locations in Manhattan, both were closed by the state of New York for failure to pay certain taxes, however, one has since re-opened.

4.      In or around summer of 2012, Ciolli opened Grimaldi's located in Coney Island.

5.      According to one of their websites, www.grimaldispizzeria.com, Ciolli owns over 45 Grimaldi's located around the United States and is seeking to expand internationally.

6.      Plaintiffs worked for Defendants as waiters, busboys and counter employees at four (4) of the Grimaldi's locations in New York City.

7.      For their work as waiters and busboys,  despite working thirteen to fifteen (13-15) hours per day, four to five (4-5) days per week, Plaintiffs either received no salary or a fixed salary of forty to sixty-dollars ($40-$60) per week, plus tips, regardless of the number of hours worked that week or which restaurant they worked in.

8.      For their work as counter employees, Plaintiffs were paid a per-shift rate of one-

hundred dollars ($100) per shift and did not receive tips.

9.      Plaintiffs who worked as waiters or busboys were not paid minimum wage and Plaintiffs who worked as waiters, busboys or counter employees never received overtime pay. Moreover, Plaintiffs received their wages, if any, in cash and were not provided wage statements or wage notices as were required under the New York Labor Law.

10.      Plaintiffs bring this action to recover unpaid minimum wage and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread-of-hours premiums and failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

11.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants throughout the United States and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 ("Rule 23") class of wait staff, busboys and counter employees working for Defendants in New York.

## II.  JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

13.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

14.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.   THE PARTIES

**A.     Plaintiffs:**

1.      Plaintiff Yaser Omar ("Omar") has been, at all relevant times, an adult individual residing in Queens County, New York.

2.      Plaintiff Emmanuel Garcia ("E. Garcia") has been, at all relevant times, an adult individual residing in Queens County, New York.

3.      Plaintiff Charles Garcia ("C. Garcia") has been, at all relevant times, an adult individual residing in Kings County, New York.

4.      Throughout the relevant time period, each of the Plaintiffs worked for Defendants in their pizzeria restaurants located in Kings County and New York County.

5.      Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

**B.     Defendants:**

6.      Defendant 1 Front Street Grimaldi, Inc. is an active New York Business Corporation and, according to the New York State Department of State Division of Corporations, maintains a principal executive office at 673 City Island Avenue, Bronx, NY 10464.

7.      Defendant Sixth Avenue Grimaldi, Inc. is an active New York Business Corporation and, according to the New York State Department of State Division of Corporations, maintains a principal executive office at 656 Sixth Avenue, New York, NY 10010.

8.      Defendant Grimaldi's Luna Park Inc. is an active New York Business Corporation and, according to New York State Department of State Division of Corporations, maintains a principal executive office at 6430 Yorktown Circle, E Syracuse, New York 13057.

9.      John Does #1-45 represent Grimaldi's locations located around the United States.

10.     The corporate entities listed in paragraphs 8 through 11 are hereinafter referred to collectively as the "Corporate Defendants."

11.     Defendant Frank Ciolli ("Ciolli" or the "Individual Defendant" and, together with the Corporate Defendants, the "Defendants" or "Grimaldi's") is the sole owner of Front Street, Sixth Avenue and Luna Park.

12.     Upon information and belief, Defendant Ciolli owns John Does #1-45 with his son, Joseph Ciolli.

13.     The Individual Defendant has been the owner, director, officer and majority shareholder of Corporate Defendants throughout the Class and Collective Action Periods.

14.     The Individual Defendant participated in the day-to-day operations of Corporate Defendants and acted intentionally and maliciously in his direction and control of Plaintiffs and Defendants' other similarly situated employees.

15.     The Individual Defendant set Plaintiffs' terms and conditions of employment and was responsible for Defendants' failure to pay all required minimum wages, overtime premium pay and spread-of-hours pay as well as Defendants' failure to provide wage notices and wage statements.

