UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
YASER OMAR, EMMANUEL GARCIA,
and CHARLES GARCIA, *Individually and
On Behalf of All Others Similarly Situated*,

Plaintiffs,

-against-

1 FRONT STREET GRIMALDI, INC., d/b/a
GRIMALDI'S PIZZERIA, SIXTH AVENUE
GRIMALDI, INC., d/b/a GRIMALDI'S
PIZZERIA,   1215   SURF   AVE.
RESTAURANT CORP., d/b/a GRIMALDI'S
PIZZERIA, and FRANK CIOLLI, *Jointly and
Severally,*

Defendants.
-------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

**REPORT AND
RECOMMENDATION**
16 CV 5824 (LDH) (CLP)

 

This wage and hour case was commenced on October 18, 2016, by three individuals,

Yaser Omar ("Omar"), Emmanuel Garcia, and Charles Garcia (the "Named Plaintiffs") on behalf

of themselves and all others similarly situated, against defendants 1 Front Street Grimaldi, Inc.,

d/b/a Grimaldi's Pizzeria, Sixth Avenue Grimaldi, Inc., d/b/a Grimaldi's Pizzeria, 1215 Surf

Ave. Restaurant, d/b/a Grimaldi's Pizzeria, and Frank Ciolli, (collectively, "defendants"),

seeking damages based on defendants' failure to pay minimum wages and overtime under the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law

("NYLL") § 650 et seq., along with unpaid spread of hours wages, and failure to provide proper

wage notices and wages statements under the NYLL.

Presently pending before this Court on referral from the district court are plaintiffs'

motion for class certification and defendants' motion to dismiss, pursuant to Rule 12(b)(1) of the

Federal Rules of Civil Procedure.

For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion

for class certification be granted and defendants' motion to dismiss be denied.


FACTUAL BACKGROUND

As set forth more fully in this Court's Order dated May 8, 2018, granting plaintiffs'

motion to file a Third Amended Complaint, defendant Ciolli owns a number of pizzerias,

including one located at 1 Front Street under the Brooklyn Bridge ("Grimaldi's Brooklyn"), and

three others, 1215 Surf Avenue Restaurant, located on Coney Island, Sixth Avenue Grimaldi,

Inc., located at 656 Sixth Avenue[1] in Manhattan, and a Grimaldi's located at 242-01 61st

Avenue, Douglaston, New York.  (Id. ¶¶ 1, 2, 8[2]; see also Pls.' Mem.[3] at 3-4).  Plaintiffs allege

that each of the corporate defendants are employers, engaged in interstate commerce and/or the

production of goods for commerce within the definition set by the FLSA, with gross annual

revenues of more than $500,000; and that Ciolli is the owner, director, officer, and majority

---

[1] The Third Amended Complaint alleges that the Sixth Avenue location and a third restaurant, located at 462 Second Avenue, also in Manhattan, were seized and closed in August and April 2016, respectively, due to non-payment of taxes; the Sixth Avenue location re-opened in October 2016.  (Third Amended Complaint, dated May 9, 2018, ECF No. 44 ("Thrd Am. Compl.") ¶¶ 43-44).

[2] The Court notes that the Third Amended Complaint restarts the numbering of its paragraphs after the "Jurisdiction and Venue" section.  Paragraphs one and two cited here refer to those paragraphs within the "Introduction" section, while paragraph eight refers to the paragraph within the section entitled "The Parties."

[3] Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, filed June 29, 2018, ECF No. 52.

shareholder of the various corporate entities, responsible for the day-to-day operations of the corporate defendants.  (Thrd Am. Compl. ¶¶ 11-13, 17, 18; see also Pls.' Mem. at 4-5).

Named Plaintiffs allege that they worked for defendants in the pizza restaurants located in Kings County and New York County during the relevant time period.  (Thrd Am. Compl. ¶¶ 1-4; see also Pls.' Mem. at 6-8).  Plaintiffs allege that many of the employees and managers have worked for the business for many years and transferred between locations.  (Pls.' Mem. at 5). Plaintiff Omar alleges that he worked as a waiter from approximately January 2011 through August 13, 2016, receiving his training at the original Grimaldi's located on Old Fulton Street, and was then employed at the Brooklyn Bridge, Sixth Avenue, and Second Avenue locations until March 2013.  (Thrd Am. Compl. ¶¶ 51-52, 53-54; see also Pls.' Mem. at 7).

Plaintiff Emmanuel Garcia started at the Brooklyn Bridge location, first as a busser in 2005, and then as a waiter, beginning in 2008.  (Thrd Am. Compl. ¶¶ 59-63; Pls.' Mem. at 6). He claims that in 2010, he was invited by Ciolli to work at the Sixth Avenue location as a waiter and counter employee.  (Pls.' Mem. at 6).  A year or two later, he was transferred to the Second Avenue location, where he worked as a waiter and counter employee until the restaurant closed, and he was transferred back to the Sixth Avenue location.  (Id.)

Charlie Garcia was employed as a waiter from late April 2010 through November 2012, working mainly at the Sixth Avenue location, except for a period in the summer and fall of 2012 when he worked at the Coney Island location.  (Thrd Am. Compl. ¶¶ 68-72; Pls.' Mem. at 6). He returned to the Sixth Avenue location after three or four months at Coney Island.  (Pls.' Mem. at 7).

