**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
Alison L. Mangiatordi
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs, the FLSA*
*Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **YASER OMAR, EMMANUEL GARCIA, and CHARLIE GARCIA, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**1 FRONT STREET GRIMALDI, INC. d/b/a GRIMALDI'S PIZZERIA, DUMBO RESTAURANT CORP. d/b/a GRIMALDI'S PIZZERIA, BROOKLYN PIZZERIA, INC. d/b/a GRIMALDI'S PIZZERIA, SIXTH AVENUE GRIMALDI, INC. d/b/a GRIMALDI'S PIZZERIA, 1215 SURF AVE. RESTAURANT CORP. d/b/a GRIMALIDI'S PIZZERIA, and FRANK CIOLLI, Jointly and Severally,**<br><br>**Defendants.** | **16 Civ. 5824 (LDH) (CLP)**<br><br><br>**FOURTH AMENDED CLASS & COLLECTIVE <u>ACTION COMPLAINT</u>**<br><br><br>**Jury Trial Demanded** |

Plaintiffs Yaser Omar, Emmanuel Garcia, and Charlie Garcia (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief and the investigation of their counsel as to other matters, allege as follows:

# I. __INTRODUCTION__

1.      Defendant Frank Ciolli ("Ciolli") owns 1 Front Street Grimaldi, Inc. ("Front Street"), Dumbo Restaurant Corp. ("Dumbo"), Sixth Avenue Grimaldi, Inc. ("Sixth Avenue"), and 1215 Surf Ave. Restaurant Corp. ("Coney Island"), all currently (Sixth Avenue and Coney Island) or formerly (Front Street and Dumbo) doing business under the trade name "Grimaldi's Pizzeria", and which comprise one of the most famous pizzeria chains in New York City. Grimaldi's Pizzeria (or Grimaldi's) is well-known for its coal-burning ovens and booming cash-only, whole-pies only (no slices), no reservation and no delivery business.

2.      Joseph Ciolli ("J. Ciolli"), Frank Ciolli's Son, owns defendant Brooklyn Pizzeria, Inc. ("Brooklyn Pizzeria"), currently doing business under the trade name "Grimaldi's Pizzeria" at 1 Front Street in Brooklyn.

3.      Brooklyn Pizzeria is a successor corporation to Front Street and Dumbo.

4.      The first and most famous Grimaldi's, located at 1 Front Street in Brooklyn, under the Brooklyn Bridge, is a major tourist destination and is constantly busy, typically with a line out the door and down the block.

5.      While Ciolli opened two (2) additional Grimaldi's locations in Manhattan, both were closed by the state of New York for failure to pay certain taxes, however, one has since re-opened.

6.      In or around summer of 2012, Ciolli opened Grimaldi's located in Coney Island.

7.      Plaintiffs worked for Defendants as waiters, busboys and counter employees at four (4) of the Grimaldi's locations in New York City.

8.      For their work as waiters and busboys,  despite working thirteen to fifteen (13-15) hours per day, four to five (4-5) days per week, Plaintiffs either received no salary or a fixed

salary of forty to sixty-dollars ($40-$60) per week, plus tips, regardless of the number of hours worked that week or which restaurant they worked in.

9.      For their work as counter employees, Plaintiffs were paid a per-shift rate of one-hundred dollars ($100) per shift and did not receive tips.

10.     Plaintiffs who worked as waiters or busboys were not paid minimum wage and Plaintiffs who worked as waiters, busboys or counter employees never received overtime pay. Moreover, Plaintiffs received their wages, if any, in cash and were not provided wage statements or wage notices as were required under the New York Labor Law.

11.     Plaintiffs bring this action to recover unpaid minimum wage and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread-of-hours premiums and failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

12.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 ("Rule 23") class of wait staff, busboys and counter employees working for Defendants in New York.

## II.  JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants'

3

business is located in this district.

15.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

### III.   **THE PARTIES**

**A.     Plaintiffs:**

16.     Plaintiff Yaser Omar ("Omar") has been, at all relevant times, an adult individual residing in Queens County, New York.

17.     Plaintiff Emmanuel Garcia ("E. Garcia") has been, at all relevant times, an adult individual residing in Queens County, New York.

