# Ballard Spahr LLP

210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
TEL 856.761.3400
FAX 856.761.1020
www.ballardspahr.com

Denise M. Keyser
Tel: 856.761.3442
Fax: 856.761.1020
keyserd@ballardspahr.com

September 9, 2019

*By Electronic Filing*

Honorable LaShann DeArcy Hall
U.S. District Court - E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     <u>Omar et al. v. 1 Front Street Grimaldi, Inc., et al., Case No. 16-cv-5824 (LDH)(CLP)</u>

Dear Judge DeArcy Hall:

Pursuant to Section III.A of Your Honor's Individual Practices, Brooklyn Pizzeria, Inc. ("BP"), recently added as a defendant in the Fourth Amended Complaint [D.E. 76] ("FAC"), requests a pre-motion conference regarding BP's contemplated motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The principle basis for the motion is that, as a matter of law, BP is not a successor to defendant Dumbo Restaurant Corp. ("Dumbo").

## I.     Relevant Background

This class and collective action, filed in October 2016, involves employee claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against several corporations operating pizza restaurants in New York under the name "Grimaldi's Pizzeria" and their sole owner, defendant Frank Ciolli (collectively, "Original Defendants"). In particular, the FAC alleges BP is a successor to one of those corporations, Dumbo, which previously owned and operated the Grimaldi's restaurant at 1 Front Street in Brooklyn. FAC ¶¶ 3, 4.

The FAC alleges that Joe Ciolli, Frank's adult son and the owner of an entirely separate restaurant company based in Scottsdale, Arizona, is the owner of BP, and that BP now operates a pizzeria at the 1 Front Street location. *Id.* ¶ 2. It then recites a series of conclusory allegations designed to establish that BP is a successor to Dumbo. *See id.* ¶¶ 40-48. However, the FAC conspicuously omits any mention of prior litigation between BP and Dumbo, a history of which Plaintiffs are well-aware and which bears directly on the legal question of successor liability.[1] The prior BP/Dumbo litigation arose out of the fact that BP was Dumbo's landlord at the 1 Front Street location. In June 2018, BP filed a state court action to evict Dumbo for failure to pay hundreds of thousands of dollars in rent, which culminated in a New York State Supreme Court judge issuing a warrant of eviction on October 2, 2018. On the day the King's County Sheriff's office was scheduled to perform the eviction and give rightful control of the property to BP, Dumbo filed for

---

[1] This Court may properly take judicial notice of such litigation on a motion to dismiss. *See Sausa v. Vill. of W. Hampton Dunes*, No. CV 18-3802 (SJF)(AYS), 2019 U.S. Dist. LEXIS 98079, at *11 n.3 (E.D.N.Y. June 10, 2019).

bankruptcy to thwart the eviction by operation of the automatic stay. BP then moved to have the automatic stay lifted. *See In re Dumbo Restaurant Corp.*, No. 18-46265 (Bankr. E.D.N.Y.) (NHL), D.E. 20 (describing BP/Dumbo litigation).

The bankruptcy court granted BP's motion to lift the stay, but refrained from entering an order to that effect until the bankruptcy trustee could examine the location and ascertain that BP's taking possession would not cause the estate to lose any assets. To facilitate the process, BP entered an agreement with the bankruptcy trustee, agreeing to pay $5,000 for perishable goods and $5,000 to the trustee for administrative expenses. The bankruptcy court lifted the automatic stay on January 31, 2019. *See In Re Dumbo*, 18-46265 (Bankr. E.D.N.Y.), D.E. 55. After Dumbo's eviction, the site was closed for several months as BP made substantial renovations to the premises and then opened its own restaurant under the Grimaldi's trademark.[2]

Notably, the FAC also neglects to mention that Joe Ciolli submitted an affidavit to the Plaintiffs in this action in 2016—and which the Plaintiffs subsequently submitted to the Bankruptcy Court in the BP/Dumbo litigation—averring that Joe Ciolli and Frank Ciolli's food businesses are completely separate, and neither has any ownership interest in the other.[3]

## II.    Legal Analysis

### A. Plaintiffs Fail to Allege Successor Liability Under the Common Law Test.

Under the traditional New York common law test for successor liability, a corporation that purchases assets of another is generally not liable for the seller's liabilities, subject to four exceptions, only one of which is relevant: the purchasing corporation was a mere continuation of the selling corporation. *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006).