16.     Based upon his role directing and controlling Plaintiffs and Defendants' other employees, the Individual Defendant is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and as such is jointly and severally liable with Corporate Defendants.

17.     Upon information and belief, the Individual Defendant was involved in the direct supervision and control of Defendants' employees, had the power to hire and fire employees, determined the rate and method of employee pay and maintained Defendants' payroll records.

18.     At all relevant times, each of the Corporate Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

19.     Upon information and belief, at all relevant times, each of the Corporate Defendants has had gross revenues in excess of $500,000.00.

20.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Collective Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

21.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

22.     Defendants are part of a single integrated enterprise (hereinafter referred to as the "Grimaldi's Enterprise") that jointly employed Plaintiffs and similarly situated employees throughout the relevant time period.

23.     Upon information and belief, the Grimaldi's Enterprise shared a common management and were centrally controlled, operated and owned by Individual Defendant Ciolli.

## IV.   COLLECTIVE ACTION ALLEGATIONS

24.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All individuals employed by Defendants at any time since October 18, 2013 and throughout the entry of judgment in this case (the "Collective Action Period") who were employed as wait staff, busboys, and counter employees (the "Collective Action Members").

25.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies including, but not limited to paying Plaintiffs and other similarly situated

employees at a weekly salary for all hours worked which did not compensate them at minimum wage for all hours worked or at overtime wages for hours worked in excess of forty (40) in a given week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally required minimum wage for all hours worked or overtime premium payments for hours worked in excess of forty (40) per week.

26.     Plaintiffs and the Collective Action Members have substantially similar, if not the same, compensation structures.

## V.  <u>NEW YORK CLASS ACTION ALLEGATIONS</u>

27.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All individuals employed by Defendants in New York at any time since October 18, 2010 and throughout the entry of judgment in this case (the "Class Period") who were employed as wait staff, busboys, and counter employees (the "Class Members").

28.     <u>The Class Members are readily ascertainable</u>.  The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

29.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

30.     Upon information and belief, there are in excess of forty (40) Class Members.

31.     <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not

limited to:

a. whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members not less than minimum wages for all hours worked each workweek;

c. whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums when they worked more than forty (40) hours in a given workweek;

d. whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

e. whether Defendants failed to provide Plaintiffs and the Class Members with a proper wage notice at the beginning of their employment and/or on February 1 of each year, as required by the NYLL;

f. whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g. whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

h. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

32. The answers to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

33.     <u>The Plaintiffs' claims are typical of the Class Members' claims</u>. The Plaintiffs, like all Class Members, are or were employees of Defendants who work or worked for Defendants pursuant to their corporate policies. The Plaintiffs, like all Class Members, were, *inter alia*, not paid minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours or a split shift, were not provided with wage notices on the date they were hired or on February 1 of each subsequent year, and were not provided with wage statements with their wages. If Defendants are liable to the Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

34.     <u>The Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between the Plaintiffs and the Class Members, and the Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

35.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

36.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

37.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## VI.   STATEMENT OF FACTS

### A.   Defendants' Pizzerias

38.    Patsy Grimaldi, the founder of Grimaldi's Pizzeria, opened up the first Grimaldi's Pizzeria at 19 Old Fulton Street, Broklyn, New York in 1990.

39.    In the late 1990s, Patsy Grimaldi retired and sold the name and franchise (except for the Hoboken locations) to Defendant Ciolli.

40.    Ciolli kept the first, and most famous, Brooklyn location open ever since, although in 2011 he moved from 19 Old Fulton Street to the current location at 1 Front Street[1]. In March of 2013, Ciolli opened up a second Grimaldi's location on at 462 Second Avenue in Manhattan and, in April of 2014, a third location at 656 Sixth Avenue in Manhattan.

41.    Upon information and belief, due to the non-payment of state taxes, in April 2014, New York State seized and closed the 462 Second Avenue location and, in August 13, 2016, seized and closed the Sixth Avenue location.