Each of the Named Plaintiffs allege that they worked for substantial periods of time without receiving any wages, just tips, and that they were typically paid off the books, except for

limited periods when Omar and Emmanuel Garcia received paychecks in addition to cash.  (Pls.'
Mem. at 7-8).  They claim, however, that the number of hours shown on the payroll records were
not accurate and they were not actually permitted to keep the amounts paid to them in checks.
(Id. at 8).  Even when they were paid wages, plaintiffs claim that they were only paid flat weekly
rates of $40 or $60 when working as servers and $16.00 an hour for counter work.  (Id. at 7).
All three claim that they typically worked in excess of 40 hours per week, except during the
period that the Sixth Avenue location was open 24 hours per day and employees were asked to
work "graveyard" shifts.  (Id. at 8).  Plaintiffs claim that they worked longer hours than the times
the restaurants were open because they were required to arrive an hour before the restaurant
opened to perform side work.  (Id.)

On behalf of themselves and other similarly situated Collective Action Members, the
Named Plaintiffs claim violations of the minimum wage and overtime requirements of the
FLSA, violations of the minimum wage, spread of hours, and overtime requirements of the
NYLL, and failure to comply with the wage notice and wage statement requirements of the
NYLL.  (Id. ¶¶ 80-103).

PROCEDURAL HISTORY

On January 18, 2017, the Named Plaintiffs moved for conditional certification of an
FLSA Collective action, and the Court authorized notice to be sent to all current and former
waiters, bussers, pizza makers, delivery employees, dishwashers, and counter employees who
worked at the Brooklyn Bridge, Sixth Avenue, and Coney Island locations at any time between
January 5, 2014 and January 19, 2017.  (Order, Jan. 19, 2017, ECF No. 23).  Defendants
identified 38 individuals who fit within the FLSA collective action definition, and of those,

4

seven opt-in plaintiffs joined the action by filing consent forms.  (Pls.' Mem. at 3).[4]  Following

the filing of the Third Amended Complaint on May 9, 2018, the parties engaged in discovery,

exchanging documents and taking the depositions of two of the Named Plaintiffs, defendant

Ciolli, and three managers.

Plaintiffs now seek to have the Court certify two classes:  1) the first is a class based on

the NYLL claims that defendants failed to provide wage notices and wage statements, consisting

of "all individuals employed by Defendants at any of the New York City Grimaldi's locations at

any time since October 18, 2010 and throughout the entry of judgment in this case . . . who were

employed as wait staff, busboys, counter employees, dishwashers, food prep employees, cooks

and pizza makers" (the "Class"); and 2) a second subclass based on the NYLL claims that

defendants failed to pay minimum wage, overtime premiums and spread-of-hours premiums,

consisting of "all individuals employed by Defendants at any of the New York City Grimaldi's

locations at any time since October 18, 2010 and throughout the entry of judgment in this action

who were employed as wait staff, busboys, and counter employees" ("the Subclass Claims").

(Id. at 1-2).  Named Plaintiffs also request that they be appointed class representatives for both

the Class and the Subclass; that plaintiffs' counsel, Pelton Graham LLC, be appointed as Class

Counsel; and that the Court direct the parties to confer on a Class Notice to be presented to the

Court and direct defendants to produce contact information.

Defendants oppose plaintiffs' motion for class certification, arguing that plaintiffs have

only identified 32 potential class plaintiffs, far below the presumptive numerosity requirement.

---

[4] Although plaintiffs state that there are five opt-in plaintiffs, the Court notes that in fact seven plaintiffs have joined the lawsuit.  (See Consent to become party in a collective action, ECF Nos. 5, 6, 7, 8, 10, 24, 26).

(Green Decl.[5] ¶¶ 11, 16).  In addition, defendants move to dismiss all New York Labor Law claims brought on behalf of the employees who work out of Grimaldi's Brooklyn location, because the New York State Department of Labor ("DOL") is in the process of investigating the location for violations of New York's minimum wage and overtime laws.  (Id. ¶ 5).  Thus, according to defendants, the DOL is representing the interests of all employees working out of the Grimaldi's Brooklyn location.  (Id. ¶ 10).

Since the number of potential class members needed to satisfy the numerosity requirement of Rule 23 may be affected by the determination on the motion to dismiss the employees at the Grimaldi's Brooklyn location, the Court addresses defendants' motion to dismiss first.

<u>DISCUSSION</u>

I.    <u>Defendants' Motion to Dismiss</u>

Defendants contend that in 2014, the New York State Department of Labor commenced an investigation into Grimaldi's Brooklyn, issuing a finding in 2016 that Grimaldi's Brooklyn had violated New York's minimum wage and overtime laws.  (Green Decl. ¶ 5).  Grimaldi's was asked to pay $158,235.58 to its employees in back wages, liquidated damages, and fees.  (Id.)  According to defendants' counsel, the Department of Labor recently revisited Grimaldi's Brooklyn and is currently in the process of inspecting its wage and hour practices.  (Id.)  Specifically, in March 2018, an investigator for the Department of Labor inspected various records of the employees of Grimaldi's Brooklyn and requested the production of various

---

[5] Citations to "Green Decl." refer to the Declaration of Scott Green in Further Support of Defendant[s'] Opposition to Class Certification and Support of Defendants' Motion to Dismiss, filed on August 31, 2018.

documents relating to this action.  (Id. ¶¶ 6, 7).  As of August 24, 2018, the investigation was

ongoing.  (Id. ¶ 7).