18.     Plaintiff Charles Garcia ("C. Garcia") has been, at all relevant times, an adult individual residing in Kings County, New York.

19.     Throughout the relevant time period, each of the Plaintiffs worked for Defendants in their pizzeria restaurants located in Kings County and New York County.

20.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

**B.     Defendants:**

21.     Defendant 1 Front Street Grimaldi, Inc. is an inactive New York Business Corporation, which was doing business as "Grimaldi's Pizzeria" and which, according to the New York State Department of State Division of Corporations, formerly maintained a principal executive office at 673 City Island Avenue, Bronx, NY 10464 and a principal place of business at 1 Front Street, Brooklyn, New York 11201, and became inactive on October 26, 2016.

22.     Defendant Dumbo Restaurant Corp., which was the successor company to 1 Front Street Grimaldi, Inc., is an active New York Business Corporation which was doing business as

"Grimaldi's Pizzeria" with its principal place of business at 1 Front Street, Brooklyn, New York 11201.

23.     In October 2018, Dumbo Restaurant Corp. filed for bankruptcy and is currently in Chapter 7 liquidation and not operating.

24.     Defendant Brooklyn Pizzeria, Inc. took over the "Grimaldi's Pizzeria" business at 1 Front Street, Brooklyn, New York 11201 in or around March of 2019.

25.     Defendant Brooklyn Pizzeria, Inc., which is the successor company to 1 Front Street Grimaldi, Inc. and Dumbo Restaurant Corp., is an active New York Business Corporation which is doing business as "Grimaldi's Pizzeria" with its principal place of business at 1 Front Street, Brooklyn, New York 11201.

26.     Defendant Sixth Avenue Grimaldi, Inc. is an active New York Business Corporation doing business as "Grimaldi's Pizzeria" and, according to the New York State Department of State Division of Corporations, maintains a principal executive office at 656 Sixth Avenue, New York, NY 10010.

27.     Defendant 1215 Surf Ave. Restaurant Corp. is an active New York Business Corporation doing business as "Grimaldi's Pizzeria" and, according to New York State Department of State Division of Corporations, maintains a principal executive office at 673 City Island Avenue, Bronx, NY 10464.

28.     The corporate entities listed in paragraphs 21 through 27 are hereinafter referred to collectively as the "Corporate Defendants."

29.     Defendant Ciolli (the "Individual Defendant" and, together with the Corporate Defendants, the "Defendants" or "Grimaldi's") was the sole owner of Front Street, and is the sole owner of Dumbo, Sixth Avenue and Coney Island.

30.     J. Ciolli is the sole owner and Chief Executive Officer, as set forth in the New York State Department of State Division of Corporations filings, of Brooklyn Pizzeria.

31.     The Individual Defendant has been the owner, director, officer and majority shareholder of Dumbo, Sixth Avenue and Coney Island throughout the Class and Collective Action Periods.

32.     The Individual Defendant participated in the day-to-day operations of Dumbo, Sixth Avenue and Coney Island and acted intentionally and maliciously in his direction and control of Plaintiffs and Defendants' other similarly situated employees.

33.     The Individual Defendant set Plaintiffs' terms and conditions of employment and was responsible for Defendants' failure to pay all required minimum wages, overtime premium pay and spread-of-hours pay as well as Defendants' failure to provide wage notices and wage statements.

34.     Based upon his role directing and controlling Plaintiffs and Defendants' other employees, the Individual Defendant is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and as such is jointly and severally liable with Corporate Defendants.

35.     Upon information and belief, the Individual Defendant was involved in the direct supervision and control of Defendants' employees, had the power to hire and fire employees, determined the rate and method of employee pay and maintained Defendants' payroll records.

36.     At all relevant times, each of the Corporate Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

37.     Upon information and belief, at all relevant times, each of the Corporate Defendants

has had gross revenues in excess of $500,000.00.

38.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Collective Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

39.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

40.     Defendants are part of a single integrated enterprise (hereinafter referred to as the "Grimaldi's Enterprise") that jointly employed Plaintiffs and similarly situated employees throughout the relevant time period.

41.     Upon information and belief, the Grimaldi's Enterprise shared a common management and were centrally controlled, operated and owned by Individual Defendant Ciolli and J. Ciolli.