Plaintiffs allege BP is a "mere continuation" of Dumbo. FAC ¶ 48. This exception only applies in the narrow circumstances where a purported asset sale is, in effect, a form of corporate reorganization. *Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (N.Y. 1983). To find a "mere continuation," courts look to four factors, including "continuity of ownership." *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 401 (S.D.N.Y. 2012). Without continuity of ownership, the "mere continuation" exception does not apply. *Id.* Here, the FAC acknowledges on its face that there is no continuity of ownership between BP and Dumbo. *Compare* FAC ¶ 30 (alleging Joe Ciolli is the sole owner of BP) *with* ¶ 31 (alleging Frank Ciolli has been the "owner, director, officer and majority shareholder of Dumbo" during all relevant periods).

The "mere continuation" exception is also inapplicable if, as here, the predecessor entity survives an asset sale, even if only as a bankrupt entity. *Douglas v. Stamco*, 363 F. App'x 100, 102 (2d Cir. 2010). As noted in the FAC, Dumbo "is an active New York Business Corporation" that has filed for bankruptcy. FAC ¶¶ 22, 23. In addition, the mere continuation exception applies only if "[t]he successor-buyer is not in existence prior to the purchase of the predecessor's assets."

---

[2]    The Original Defendants use the Grimaldi's Pizzeria trademark pursuant to a 2011 licensing agreement between Frank Ciolli and a holding company for the U.S. intellectual property rights to that mark. Joe Ciolli is the majority owner of the holding company.

[3]    *See In re Dumbo*, 18-46265 (Bankr. E.D.N.Y.), D.E. 35-2 (filed Jan. 4, 2019).

*Alvarado v. Dreis & Krump Mfg. Co.*, 781 N.Y.S.2d 622 (Sup. Ct. Bronx Cty. 2004) (citation omitted). BP existed long before the purchase of limited assets from the bankruptcy, as evidenced by "the New York State Department of State Division of Corporations filings" referenced in paragraph 30 of FAC, and the prior BP/Dumbo litigation.

Based on these three fatal defects, all claims against BP should be dismissed. The common law test should apply to all claims. However, even if the substantial continuity test described below applies to the FLSA claims, the NYLL claims against BP must be dismissed because the common law test governs successor liability under state law. *See Xue Ming Wang v. Abumi Sushi, Inc.*, 262 F. Supp. 3d 81, 88 (S.D.N.Y. 2017); *Patino v. Brady Parking, Inc.*, No. 11-cv-3080 (DF), 2017 U.S. Dist. LEXIS 189218, at *24-25 (S.D.N.Y. Oct. 31, 2017).

### B. Plaintiffs Fail to Allege Successor Liability Under the Substantial Continuity Test.

The Second Circuit has not determined the test for FLSA successor liability. District courts are split, with some adopting the common law test, and others—including this Court in *Chen v. DG&S NY, Inc.*, No. 14-03435, 2016 U.S. Dist. LEXIS 135285 (E.D.N.Y. Sept. 29, 2016)—applying the "substantial continuity" test to FLSA claims.[4] This test looks to "whether the new company has acquired ***substantial assets*** of its predecessor and continued, ***without interruption or substantial change***, the predecessor's business operations." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987) (quotation marks omitted) (emphasis added). Courts consider nine factors under this test. *See Battino*, 861 F. Supp. 2d at 404. As will be discussed in more detail in BP's moving papers, the crucial factors are not met here.

Moreover, the policy rationale underpinning the substantial continuity test makes clear that the test is wholly inapplicable to the unique facts of this case. The test is intended to address the concern that employers could escape liability, or make relief more difficult to obtain, by selling their assets without assumption of liabilities by the buyers (and the concomitant reduction in the sale price due to those liabilities), and then dissolving. *See, e.g.*, *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14-cv-4335 (LGS), 2015 U.S. Dist. LEXIS 124454, at *9 (S.D.N.Y. Sept. 17, 2015). The test also encourages potential purchasers of businesses to do their due diligence regarding liabilities and adjust their purchase offers accordingly. *Id.* at *19. Here, BP did not buy Dumbo's business or substantial assets. As the record in the bankruptcy shows, the mechanism by which BP assumed control of the 1 Front Street location was not, in any meaningful sense of the word, an asset sale at all—it was an eviction. In such circumstances, there is simply no rationale for applying the substantial continuity test—or successor liability more generally—against BP.

Thank you for your consideration of this matter.

Respectfully submitted,

 */s/ Denise M. Keyser*

Denise M. Keyser

---

[4] This Court also applied the substantial continuity test, without analysis, to the NYLL claims in *Chen*. However, it is clear from the briefs that the parties never argued different tests governed the state claims and FLSA claims.

cc: All counsel of record (via ECF)