42.    The Sixth Avenue location was re-opened on or about October 9, 2016.

43.    Upon information and belief, Defendant Ciolli, together with his son, Joseph Ciolli, owns approximately forty-five (45) other restaurants under the corporate names JMC Restaurant Holdings, LLC and JMC Restaurant Holdings International, LLC doing business as Grimaldi's Pizzeria in and around the United States.

44.    At all relevant times, Defendants have been in the food service business.

45.    Upon information and belief, Ciolli has owned, operated and managed Front Street, Sixth Avenue and Luna Park over the past six (6) years.

46.    Upon information and belief, Defendants applied the same employment policies,

---

[1] When Ciolli moved to 1 Front Street, Patsy Grimaldi came out of retirement to open up a competing pizzeria he named Julianna's Pizza at 19 Old Fulton Street, the original Grimaldi's Pizzeria location in Brooklyn.

practices and procedures, including the unlawful policies complained of herein, to all wait staff at all of their Grimaldi's restaurants.

47.     Upon information and belief, Defendant Ciolli has taken an active role in ensuring that the Grimaldi's restaurants are run in accordance with his procedures and policies. To that end, Plaintiffs are usually supervised by managers who simply follow Defendant Ciolli's orders regarding the policies and procedures of Grimaldi's.

48.     Defendant Ciolli is in charge of hiring and firing employees, supervising employees, determining the hours worked by employees and handling the employee payroll.

**B.     Plaintiffs' Work for Defendants**

49.     **Plaintiff Omar** worked for Defendants as a waiter from in or around January 2011 through on or about August 13, 2016 (the "Omar Employment Period").

50.     For approximately the first one to two (1-2) weeks of the Omar Employment Period, Omar was trained at the original Grimaldi's location at 19 Old Fulton Street in Brooklyn, New York.

51.     After training, Omar worked at the Sixth Avenue location through in or around March 2013.

52.     Omar worked at the 462 Second Avenue location when it opened from in or around April 2013 through when Second Avenue was seized by New York State and closed in or around April 2014.

53.     Omar worked at Sixth Avenue from in or around April 2014 through in or around August 13, 2016, when Sixth Avenue was seized by New York State.

54.     From the beginning of the Omar Employment Period until in or around late 2012, Omar was not paid any wage or salary and would only work for tips.

55.     From in or around late 2012 and throughout the remainder of the Omar Employment Period, Omar was paid a salary of sixty dollars ($60) per week for all hours worked, plus tips.

56.     Throughout the Omar Employment Period, Omar typically worked four to five days per week, thirteen and a half (13.5) hours per day, for a total of between approximately fifty-four (54) and approximately sixty-seven and a half (67.5) hours per week.

57.     Omar was paid at the above weekly salary for all hours worked for Defendants, including hours worked over forty (40) in a given workweek. Omar and Defendants' other waiters did not receive overtime premiums of one and one-half (1.5) times their hourly rate for hours worked in excess of forty (40) hours per week.

58.     **Plaintiff E. Garcia** was employed by Defendants as a busboy, waiter and counter employee from in or around 2005 through in or around June 2014  (the "E. Garcia Employment Period").

59.     E. Garcia worked as a busboy at 19 Old Fulton Street from the beginning of the E. Garcia Employment Period until in or around 2008 when he began working as a waiter at 19 Old Fulton Street.

60.     E. Garcia worked as a waiter at Sixth Avenue from in or around 2010 through in or around March 2013.

61.     E. Garcia worked as a waiter and counter employee at the 462 Second Avenue location when it opened from in or around April 2013 through when Second Avenue was seized by New York State and closed in or around April 2014.

62.     E. Garcia then went back to work at Sixth Avenue until in or around June 2014.

63.     Throughout the E. Garcia Employment Period, E Garcia was paid sixty dollars

($60) per week, plus tips, for all hours worked as a busboy or waiter.

64.     Throughout the E. Garcia Employment Period, E. Garcia was paid $100 per six (6) hour shift as a counter employee.