Defendants argue that the Court should decline subject matter jurisdiction and dismiss all

pending NYLL claims brought on behalf of Grimaldi's Brooklyn employees pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure.  (Defs.' Mem.[6] at 6).

### A.  Legal Standard:  Motion to Dismiss Pursuant to Rule 12(b)(1)

In determining whether there is subject matter jurisdiction over a claim, the court must

examine whether the complaint states "a right to recover under the laws of the United States."

Goldman v. Gallant Sec., Inc., 878 F.2d 71, 73 (2d Cir. 1989) (per curiam) (citing Bell v. Hood,

327 U.S. 678, 681 (1946)).  "A case is properly dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Rivera v.

Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 386-86 (E.D.N.Y. 2007).

When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction, the court must "accept as true all material factual allegations in the complaint."

Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted); see

also Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d at 387; Country Rock Cafe, Inc. v. Truck

Ins. Exch., 417 F. Supp. 2d 399, 402 (S.D.N.Y. 2006).  While the court will "'draw all

reasonable inferences in favor of plaintiff,'" Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d at

387 (quoting Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (quoting

Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000))), but see Forbes v. State Univ. of N.Y. at

---

[6] Citations to "Defs.' Mem." refer to defendants' Memorandum of Law in Opposition to Class
Certification and Support of Defendants' Motion to Dismiss Pursuant to F.R.C.P 12(b)(1), filed
August 31, 2018.

Stony Brook, 259 F. Supp. 2d 227, 232 (E.D.N.Y. 2003) (citations omitted) (holding that the

court will not draw inferences favorable to the party asserting jurisdiction), the plaintiff bears the

burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Makarova v. United States, 201 F.3d

at 113; Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

In analyzing subject matter jurisdiction under Rule 12(b)(1), the court must "give the

plaintiff's factual allegations closer scrutiny" than it would in the context of a motion to dismiss

pursuant to Rule 12(b)(6), "[b]ecause subject-matter jurisdiction focuses on the court's power to

hear the claim." Physicians Comm. For Responsible Medicine v. U.S. Environmental Protection

Agency, 451 F. Supp. 2d 223, 228 (D.C. Cir. 2006) (citing cases). The court is "not limited to

the allegations contained in the complaint," id. at 228, and may consider materials outside the

pleadings to resolve disputed jurisdictional facts. Makarova v. United States, 201 F.3d at 113;

Country Rock Cafe, Inc. v. Truck Ins. Exch., 417 F. Supp. 2d at 402; see also Coalition for

Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (holding that a court may

"consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

B.  Analysis

Defendants argue that in this case, the Court should decline to exercise subject matter

jurisdiction in light of the Younger abstention doctrine, which generally requires federal courts

to abstain from exercising jurisdiction over claims that involve ongoing state proceedings.

(Defs.' Mem. at 7, 8 (citing Younger v. Harris, 401 U.S. 37, 43-44 (1971))). The abstention

doctrine relies on the idea that where there is a state proceeding that provides an adequate forum

for addressing federal constitutional rights, the federal courts should abstain from interfering

8

with that exercise of jurisdiction.  Kugler v. Helfant, 421 U.S. 117, 124 (1975); see also Cullen
v. Fliegner, 18 F.3d 96, 103 (2d Cir.), cert. denied, 513 U.S. 985 (1994).

The Supreme Court, in Sprint Communications, Inc. v. Jacobs, clarified that district
courts should abstain from exercising jurisdiction only in three "exceptional circumstances."
571 U.S. 69, 78, 134 S. Ct. 584, 591 (2013).[7]  These involve:  "(1) 'ongoing state criminal
prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving
certain orders uniquely in furtherance of the state courts' ability to perform their judicial
functions.'"  Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty., 805
F.3d 425, 427 (2d Cir. 2015) (quoting Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 78).  The
Supreme Court explained that "these three 'exceptional' categories . . . define Younger's scope."
Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 78.  The Second Circuit has stated that "abstention
is generally disfavored, and federal courts have a virtually unflagging obligation to exercise their
jurisdiction."  Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673
F.3d 84, 100 (2d Cir. 2012); see also Lamont v. Farucci, No. 16 CV 7746, 2017 WL 6502239, at
*7 (S.D.N.Y. Dec. 18, 2017).  Indeed, "federal courts are obliged to decide cases within the
scope of federal jurisdiction.  Abstention is not in order simply because a pending state-court

---

[7] Prior to the Supreme Court's decision in Sprint Communications, Inc. v. Jacobs, federal courts
looked to three factors to determine whether to abstain:  1) whether there is an ongoing state
proceeding; 2) whether an important state interest is implicated in that proceeding; and 3)
whether the state proceeding affords the federal plaintiff an opportunity for judicial review of
federal constitutional claims.  Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S.
423, 432, 102 S. Ct. 2515, 2521 (1982); Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001).  In
Sprint Communications, Inc. v. Jacobs, the Supreme Court held that that these criteria are "not
dispositive," but instead are "additional factors appropriately considered by the federal court
before invoking Younger."  571 U.S. at 81; see also Dubin v. Cty. of Nassau, 277 F. Supp. 3d
366, 379 (E.D.N.Y. 2017).  Defendants cite these additional factors in their motion (Defs.' Mem.
at 9), but fail to discuss the categories set forth in Sprint.