42.     Brooklyn Pizzeria acquired substantial assets of Dumbo and continued, without interruption or substantial change, Dumbo's business operations.

43.     Brooklyn Pizzeria was well aware of the pending lawsuit prior to acquiring the business and assets of Dumbo.

44.     Brooklyn Pizzeria continued the business operations of Dumbo at the same location.

45.     Brooklyn Pizzeria employs substantially the same work force as Dumbo did.

46.     Brooklyn Pizzeria employs the same supervisory personnel as Dumbo, including but not limited to the same manager.

47.     Brooklyn Pizzeria uses the same kitchen, oven, and methods of production as Dumbo.

48.     Brooklyn Pizzeria produces essentially the same pizza and other menu items as

Dumbo, including "whole pies only" and only accepts cash. Brooklyn Pizzeria is a mere continuation of Dumbo in that there was continuity of ownership, Dumbo ceased ordinary business, Brooklyn Pizzeria assumed liabilities of Dumbo, the same management and employees from Dumbo continue to work for Brooklyn Pizzeria, Brooklyn Pizzeria operates at the same physical location, purchased Dumbo's assets, and there was continuation of the same general business operation when Brooklyn Pizzeria took over from Dumbo.

## IV.   COLLECTIVE ACTION ALLEGATIONS

49.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All individuals employed by Defendants at any time since October 18, 2013 and throughout the entry of judgment in this case (the "Collective Action Period") who were employed as wait staff, busboys, and counter employees (the "Collective Action Members").

50.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies including, but not limited to paying Plaintiffs and other similarly situated employees at a weekly salary for all hours worked which did not compensate them at minimum wage for all hours worked or at overtime wages for hours worked in excess of forty (40) in a given week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally required minimum wage for all hours worked or overtime premium payments for hours worked in excess of forty (40) per week.

51.     Plaintiffs and the Collective Action Members have substantially similar, if not the same, compensation structures.

## V.   NEW YORK CLASS ACTION ALLEGATIONS

52.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All individuals employed by Defendants in New York at any time since October 18, 2010 and throughout the entry of judgment in this case (the "Class Period") who were employed as wait staff, busboys, and counter employees (the "Class Members").

53.     <u>The Class Members are readily ascertainable.</u>  The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

54.     <u>The Class Members are so numerous that joinder of all members is impracticable.</u> Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

55.     Upon information and belief, there are in excess of forty (40) Class Members.

56.     <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

a.      whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.      whether Defendants failed and/or refused to pay Plaintiffs and the Class Members not less than minimum wages for all hours worked each workweek;

c.      whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums when they worked more than forty (40) hours in a given workweek;

d.      whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

e.      whether Defendants failed to provide Plaintiffs and the Class Members with a proper wage notice at the beginning of their employment and/or on February 1 of each year, as required by the NYLL;

f.      whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.      whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

h.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

57.     The answers to these questions would drive resolution of the litigation.  If a judge and/or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

58.     The Plaintiffs' claims are typical of the Class Members' claims. The Plaintiffs, like all Class Members, are or were employees of Defendants who work or worked for Defendants pursuant to their corporate policies. The Plaintiffs, like all Class Members, were, *inter alia*, not paid minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours or a split shift, were not provided with wage notices on the date they were hired or on February 1 of each subsequent year, and were not provided with wage statements with their wages. If Defendants are liable to the Plaintiffs for the claims enumerated in

this Complaint, they are also liable to all Class Members.

59.     The Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between the Plaintiffs and the Class Members, and the Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

60.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

62.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## VI.  STATEMENT OF FACTS

### A.     Defendants' Pizzerias

63.     Patsy Grimaldi, the founder of Grimaldi's Pizzeria, opened up the first Grimaldi's Pizzeria at 19 Old Fulton Street, Broklyn, New York in 1990.

64.     In the late 1990s, Patsy Grimaldi retired and sold the name and franchise (except for the Hoboken locations) to Defendant Ciolli.

65.     Ciolli kept the first, and most famous, Brooklyn location open ever since, although

in 2011 he moved from 19 Old Fulton Street to the current location at 1 Front Street[1].