65.     Throughout the E. Garcia Employment Period, E. Garcia typically worked four to five (4-5) days per week, thirteen and a half (13.5) hours per day, for a total of between approximately fifty-four (54) and approximately sixty-seven and a half (67.5) hours per week.

66.     E. Garcia was paid at the above weekly salary or shift rate for all hours worked for Defendants, including hours worked over forty (40) in a given workweek.

67.     **Plaintiff C. Garcia** was employed by Defendants as a waiter from in or around 2010 through in or around November of 2012  (the "C. Garcia Employment Period").

68.     From the beginning of the C. Garcia Employment Period through in or around the spring of 2012, C. Garcia worked as a waiter at Sixth Avenue.

69.     From in or around the summer of 2012, when Luna Park opened, through in or around October of 2012, C. Garcia worked at a waiter at Luna Park.

70.     C. Garcia then went back to work at Sixth Avenue as a waiter for the remainder of the C. Garcia Employment Period.

71.     Throughout the C. Garcia Employment Period, C. Garcia was paid forty dollars ($40) per week for all hours worked, plus tips.

72.     Throughout the C. Garcia Employment Period, C. Garcia typically worked four to five (4-5) days per week, thirteen and a half (13.5) hours per day, for a total of between approximately fifty-four (54) and approximately sixty-seven and a half (67.5) hours per week.

73.     C. Garcia was paid at the above weekly salary for all hours worked for Defendants, including hours worked over forty (40) in a given workweek.

74.     Plaintiffs and Defendants' other busboys, wait staff and counter employees did not receive overtime premiums of one and one-half (1.5) times their hourly rate for hours worked in excess of forty (40) hours per week.

75.     Plaintiffs and Defendants' other busboys, wait staff and counter employees were not paid an extra hour of pay at minimum wage for shifts or split-shifts spanning in excess of ten (10) hours.

76.     Defendants failed to provide Plaintiffs and the Class Members with proper wage notices at the time of hire or on February 1 of each year.

77.     Plaintiffs and the Class Members were paid in cash without any kind of paystub or wage statement. As such, Defendants failed to provide Plaintiffs and the Class Members with proper wage statements stating the hourly rate of pay, overtime rate of pay and number of hours worked each week.

78.     Upon information and belief, all of Defendants' busboys, wait staff and counter employees were paid in the same manner, regardless of which of Defendants' restaurant locations they worked in.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought On Behalf of Plaintiffs and the Collective Action Members)**

79.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

81.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought On Behalf of Plaintiffs and the Collective Action Members)**

83.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     By failing to pay Plaintiffs and the Collective Action Members overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty

(40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

85.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought On Behalf of Plaintiffs and the Class Members)

87.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

89.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought On Behalf of Plaintiffs and the Class Members)

90.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     During the period of time that Plaintiffs and the Class Members were employed by Defendants, they performed work for which they were not compensated in violation of the provisions of the NYLL. Specifically, Defendants violated the NYLL by failing to pay overtime wages for hours worked over forty (40) to Plaintiffs and the Class Members.

92.     Defendants willfully violated Plaintiffs' and the Class  Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations promulgated thereunder.

93.     Defendants' failure to pay overtime caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et al.

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS
### (Brought On Behalf of Plaintiffs and the Class Members)

94.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

96.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**SIXTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS</u>**
**(Brought On Behalf of Plaintiffs and the Class Members)**

97.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

98.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a

mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

99.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought On Behalf of Plaintiffs and the Class Members)**

100.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

101.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

102.  Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500)

per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided

for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and

injunctive and declaratory relief.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective

Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

h.    Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Aritlce 6 § 198(1)-b;

i.      One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
October 18, 2016

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
Alison L. Mangiatordi (AL 1020)
mangiatordi@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Grimaldi's, and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          YASER OMAR.
Signature                                 _____
                                          Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Grimaldi's, and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          _Emmanuel Garcia_____
Signature                                                    Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Grimaldi's, and/or its owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature                                        Printed Name