9

proceeding involves the same subject matter." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 72

(citing New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373,

109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

Defendants argue that all of the conditions cited by Younger are present in this case.

According to defendants, the Department of Labor has an ongoing active state investigation into

the wage practices of Grimaldi's Brooklyn that covers potentially every alleged NYLL claim

that plaintiffs have raised. (Defs.' Mem. at 9). Citing the Second Circuit's decision in Diamond

"D" Construction Corp. v. McGowan, defendants argue that there is an important state interest in

having such wage and hour investigations conducted by the Department of Labor. (Id. (citing

282 F.3d 191, 198 (2d Cir. 2002) (holding that "[f]ederal interference with state proceedings, . . .

necessarily presumes that state court review will be inadequate, [and] affronts the dignity of the

state sovereign"))). Moreover, defendants contend that the Department of Labor will thoroughly

investigate plaintiffs' claims, and "[t]here is simply nothing those current and potential Plaintiffs

or class members could even attempt to recover in this litigation, which would not be available

to them via the NYS DoL."[8] (Id. at 10). Defendants argue that if their motion to dismiss these

class members is denied, there will be confusion resulting from divergent schedules and methods

of litigation, and the potential for inconsistent findings or damage calculations. (Id. at 11). In

addition, defendants express concern over being called to defend the same issues twice. (Id.)

---

[8] In the prior investigation, the DOL directed defendants to pay back wages, interest, liquidated
damages at 25% of the wages due, and a civil penalty. (See Pls.' Mem, Ex. 16). However,
beyond defendants' assertion that the pending DOL investigation will "remedy each and every
alleged NYLL violation of which plaintiffs complain" (Defs.' Mem. at 9), no further information
has been given to the Court regarding specific remedies that the current DOL investigation may
provide to plaintiffs. For example, it is unclear to the Court whether the DOL investigation
could result in damages to plaintiffs for defendants' alleged wage notice violations.

Plaintiffs oppose defendants' motion to dismiss, arguing first that <u>Younger</u> abstention should not apply here where the federal plaintiff is not seeking to enjoin or direct state court proceedings. (Pls.' Reply[9] at 3). Instead, plaintiffs rely on the decision in <u>Akwesi v. Uptown Lube & C/W, Inc.</u>, where the court rejected the argument that abstention was required when the Department of Labor had an ongoing investigation into the defendants' wage and hour practices under the NYLL, reasoning that the plaintiffs in <u>Akwesi</u> were not attempting to enjoin the investigation or shield themselves from the state efforts as would normally be the case where <u>Younger</u> is usually invoked. No. 07 CV 335, 2007 U.S. Dist. LEXIS 89605, at *13, *16 (S.D.N.Y. Nov. 30, 2007); <u>see also</u> <u>Devlin v. Kalm</u>, 594 F.3d 893, 895 (6th Cir. 2010) (reversing dismissal on <u>Younger</u> abstention grounds).

Plaintiffs contend that like the plaintiffs in <u>Akwesi</u> and <u>Devlin</u>, they are not seeking to interfere with or enjoin the Department of Labor's investigation into Grimaldi's Brooklyn. (Pls.' Reply at 4). Indeed, they claim that they only recently learned of the new investigation and that defendants, who were under a continuing obligation to update their responses to plaintiffs' discovery requests, had not, as of the date of the motion, provided plaintiffs with any discovery regarding the investigation. (<u>Id.</u>) Moreover, plaintiffs note that contrary to defendants' claim that they may be subjected to multiple payment amounts for the same wage violations, the case law is clear that employers can provide proof of payments made to the Department of Labor in defense of damages claimed in this action. (<u>Id.</u> (citing <u>Akwesi v. Uptown Lube & C/W, Inc.</u>, 2007 U.S. Dist. LEXIS 89605, at *13, *14)).

---

[9] Citations to "Pls.' Reply" refer to plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion For Class Certification and Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed September 17, 2018, ECF No. 58.

The Court agrees that at this point in time, there is no basis to dismiss the claims brought by plaintiffs.  Apart from defendants' counsel's affidavit, neither the Court, nor plaintiffs, apparently, have been provided with sufficient information about the ongoing Department of Labor investigation to even determine if there is an overlap between what the Department is currently investigating and what plaintiffs are alleging in their class claims.  See Lamont v. Farucci, No. 16 CV 7746, 2017 WL 6502239, at *8 (S.D.N.Y. Dec. 18, 2017) (declining abstention when insufficient information was provided that would have allowed the federal court to determine whether the federal lawsuit would cause "undue interference" with the Family Court proceedings).

Moreover, based on the information provided, the Court finds that the DOL investigation does not fall into any of the three categories identified in Sprint in that the DOL investigation is not a state criminal prosecution, it is not a civil enforcement proceeding "akin to a criminal prosecution," and it is not a civil proceeding "involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 78.  With respect to the second category, the Supreme Court explained that:

> [s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act.  In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action.  Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

Id. at 79.