66.     Shortly after the filing of the instant lawsuit on October 18, 2016, Front Street became inactive and Dumbo took over all of the business of Front Street.

67.     In or around 2012, Ciolli opened up a Grimaldi's location in Coney Island located at 1215 Surf Ave. in Brooklyn.

68.     In March of 2013, Ciolli opened up another Grimaldi's location on at 462 Second Avenue in Manhattan and, in April of 2014, a third location at 656 Sixth Avenue in Manhattan.

69.     Upon information and belief, due to the non-payment of state taxes, in April 2014, New York State seized and closed the 462 Second Avenue location and, in August 13, 2016, seized and closed the Sixth Avenue location.

70.     The Sixth Avenue location was re-opened on or about October 9, 2016.

71.     Brooklyn Pizzeria took over the ownership and operations of the Grimaldi's location at 1 Front Street as a successor corporation Dumbo in or around March of 2019.

72.     At all relevant times, Defendants have been in the food service business.

73.     Upon information and belief, Ciolli has owned, operated and managed Front Street, Dumbo, Sixth Avenue and Luna Park over the past six (6) years.

74.     Upon information and belief, Defendants applied the same employment policies, practices and procedures, including the unlawful policies complained of herein, to all wait staff at all of their Grimaldi's restaurants.

75.     Upon information and belief, Defendant Ciolli has taken an active role in ensuring that the Grimaldi's restaurants are run in accordance with his procedures and policies. To that end, Plaintiffs are usually supervised by managers who simply follow Defendant Ciolli's orders

---

[1] When Ciolli moved to 1 Front Street, Patsy Grimaldi came out of retirement to open up a competing pizzeria he named Julianna's Pizza at 19 Old Fulton Street, the original Grimaldi's Pizzeria location in Brooklyn.

regarding the policies and procedures of Grimaldi's.

76. Defendant Ciolli is in charge of hiring and firing employees, supervising employees, determining the hours worked by employees and handling the employee payroll.

**B.      Plaintiffs' Work for Defendants**

77. **<u>Plaintiff Omar</u>** worked for Defendants as a waiter from in or around January 2011 through on or about August 13, 2016 (the "Omar Employment Period").

78. For approximately the first one to two (1-2) weeks of the Omar Employment Period, Omar was trained at the original Grimaldi's location at 19 Old Fulton Street in Brooklyn, New York.

79. After training, Omar worked at the Sixth Avenue location through in or around March 2013.

80. Omar worked at the 462 Second Avenue location when it opened from in or around April 2013 through when Second Avenue was seized by New York State and closed in or around April 2014.

81. Omar worked at Sixth Avenue from in or around April 2014 through in or around August 13, 2016, when Sixth Avenue was seized by New York State.

82. From the beginning of the Omar Employment Period until in or around late 2012, Omar was not paid any wage or salary and would only work for tips.

83. From in or around late 2012 and throughout the remainder of the Omar Employment Period, Omar was paid a salary of sixty dollars ($60) per week for all hours worked, plus tips.

84. Throughout the Omar Employment Period, Omar typically worked four to five days per week, thirteen and a half (13.5) hours per day, for a total of between approximately fifty-four

(54) and approximately sixty-seven and a half (67.5) hours per week.

85.     Omar was paid at the above weekly salary for all hours worked for Defendants, including hours worked over forty (40) in a given workweek. Omar and Defendants' other waiters did not receive overtime premiums of one and one-half (1.5) times their hourly rate for hours worked in excess of forty (40) hours per week.

86.     **Plaintiff E. Garcia** was employed by Defendants as a busboy, waiter and counter employee from in or around 2005 through in or around June 2014  (the "E. Garcia Employment Period").

87.     E. Garcia worked as a busboy at 19 Old Fulton Street from the beginning of the E. Garcia Employment Period until in or around 2008 when he began working as a waiter at 19 Old Fulton Street.

88.     E. Garcia worked as a waiter at Sixth Avenue from in or around 2010 through in or around March 2013.

89.     E. Garcia worked as a waiter and counter employee at the 462 Second Avenue location when it opened from in or around April 2013 through when Second Avenue was seized by New York State and closed in or around April 2014.