Although the Court accepts as true defendants' assertion that a DOL audit appears to be underway, the Court does not have sufficient information to determine the nature and scope of

such an audit or whether such an audit would even culminate in the filing of a formal complaint or charges.  Certainly, at this time, the Court has not been notified that there are any ongoing state court proceedings, apart from an investigation, that would be compromised by plaintiffs' continuing to pursue their action here.  Furthermore, the Court notes that plaintiffs commenced this action in October 2016, almost a year and half before the new DOL investigation began in 2018.

Moreover, even if the claims here do overlap with the DOL investigation, this Court finds that the case is not in the proper posture for Younger abstention, because no one is trying to enjoin the Department's investigation, but the two cases are simply moving forward on parallel tracks.  See Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. at 72 (holding that "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter"); Torres v. DeMatteo Salvage Co., 34 F. Supp. 3d 286, 291-92 (E.D.N.Y. 2014) (finding Younger abstention inappropriate when the state court action at issue was between two private parties, the federal plaintiff was also the plaintiff in the state lawsuit suit, and the federal plaintiff did not seek to enjoin state proceedings).  Cf. Astoria Gen. Contracting Corp. v. Office of Comptroller of City of New York, 159 F. Supp. 3d 385, 396 (S.D.N.Y. 2016) (finding Younger abstention appropriate when the federal plaintiffs sought to enjoin a pending administrative prevailing wage hearing brought against them that the court found implicated Sprint's second category: a civil enforcement action).[10]

---

[10] Since the Court finds that the DOL investigation does not fall into any of the Sprint categories, it need not reach the question of whether the additional factors apply.  See Wilmington Tr., Nat'l Ass'n v. Estate of McClendon, 287 F. Supp. 3d 353, 363 (S.D.N.Y. 2018) (holding that "[a]s the situation here does not implicate any of the three 'exceptional circumstances' that define Younger's scope, there is no need to consider any of the Middlesex conditions").

Finally, the Court finds that there will be very little prejudice, if any, to defendants to having the cases proceed. As noted, any payments made pursuant to the Department of Labor will be credited to defendants in calculating damages, and any additional time entailed in responding to the investigations will likely be minimal because if defendants are correct and the Department of Labor is investigating the same issues as the plaintiffs, discovery will be largely duplicative. Even if defendants could demonstrate that the efforts will be more than minimal, the Court finds that this is not a basis to dismiss the claims of those class members who worked at Grimaldi's Brooklyn. Indeed, should plaintiffs succeed in this federal action, it would not lead to "enjoin[ing] state proceedings or invalidat[ing] a state court order," suggesting Younger abstention is not required here. Wilmington Tr., Nat'l Ass'n v. Estate of McClendon, 287 F. Supp. 3d at 363 (quoting Lamont v. Farucci, 2017 WL 6502239, at *8).

Accordingly, it is respectfully recommended that defendants' motion to dismiss be denied, and that the district court exercise supplemental jurisdiction over plaintiffs' NYLL claims.

II.   Motion for Class Certification

Plaintiffs move for certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

A.   Rule 23 Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

14

class; and (4) the representative parties will fairly and adequately
protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiffs must also satisfy one of the three
subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or
would substantially impair the ability of other individuals to protect their interests; (2) injunctive
or declaratory relief is sought concerning the class as a whole; or (3) common questions of law
or fact predominate over individual questions and a class action is superior to other methods for
bringing suit. Fed. R. Civ. P. 23(b); see generally Amchem Prods., Inc. v. Windsor, 521 U.S.
591 (1997). It is plaintiff's burden to establish compliance with the requirements of Rule 23, but
in analyzing the issue of certification, the court accepts as true the allegations in the complaint
regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454
(E.D.N.Y. 1996) (citation omitted). Pursuant to Rule 23(c)(1) of the Federal Rules of Civil
Procedure, "the court can make a conditional determination of whether an action should be
maintained as a class action, subject to final approval at a later date." Collier v. Montgomery
Cnty. Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000).

    B.  The Requirements of Rule 23(a)

      1.  Numerosity

Defendants oppose certification in this case on the grounds of numerosity. (Defs.' Mem.
at 12). Defendants contend that plaintiffs have only identified 32 class members in this case.
(Id.) They note that the Second Circuit has found that "numerosity is presumed at a level of 40
members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert
denied, 115 U.S. 2277 (1995); see also Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41,
48 (E.D.N.Y. 2010). They also point out that there are decisions holding that fewer than 21

15

members is grounds for denying the certification of a class.  (Defs.' Mem. at 12 (citing Novella

v. Westchester Cty., 443 F. Supp. 2d 540, 546 (S.D.N.Y. 2006), vacated on other grounds, 661

F.3d 128 (2d Cir. 2011))); see also Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y

1998) (denying certification to a class of 35).  However, defendants concede that in deciding

whether certification is appropriate in cases where the number of class members falls between 21

and 40, courts should consider other factors including judicial economy, geographic dispersion

of the class members, the financial resources of the members of the class, and requests for

prospective relief.  (Defs.' Mem. at 13 (citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir.

1993))).