90.     E. Garcia then went back to work at Sixth Avenue until in or around June 2014.

91.     Throughout the E. Garcia Employment Period, E Garcia was paid sixty dollars ($60) per week, plus tips, for all hours worked as a busboy or waiter.

92.     Throughout the E. Garcia Employment Period, E. Garcia was paid $100 per six (6) hour shift as a counter employee.

93.     Throughout the E. Garcia Employment Period, E. Garcia typically worked four to five (4-5) days per week, thirteen and a half (13.5) hours per day, for a total of between

approximately fifty-four (54) and approximately sixty-seven and a half (67.5) hours per week.

94.     E. Garcia was paid at the above weekly salary or shift rate for all hours worked for Defendants, including hours worked over forty (40) in a given workweek.

95.     **Plaintiff C. Garcia** was employed by Defendants as a waiter from in or around 2010 through in or around November of 2012  (the "C. Garcia Employment Period").

96.     From the beginning of the C. Garcia Employment Period through in or around the spring of 2012, C. Garcia worked as a waiter at Sixth Avenue.

97.     From in or around the summer of 2012, when Coney Island opened, through in or around October of 2012, C. Garcia worked at a waiter at Coney Island.

98.     C. Garcia then went back to work at Sixth Avenue as a waiter for the remainder of the C. Garcia Employment Period.

99.     Throughout the C. Garcia Employment Period, C. Garcia was paid forty dollars ($40) per week for all hours worked, plus tips.

100.     Throughout the C. Garcia Employment Period, C. Garcia typically worked four to five (4-5) days per week, thirteen and a half (13.5) hours per day, for a total of between approximately fifty-four (54) and approximately sixty-seven and a half (67.5) hours per week.

101.     C. Garcia was paid at the above weekly salary for all hours worked for Defendants, including hours worked over forty (40) in a given workweek.

102.     Plaintiffs and Defendants' other busboys, wait staff and counter employees did not receive overtime premiums of one and one-half (1.5) times their hourly rate for hours worked in excess of forty (40) hours per week.

103.     Plaintiffs and Defendants' other busboys, wait staff and counter employees were not paid an extra hour of pay at minimum wage for shifts or split-shifts spanning in excess of ten

(10) hours.

104.    Defendants failed to provide Plaintiffs and the Class Members with proper wage notices at the time of hire or on February 1 of each year.

105.    Plaintiffs and the Class Members were paid in cash without any kind of paystub or wage statement. As such, Defendants failed to provide Plaintiffs and the Class Members with proper wage statements stating the hourly rate of pay, overtime rate of pay and number of hours worked each week.

106.    Upon information and belief, all of Defendants' busboys, wait staff and counter employees were paid in the same manner, regardless of which of Defendants' restaurant locations they worked in.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought On Behalf of Plaintiffs and the Collective Action Members)**

107.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

109.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

110.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full

unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought On Behalf of Plaintiffs and the Collective Action Members)**

111.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

112.    By failing to pay Plaintiffs and the Collective Action Members overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

113.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

114.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought On Behalf of Plaintiffs and the Class Members)**

115.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

116.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

117.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought On Behalf of Plaintiffs and the Class Members)**

118.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

119.    During the period of time that Plaintiffs and the Class Members were employed by Defendants, they performed work for which they were not compensated in violation of the provisions of the NYLL. Specifically, Defendants violated the NYLL by failing to pay overtime wages for hours worked over forty (40) to Plaintiffs and the Class Members.

120.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations

promulgated thereunder.

121.    Defendants' failure to pay overtime caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et al.

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS
### (Brought On Behalf of Plaintiffs and the Class Members)

122.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

123.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

124.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS**
**(Brought On Behalf of Plaintiffs and the Class Members)**

125.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

126.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

127.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought On Behalf of Plaintiffs and the Class Members)**

128.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

129.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

130.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their

counsel to represent the Class;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

h.      Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Aritlce 6 § 198(1)-b;

i.      Two hundred fifty dollars ($250) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated:  New York, New York
       June 25, 2019

                                Respectfully submitted,

**PELTON GRAHAM LLC**


By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
Alison L. Mangiatordi (AM 1020)
mangiatordi@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the*
*FLSA Collective and Class*