    In this case, there are a number of factors that persuades this Court that numerosity has

been established despite plaintiffs' identification at this time of only 32 named individuals.  First,

plaintiffs have actually suggested that there are 84 potential class members.  (Pls.' Ex. 14[11]).  In

arguing that plaintiffs' number should be reduced, defendants rely in the first instance on the

argument that 27 of these individuals worked exclusively at the Brooklyn location and therefore

should not be counted because they are encompassed by the Department of Labor's

investigation.  For the reasons stated supra in recommending denial of defendants' motion to

dismiss, the Court disagrees with the contention that these 27 individuals should not be counted.

    Defendants also contend that plaintiffs' class list is inaccurate in that it lists 16

individuals who are either duplicative or in fact a business.  (Defs.' Mem. at 14).  Defendants

contend that part of the problem of duplication arises because the employees refer to each other

by nicknames such that "Adan Miquel" is actually "Angelo" and "Rinaldo Rios" is the same

---

[11] Citations to "Pls.' Ex. 14" refer to Plaintiffs' Class List spreadsheet, filed on June 29, 2018
and attached to the Declaration of Brent E. Pelton, Esq. In Support of Plaintiffs' Motion for
Class Certification as Exhibit 14.

person known by the nickname "Reynaldo."  (Id. (citing Tarzia Aff.[12] ¶ 11)).  Defendants also

contend that some of names on the plaintiffs' list are actually third-party vendors or businesses.

(Id.)  According to Mr. Tarzia, he has identified 16 duplicative names and/or businesses, eleven

of which did not work exclusively at Grimaldi's Brooklyn.  Thus, defendants argue that there are

only 46 potential class members.  (Id.)

Defendants also argue that kitchen staff should not be counted in determining numerosity

because the class as defined by plaintiffs is limited to "wait staff, busboys, and counter

employees."  (Id. (citing Thrd Am. Compl. ¶¶ 23, 26)).  Defendants contend that in an effort to

satisfy the numerosity requirements, plaintiffs are now attempting to expand the class definition

to include kitchen employees.  (Id. at 15).  According to defendants, if the kitchen employees and

the "unconfirmed job titles" are eliminated, the number of potential class members is reduced to

34.  (Id.)

In addition, defendants seek to reduce the class by an additional two employees who

worked exclusively at Grimaldi's Second Avenue, which defendants contend is an entirely new

location not listed as a defendant in any of the complaints.  (Id.)  If these two individuals are not

included, the class is down to a potential size of 32.  (Id.)  Similarly, defendants object to the

inclusion of individuals from the location at 242-01 61st Avenue in Douglaston, New York,

noting that this Douglaston location has never "been mentioned anywhere by its proper corporate

name."  (Id. at 17).

Defendants further support their argument against class certification by noting that a

collective action was already authorized and only seven employees opted to join in.  (Id. at 16).

In addition, defendants argue that the potential class members are all located geographically

---

[12] Citations to "Tarzia Aff." refer to the Affidavit of Robert Tarzia, dated August 29, 2018.

within the boroughs of New York City, and given the existence of fee-shifting statutes, private attorneys would be incentivized to bring individual claims.  (Id. at 16-17).

In response, plaintiffs contend that while defendants argue that plaintiffs have only identified fewer than 40 potential class members, nowhere do defendants actually argue that there are fewer than 40 class members.  (Pls.' Reply at 6).  Plaintiffs assert that defendants are in the exclusive control of information as to potential class members; as such, they could have reviewed their payroll records and spoken to their managers and calculated an actual number of class members, but they have not done so.  (Id.)  Plaintiffs correctly note that they are not required at this stage of the proceedings to identify "'each person. . . or pinpoint the exact number'" of potential class members.  (Id. (quoting Quick v. Shell Oil Co., 241 F.R.D. 435 (S.D.N.Y. 2007))).  Plaintiffs further explain that many of the employees were paid "off the books" and since the records of compensation and overtime are primarily in defendants' control, courts are encouraged to draw "reasonable inferences" and "make common sense assumptions" as to numerosity.  (Id. (citing D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2013 U.S. Dist. LEXIS 85697, *69 (E.D.N.Y. June 18, 2013))); see also Spencer v. No Parking Today, Inc., No. 12 CV 6323, 2013 U.S. Dist. LEXIS 36357, *52-53 (S.D.N.Y. Mar. 15, 2013).  According to plaintiffs, defendants produced records primarily from the Brooklyn location.  Thus, given the testimony of the managers and plaintiffs as to the current number of employees at each location and the high turnover rate, it is likely that there are many more employees than are currently reflected on plaintiffs' list.  (Pls.' Reply at 7).

Plaintiffs also dispute defendants' arguments relating to the five different Grimaldi's locations, noting that there is strong evidence of the single enterprise nature of the businesses.  (Id.)  Specifically, plaintiffs allege that managers "transmitted" recordkeeping practices from the

Brooklyn location to the other Grimaldi's locations, and managers and employees "frequently trained or worked for a time at one location before moving on to another location." (Pls.' Mem. 10-11, 20).

As for defendants' argument that the kitchen employees are not listed in the complaint, plaintiffs contend that the Court has broad discretion to define the Class and "'is not bound by the class definition proposed in the complaint.'" (Pls.' Reply at 8 (quoting Robidoux v. Celani, 987 F.2d at 937); see also In re Namenda Direct Purchaser Antitrust Litig., 331 F. Supp. 3d 152, 211 (S.D.N.Y. 2018) (holding that an "expansion of the class definition beyond that which was proposed in the complaint is not categorically improper"). Here, plaintiffs note that defendants actually agreed to a Section 216(b) collective definition that included "pizza makers, delivery employees, [and] dishwashers" working in the back of the restaurant and "waiters, bussers and counter employees" in the front of the house.[13] (Pls.' Reply at 9). Plaintiffs also contend that during discovery, they learned that the unlawful wage and pay policies alleged by the Named Plaintiffs were common throughout the restaurant and at all five locations, including one that is now closed. (Id.) They elicited information during the depositions of defendant Ciolli and the managers about the kitchen employees and all five locations to verify the overall policy; thus, they contend that it is appropriate to expand the class definition to include all of these employees

---

[13] With respect to the Section 216(b) collective, defendants cite Sanchez v. New York Kimchi Catering Corp. to argue that "the fact that potential class members have previously had the right to opt in weighs against class adjudication." (Defs.' Mem. at 16 (citing No. 16 CV 7783, 2018 U.S. Dist. LEXIS 88214, at *9-*10 (S.D.N.Y. May 24, 2018)). The Court disagrees with defendants' interpretation of Sanchez v. New York Kimchi Catering Corp., and agrees with the finding that "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202-203 (S.D.N.Y. 2006).

at all of the locations based on the evidence they have obtained during discovery.  (Id. at 9-10);

see Menkin v. Daines, 287 F.R.D. 174, 181 (S.D.N.Y. 2012).

More importantly, however, the Court disagrees with defendants' analysis of the

preferability of a class action in a case such as this where the inefficiencies of thirty-two class

members bringing claims outweighs the factors cited by defendants, particularly when viewed in

light of the fact that these are hourly workers with limited means to file individual wage and

hour lawsuits against this employer.  Moreover, for those current employees who might be

inclined to complain about their wages, the fear of retaliation may be a further impediment to

their bringing individual actions.  See Spencer v. No Parking Today, Inc., 2013 U.S. Dist.

LEXIS 36357, at *56.  In Balverde v. Lunella Ristorante, Inc., the court found that the

numerosity requirement had been met at less than 40 employees and finding that class

certification was favored as "the more efficient use of judicial resources."  No. 15 CV 5518,

2017 U.S. Dist. LEXIS 59778, at *13 (S.D.N.Y. Apr. 19, 2017).

Having considered all of defendants' arguments, the Court finds persuasive plaintiffs'

argument that even if there were only 32 identified Class Members as of the time of the motion,

the information provided by defendants' managers during discovery suggests that there are more

than enough potential class members to satisfy the numerosity requirement if all locations are

considered and both front and back of the house employees are included.  (See Pls.' Reply at 10-

11).  For example, according to Mr. Tarzia, over 50 individuals currently work at all five

locations, and at least 20 individuals work at the Brooklyn location alone.  (Id. at 8).  Taking the

32 employees that defendants claim are the only ones plaintiffs have identified and adding back

in the 27 from Grimaldi's Brooklyn, there are at least 59 potential class members, well over the

presumptive 40.

In addition, the Court has considered the factors such as the inconvenience of trying individual actions, as well as the financial resources of potential class members, and finds that these factors weigh heavily in favor of a class action in this case.  See Savino v. Comput. Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998).

Accordingly, the Court finds that the requirement of numerosity has been satisfied.

2. Common Questions of Fact or Law

In determining whether plaintiffs can show that the claims of the potential Class Members share common questions of law or fact, Rule 23 does not require that "'all questions of law or fact raised be common.'"  Savino v. Comput. Credit, Inc., 173 F.R.D. at 352 (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (holding that the claims need not be identical to satisfy the commonality requirement, but that they must share common questions of law or fact).  There must be a "unifying thread" among the claims to warrant class certification. Kamean v. Local 363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  As long as "common questions . . . predominate," any differences in the circumstances raised by individual members will not defeat the requirement of commonality.  In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged."  Savino v. Comput. Credit, Inc., 173 F.R.D. at 352.

Here, there seems to be no question that there are several common legal and factual issues in this case.  Specifically, plaintiffs and the Class Members all bring identical claims, alleging, inter alia, that defendants:  (1) failed to maintain proper accurate records; (2) failed to provide wage notices; and (3) failed to pay plaintiffs and Class Members proper overtime and

21

spread of hours wages.  (Pls.' Mem. at 5).  As such, the Court finds that there are common issues sufficient to satisfy the requirements of Rule 23(a)(2).

### 3.   Typicality

Rule 23(a)(3) requires that plaintiffs' claims be typical of the claims of the Class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d at 936.  Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims.  Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

In their motion, defendants do not dispute that plaintiffs' claim arise from the same factual and legal circumstances that form the bases of the Class Members' claims.[14]  First, plaintiffs and the Class Members all allege that defendants failed to pay them in accordance with the NYLL.  (Pls.' Mem. at 20).  Second, it is alleged that plaintiffs and the Class Members performed the same or similar duties at defendants' various locations and were paid pursuant to similar policies.  (Id.)  Third, plaintiffs claim that they suffered the same injuries suffered by the other Class Members.  Irrespective of any differences in the amounts of overtime or spread of hours wages owed, plaintiffs' claims and the claims of the Class Members all stem from defendants' alleged uniformly wrongful conduct; plaintiffs' claims are therefore sufficiently typical to warrant certification.

---

[14] In the penultimate paragraph of their Memorandum of Law, defendants state that they "reserve the right to challenge other F.R.C.P. 23 requirements including commonality, typicality and adequacy of representation."  (Defs.' Mem. at 18).  The Court assumes that this means a reservation of rights to make such arguments at the time of decertification, as opposed to filing a separate objection to certification at this time.

4.   Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test.  In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992).  First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation."  Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second, the class members' interests may not be "'antagonistic'" to one another.  County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).  In order for a potential or actual conflict to defeat certification, it "must be fundamental."  In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted).

Here, plaintiffs argue that they are adequate representatives of the Class because the interests of plaintiffs and the Class Members are aligned.  (Pls.' Mem. at 20-21).  Specifically, plaintiffs assert that the Named Plaintiffs and Class Members all experienced wage notification violations due to defendants' policies, while plaintiffs and the Unpaid Wages Subclass all suffered lost wages due to defendants' policies.  (Id. at 21).  Based on the nature of plaintiffs' claims and on the representation that no conflict of interest exists, the Court finds that plaintiffs' claims are so interrelated with those of the Class Members that plaintiffs will serve as adequate Class representatives.

In addition, based on counsel's representations set forth more fully infra, the Court finds that plaintiffs' counsel, Pelton Graham LLP, is experienced in handling cases such as this one, and will be able to adequately serve the Class.

23

C.   The Requirements of Rule 23(b)(3)

1.   Common Questions Predominate Over Individual Issues

Plaintiffs must also establish that the proposed class meets the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class.  Amchem Prods, Inc. v. Windsor, 521 U.S. at 623.  Courts focus on whether there are common questions related to liability.  See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007).  Even if there are defenses that affect Class Members differently, that alone "does not compel a finding that individual issues predominate over common ones."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24 (2d Cir. 2006).

In this case, plaintiffs allege that their claims are all based on defendants' alleged uniform policies, which will be "established through generalized proof applicable to the Class as a whole."  (Pls.' Mem. at 22).  Indeed, plaintiffs contend that "[c]ommon questions not only predominate but are the only questions presented."  (Id.)  In addition, plaintiffs argue that damages for the Class and Subclass will be established through common proof and will only require "modest individual testimony."  (Id. at 23).

Accordingly, the Court finds that common questions predominate in this case, and plaintiffs therefore satisfy this requirement of Rule 23(b)(3).

2.   Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotation marks omitted).  The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(2)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(3)] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, plaintiffs claim that Class Members have no interest in individually controlling the prosecution of their claims.  (Pls.' Mem. at 23).  In particular, many Class Members are unfamiliar with the American legal system and may fear reprisal given that they are current employees of defendants.  (Id. at 24).  Plaintiffs also represent that there are no other pending FLSA or NYLL claims against defendants, and this instant action is broader in scope than the DOL investigation that found certain employees at the Brooklyn location between April 14, 2011 and May 3, 2014 were entitled to unpaid overtime wages.  (Id.)  Moreover, plaintiffs contend that "many of the claims of the class members arise in the Eastern District of New York," and no manageability problems exist.  (Id.)  Finally, proceeding as a class will preserve judicial resources by consolidating common issues of fact and law.  (Id. at 24).

As a result, the Court accepts that a class action is the superior method of resolution in this case.

D.  Appointment of the Class Counsel

The Court also respectfully recommends that plaintiffs' counsel's request to be appointed

as Class Counsel be granted.  In evaluating the adequacy of Class Counsel, Rule 23(g) requires

the Court to consider:  (1) the work done by counsel in investigating the potential claims in the

case; (2) counsel's experience in handling similar class actions and other complicated litigation;

(3) counsel's knowledge of the applicable law; and (4) the resources counsel will expend to

represent the class.  Fed. R. Civ. P. 23(g).

In this case, Pelton Graham LLC has extensive experience litigating and settling wage

and hour cases, and a "substantial portion" of their wage and hour cases concern the food service

industry.  (Pelton Decl.[15] ¶¶ 3, 5).  Moreover, plaintiffs' counsel has performed extensive work

in this litigation, identifying, investigating, and prosecuting the claims on behalf of the affected

individuals.  (Id. ¶ 6).

Accordingly, the Court finds that proposed Class Counsel satisfy the criteria of Rule

23(g), and respectfully recommends that the firm of Pelton Graham LLC be appointed as Class

Counsel to represent the Class Members in this matter.


CONCLUSION

Accordingly, for the reasons set forth above, the Court respectfully recommends that the

district court grant plaintiffs' motion for Class Certification and deny defendants' motion to

dismiss the Brooklyn Grimaldi's location from the case.  The Court also recommends that

plaintiffs' counsel be appointed Class Counsel.  Finally, the Court respectfully recommends that

---

[15] Citations to "Pelton Decl." refer to the Declaration of Brent E. Pelton, Esq. In Support of
Plaintiffs' Motion for Class Certification, filed June 29, 2018.

the district court Order the parties to meet and confer on the form of Notice procedures, as well as the production of class members' contact information.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
        January 8, 2019

                                            /s/ Cheryl L. Pollak
                                    Cheryl L. Pollak
                                    United States Magistrate Judge
                                    Eastern District of New York