UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
YASER OMAR, *et al.*,

Plaintiff,

-against-

1 FRONT STREET GRIMALDI, INC., *et al.,*

Defendant.
---------------------------------------------------------X

**REPORT AND RECOMMENDATION**
16 CV 5824 (LDH) (PCG)

**CROSS-GOLDENBERG**, United States Magistrate Judge:

Plaintiffs Yaser Omar, Emmanuel Garcia, Charlie Garcia, Maciej Gula, Santiago Basantes, Jonathan Espinal, Stephen Woskoska, Carlos Alatorre, Carlos Ordoñez, Marcos Alatorre, Klajdi Shyti, Miguel Adan, David Lucero, Christopher Woskoska, Romeo Cordova, Alberto Moreno, Juan De Gante, Felipe Martinez, Noe Rivera, and Moises Moreno bring this action against Corporate Defendants 1 Front Street Grimaldi, Inc. ("Front Street"), Dumbo Restaurant Corp., Sixth Avenue Grimaldi, Inc. ("Sixth Avenue"), 1215 Surf Ave. Restaurant Corp. ("Surf Ave.") (collectively, the "Corporate Defendants"), and Individual Defendant Frank Ciolli, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.* and bring claims for unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours premiums.[1] (Dkt. No. 185 ("Fifth Amended Complaint")). Presently before the Court is Plaintiffs' Third Motion for

---

[1] Plaintiffs also brought claims under the Wage Theft Protection Act for failure to provide accurate wage notices and wage statements. They have since withdrawn those claims. (See Dkt. No. 207 at 7). The Court therefore does not address those claims or recite Plaintiffs' allegations supporting those claims.

Default Judgment, referred to this Court by the Honorable LaShann DeArcy Hall. (Dkt. No. 206 ("Third Motion for Default Judgment")).

PROCEDURAL HISTORY

Plaintiffs Yaser Omar, Emmanuel Garcia, and Charles Garcia brought this action against Defendants Frank Ciolli, Front Street, Sixth Avenue, Grimaldi's Luna Park Inc., and 45 John Does on October 18, 2016. (Dkt. No. 1). Through a series of Amended Complaints, as well as both the certification and subsequent decertification of a Rule 23 class, Maciej Gula, Santiago Basantes, Jonathan Espinal, Stephen Woskoska, Carlos Alatorre, Carlos Ordoñez, Marcos Alatorre, Klajdi Shyti, Miguel Adan, David Lucero, Christopher Woskoska, Romeo Cordova, Alberto Moreno, Juan De Gante, Felipe Martinez, Noe Rivera, and Moises Moreno have been added as Named Plaintiffs. (See Fifth Amended Compl. ¶¶ 14-34). The remaining Defendants include Frank Ciolli, Front Street, Sixth Avenue, Dumbo Restaurant Corp., and Surf Ave. (Id. ¶¶ 36-45). Defendants Grimaldi's Luna Park Inc. and the 45 Doe defendants are no longer parties to this action.

On January 23, 2019, Rivkin Radler LLP, counsel for all Defendants, moved to withdraw its representation, citing Defendants' failure to pay legal fees pursuant to a retainer agreement. (Dkt. No. 62-1 ¶ 3). On March 22, 2019, the Honorable Cheryl L. Pollak denied the motion to withdraw without prejudice to renew once defendants obtained substitute counsel. (Dkt. No. 73). The Court held a hearing on the motion to withdraw on December 19, 2019 and granted the motion, giving Defendants until March 20, 2020 to obtain new counsel. (Dkt. No. 106). The Corporate Defendants were warned that they could not proceed *pro se* in federal court. (Id.) Defendant Ciolli appeared *pro se* at the next three conferences and, on July 10, 2020, the Court

gave Corporate Defendants an extension of time until August 26, 2020 to hire new counsel. (Dkt. No. 110). After several extensions, the Court provided Corporate Defendants with an ultimatum: "[i]f no notice of appearance is filed by October 23, 2020, plaintiff[s] may move for default." (Dkt. No. 114). To date, no notice of appearance has been filed.

On October 29, 2020, Plaintiffs Emmanuel Garcia, Charlie Garcia, and Yaser Omar filed a request for certificate of default, which was entered against the Corporate Defendants on November 3, 2020. (Dkt. Nos. 115, 118). On July 21, 2021, the Court Ordered Defendant Ciolli to produce a list of employees for Rule 23 class notification. (Dkt. No. 124). On December 7, 2021, after Defendant Ciolli failed to comply with the July 21 Order, the District Court adopted a Report and Recommendation from Judge Pollak recommending that Plaintiffs be permitted to issue a class notice at Mr. Ciolli's expense and that Mr. Ciolli be ordered to post the class notice and mail proof of publication. (Electronic Order, dated December 7, 2021).

On February 2, 2022, after Defendant Ciolli failed to comply with the District Court's December 7, 2021 Order, the Court issued an Order to Show Cause, directing Ciolli "to Show Cause why this Court should not recommend that a default be entered against him for his failure to comply with the Court's December 7, 2021 Order." (Dkt. No. 135). Defendant Ciolli appeared at the March 4, 2022 Show Cause Hearing and articulated that he transferred operations of his restaurants to third parties. (Dkt. No. 137). The Court Ordered Mr. Ciolli to produce copies of the assignment agreement by March 21, 2022. (Id.) Although Mr. Ciolli provided Plaintiffs with the agreement, Plaintiffs alerted the Court that the agreement was no longer in effect and that Plaintiffs were anticipating filing default judgment or summary judgment motions as to all Defendants. (Dkt. No. 139).

On November 4, 2022, Plaintiffs filed a premotion conference letter, informing the District Court of their intent to file a motion for summary judgment, a motion for default judgment, and an amendment to the certified class definition. (Dkt. No. 145). Included as part of this letter was a Rule 56.1 Statement of Material Facts, (Dkt. No. 145-1 ("56.1 Stmt.")), discovery responses and deposition transcripts, and declarations from several of the Plaintiffs. The District Court ordered Defendant Ciolli to respond by December 9, 2022. (Electronic Order, dated October 26, 2022). Defendant did not file an opposition and the District Court, after once extending the deadline *sua sponte*, gave Plaintiffs leave to file their anticipated motions. (Electronic Order, dated March 3, 2023). Plaintiffs filed their omnibus motion on May 5, 2023 seeking default judgment against the Corporate Defendants, summary judgment against Defendant Ciolli, amendment of the class definition, dismissal of any unidentified class members without prejudice, tolling with respect to the unidentified class members, attorneys' fees and costs, and damages on behalf of the Named Plaintiffs, six opt-in plaintiffs, and thirteen identified class members. (Dkt. No. 152 (the "Omnibus Motion").

Judge Pollak issued a Report and Recommendation on March 1, 2024 recommending that the District Court deny the motions without prejudice, decertify the class and subclass, and grant Plaintiffs leave to amend the Complaint. (Dkt. No. 160). On March 22, 2024, after receiving leave from the Court, Plaintiffs filed a motion to withdraw the Omnibus Motion and to decertify the certified class and subclass with leave to publish notice to become party plaintiffs. (Dkt. No. 164). The Court granted the Order on March 27, 2024 (Dkt. No. 165), after which 17 individuals filed consents to join as party plaintiffs. (Dkt. Nos. 166-181). Plaintiffs thereafter filed their Fifth Amended Complaint.

The Fifth Amended Complaint was served on Surf Avenue, Sixth Avenue, and Dumbo Restaurant Corp. via Secretary of State on September 6, 2024. (Dkt. Nos. 187-189). Defendant Frank Ciolli was served on September 19, 2024 via nail and mail service following four unsuccessful attempts at personal service at his home in Flushing, New York. (Dkt. No. 190). None of the Defendants answered or otherwise responded to the Fifth Amended Complaint and, on November 1, 2024, the Clerk of Court entered default against all Defendants. (Dkt. No. 194). Plaintiffs thereafter filed their Second Motion for Default Judgment, (Dkt. No. 195), which was served upon all Defendants on March 3, 2025. (Dkt. No. 198).

Judge Pollak provided Defendants an opportunity to submit a response to Plaintiffs' motion by June 10, 2025 and set an Inquest Hearing for June 17, 2025. (Dkt. No. 199). Defendants did not appear at the hearing. (Minute Entry, dated June 20, 2025). The Court issued a Report and Recommendation recommending denial of Plaintiffs' Second Motion for Default Judgment on July 21, 2025, citing a non-exhaustive list of deficiencies regarding standing to pursue Wage Theft Protection Act claims, calculation of damages, and inconsistent allegations for several of the Plaintiffs. (Dkt. No. 204). The Court advised counsel "to carefully review the various submissions and calculations of damages before submitting any revised requests." (Id. at 8). The District Court adopted the Report and Recommendation on September 26, 2025. (Electronic Order, dated September 26, 2025).

Plaintiffs filed the instant Third Motion for Default Judgment on January 12, 2026. (Dkt. No. 206). In support of the motion, Plaintiffs submitted a memorandum of law (Dkt. No. 207 ("Mot."), a declaration from Plaintiffs' counsel, Brent E. Pelton, Esq. (Dkt. No. 208 ("Pelton Decl."), a declaration from Plaintiff Yaser Omar (Dkt. No. 208-1 ("Omar Decl."), a copy of the

law firm's retainer agreement (Dkt. No. 208-2 ("Retainer"), damages charts (Dkt. No. 208-3 ("Damages Chart")), and counsel's contemporaneous billing records and invoices for costs (Dkt. Nos. 208-5, 208-6, 208-7). The Third Motion for Default Judgment was served upon all Defendants on January 21, 2026. (Dkt. No. 210).

In the Third Motion for Default Judgment, Plaintiffs have decided to waive their Wage Theft Prevention Act claims (Claims VI and VII).

## FACTUAL BACKGROUND

### I. Defendants

#### A. Frank Ciolli

According to the Fifth Amended Complaint, Defendant Frank Ciolli owned and operated a chain of Grimaldi's Pizzerias throughout New York City and New York State. (Fifth Amended Compl. ¶¶ 1, 2). Defendant Ciolli purchased the original Grimaldi's Pizzeria and expanded the restaurant to several locations, including those he operated through his sole ownership of the Corporate Defendants. (Id. ¶¶ 36, 37, 49, 50, 53-56). Plaintiffs allege that Ciolli operated the Corporate Defendants as a single integrated enterprise. (Id. ¶ 57). This enterprise, according to Plaintiffs' information and belief, had a gross revenue in excess of $500,000 and engaged in interstate commerce and the production of goods for commerce by using items imported from outside of New York. (Id. ¶¶ 67, 68, 237).

According to the Fifth Amended Complaint, Ciolli participated in the Corporate Defendants' day-to-day operations and was in control of the restaurants' employees. (Id. ¶¶ 59, 60). Plaintiffs depict Ciolli's ownership, operation, and management of the enterprise as "extremely active," with Ciolli centrally controlling the enterprise. (Id. ¶¶ 63, 64). He had the

power to hire and fire employees and transfer them between locations, he trained employees, and he controlled employee pay and maintained payroll records. (Id. ¶ 60).

B. Front Street

Defendant Front Street, a now inactive New York corporation, owned and operated the Brooklyn Bridge location[2] of Grimaldi's from approximately June 2012 until October 2016. (Id. ¶ 38).

C. Dumbo Restaurant Corp.

In approximately October 2016, Dumbo Restaurant Corp., a currently active New York corporation, succeeded Front Street and assumed operations of the Brooklyn Bridge location. (Id. ¶¶ 39, 40, 52). In October 2018, Dumbo filed for bankruptcy and underwent a Chapter 7 liquidation, ceasing operations but remaining an "active" corporation according to the New York Department of State. (Id. ¶ 41). Dumbo maintained operations of the Brooklyn Bridge Grimaldi's location until approximately March 2019. (Id. ¶ 40). Plaintiffs claim several of them filed creditor claims against Dumbo in the bankruptcy proceeding but did not recover any funds due to Dumbo's inability to pay. (Id. ¶ 41 n. 1). In approximately April 2019, ownership of Dumbo transferred to nonparties Brooklyn Pizzeria Inc. and Joseph Ciolli. (Id. ¶¶ 42, 71).

[2] When Defendant Ciolli purchased the original Grimaldi's Pizzeria location, it was located at 19 Old Fulton Street, Brooklyn, New York. (Fifth Am. Compl. ¶ 48). In 2009 or 2010, the restaurant moved from that location to 1 Front Street, Brooklyn, New York, which Plaintiffs describe as the "Brooklyn Bridge Location." (Id. ¶ 50; 56.1 Stmt. ¶ 2). Because the exact location of the restaurant does not affect the analysis herein, the Court refers to both locations interchangeably as the Brooklyn Bridge location.

D. Defendant Sixth Avenue

In approximately February 2019, Defendant Ciolli entered into a management agreement on behalf of Sixth Avenue with nonparty Brooklyn Born Holdings Group, Inc. to manage and operate a Grimaldi's Pizzeria location on Sixth Avenue. (Id. ¶¶ 44, 72). Since April 2019, the Sixth Avenue location was owned, operated, and managed by Brooklyn Born Holdings Group. (Id. ¶ 45).[3]

E. Defendant Surf Avenue

Defendant Surf Avenue, an active New York corporation, owned and operated a Coney Island location of Grimaldi's Pizzeria. (Id. ¶ 46). Plaintiffs do not allege when business operations began or if they are still ongoing.

II. Plaintiffs

Plaintiffs worked at seven Grimaldi's Pizzeria locations in New York City and on Long Island, working as servers, busboys, counter employees, dishwashers, pizza makers, food prep employees, and porters. (Id. ¶ 3).

A. Yaser Omar

Plaintiff Omar worked for Defendants from January 15, 2011 through August 13, 2016 at various New York City restaurant locations as both a cashier and a server. (Fifth Am. Compl. ¶ 75; Damages Chart at 5). From January 15, 2011 through December 31, 2012, he worked 12

[3] Plaintiffs claim that the new owners pleaded guilty to criminal wage theft charges on May 29, 2024. (Id. ¶ 73). Brooklyn Born Holdings Group, Brooklyn Pizzeria, Inc., and Joseph Ciolli are not defendants in the present action. (Id. ¶ 74).

hours per day, 4 days per week, totaling 48 hours per week. (Compl. ¶ 80).[4] During this period, he was paid only in tips. (Id. ¶ 82). From January 1, 2013 through the end of his employment on August 13, 2016, he worked 16.5 hours per day, 4 days per week, totaling 66 hours per week. (Id. ¶ 81). During this period, he spent half his time as a server making $60 per week plus tips, and half his time making $16 per hour as a cashier. (Id.¶ 83; Omar Decl. ¶ 6). He alleges he was not paid overtime or spread-of-hours premiums. (Fifth Am. Compl. ¶ 84).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

B. Emmanuel Garcia

Plaintiff Emmanuel Garcia ("E. Garcia") worked for Defendants as a busser, server, and counter employee from 2005 until June 15, 2014 at various New York City locations. (Fifth Am. Compl. ¶¶ 88-92; Damages Chart at 3). He alleges that from the beginning of the NYLL statute of limitations period on October 18, 2010 through June 15, 2014, he worked 12 hours per day, 5 days per week, spending 1 or 2 days per week as a counter employee and the remaining days per

---

[4] In the Fifth Amended Complaint, Plaintiffs allege that during this period, Plaintiff Omar worked 12 hours per day "four (4) or five (5) days per week." (Fifth Am. Compl. ¶ 80). The Fifth Amended Complaint is replete with allegations of ranges of hours or days worked. On this Motion for Default Judgment, the Court accepts as true Plaintiff's estimates or approximations of hours worked, but it must still ensure that the approximations are "reasonable and appropriate." Coley v. Vannguard Urb. Improvement Ass'n, Inc., No. 12 CV 5565, 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018); Santillan v. Henao, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011). Thus, when a plaintiff provides the Court with a range of days or hours worked, the Court must "use[] the lowest end of the range provided…since it cannot say with reasonable certainty that [the plaintiff] worked more than the low end of the range provided." Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474 2022 WL 940504, at *9 (E.D.N.Y. Jan. 25, 2022), report and recommendation adopted, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022). Accordingly, the Court relies on the lowest end of any range of hours worked provided by any Plaintiff.

week as a server. (Fifth Am. Compl. ¶¶ 94, 95). From October 18, 2010 through March 2013, he was paid $60 per week for time spent as a server and, when he worked as a counter employee, $100 per single shift and $200 per double shift. (Id. ¶¶ 97, 98). He does not allege how often he worked a single or double shift or how many hours comprised each type of shift, and alleges only that working a single shift was "relatively rare." (Id. ¶ 98; 56.1 Stmt. ¶ 48). The Fifth Amended Complaint does not contain any allegations as to how Plaintiff E. Garcia was paid after March 2013.[5] He alleges that throughout his employment he did not receive overtime or spread-of-hours premiums. (Compl. ¶ 99).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

C. Charlie Garcia

Plaintiff Charlie Garcia ("C. Garcia") worked for Defendants as a server at two New York City restaurant locations from October 18, 2010 through November 1, 2012. (Id. ¶¶ 103-106; Damages Chart at 4; 56.1 Stmt. ¶ 44). He alleges that from 2010 through August 14, 2012, he worked 12 hours per day, 4 days per week, totaling 48 hours per week. (Fifth Am. Compl. ¶¶ 107, 108; Damages Chart at 4). From August 15, 2012 until November 1, 2012, he worked 6 hours per day, 2 days per week, totaling 12 weekly hours. (Id.) During his entire employment

[5] Plaintiffs' Damages Chart submitted in support of the present motion shows that E. Garcia continued to work counter shifts for part of each week for the remainder of his employment. (Damages Chart at 3). It also contains a column for "server w[ee]kly rate," depicting a $60 weekly pay rate. (Id.) The Court can therefore determine that he continued to be paid as both a server and a counter employee, but it cannot determine how many days he worked each type of shift.

period, he was paid $40 per week. (Id. ¶ 110). He alleges that throughout his employment he did not receive overtime or spread-of-hours premiums.

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

D. Maciej Gula

Plaintiff Maciej Gula worked as a busser for Defendants at a Brooklyn restaurant location from February 15, 2011 to May 15, 2015. (Id. ¶ 111; Damages Chart at 21). During his employment, he worked 4 days per week, 12.5 hours per day, and 1 additional day per week for 10 hours per day, totaling 60 weekly hours. (Fifth Am. Compl. ¶ 113). He was paid $50 per week plus tips. (Id. ¶ 114). He alleges that throughout his employment, he was not paid overtime or spread-of-hours premiums.

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

E. Santiago Basantes

Plaintiff Santiago Basantes worked as a server for Defendants at one New York City restaurant location from August 15, 2012 to August 15, 2016. (Id. ¶ 117; Damages Chart at 11). Except for a 3-month period in 2012, Basantes worked 5 days per week, 13 hours per day,

totaling 65 weekly hours.[6] (Fifth Am. Compl. ¶ 118). He alleges there was a 3-month period in 2012 during which he worked 5 days per week, 12 hours per day, or 60 hours total. (Id. ¶ 119).[7] During his employment, Basantes was paid $60 per week plus tips. (Id. ¶¶ 120, 122). He alleges that throughout his employment, he was not paid overtime or spread-of-hours premiums. (Id. ¶ 121).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

F. Jonathan Espinal

Plaintiff Jonathan Espinal worked as a server for Defendants at two New York City locations from June 15, 2012 to August 15, 2016 and from October 9, 2016 to February 1, 2018. (Id. ¶¶ 123, 124; Damages Chart at 10). From June 15, 2012 through March 14, 2013, he worked 4 days per week, 13 hours per day, totaling 52 weekly hours. (Fifth Am. Compl. ¶ 125; Damages Chart at 10). From March 15, 2013 through March 14, 2014, he worked 5 days per

---

[6] Plaintiff Basantes alleges that he "frequently worked six (6) days, once or twice per month." (Fifth Am. Compl. ¶ 118). He does not allege how often he worked 6 days per week. The Court interprets the Fifth Amended Complaint to allege that, except for a 3-month period in 2012, Basantes worked 5 or 6 days per week, 13 hours per day. As the Court must apply the lowest end of any range provided, the Court analyzes Basantes's claims for this period based on a 5-day weekly schedule.

[7] This period corresponds with Defendants keeping the restaurants open 24 hours per day—a period which has been described as a "few months," "approximately 3 months," and "approximately (3) or six (6) months" in 2012 through 2015. (See Fifth Am. Compl. ¶¶ 147, 236; 56.1 Stmt. ¶¶ 21, 97). In Plaintiffs' 56.1 Statement submitted before Defendants' default, this period was also described as a 3-month period in 2014 to 2015. (56.1 Stmt. ¶ 82). However, the paragraph containing that period relates to a Plaintiff who is no longer party to this litigation. Moreover, Plaintiff C. Garcia testified that this period occurred in 2012. (See Dkt. No. 145-10 at 26:18-23; 31:7-32:10 (stating that he resigned in "late 2012" because his hours were reduced when the store shifted to a 24-hour schedule)). The Court therefore accepts that at least a portion of this period occurred in 2012. Moreover, exactly when this period occurred does not affect the substance of Plaintiffs' claims because the statutory minimum wage was the same in both 2012 and 2013.

week, 13 hours per day, totaling 65 weekly hours. (Fifth Am. Compl. ¶ 126; Damages Chart at 10). From March 15, 2014 through August 15, 2016, he worked 4 days per week, 7 hours per day, totaling 28 weekly hours. (Fifth Am. Compl. ¶ 127; Damages Chart at 10). From October 9, 2016 through the end of his employment on February 1, 2018, he worked 5 days per week, 8 hours per day, totaling 40 weekly hours. (Fifth Am. Compl. ¶¶ 128; Damages Chart at 10).

He alleges from June 15, 2012 through August 15, 2016, he was paid $60 per week plus tips. (Fifth Am. Compl. ¶ 129). According to his damages chart submitted in support of the present motion, Espinal continued to be paid $60 per week from October 9, 2016 through December 31, 2016. (Damages Chart at 10).

Espinal alleges that from January 1, 2017 through December 31, 2017, he was paid an hourly rate of $7.50 for 8 hours per day for a flat daily rate of $60 per day. (Compl. ¶ 130). From January 1, 2018 through February 1, 2018, he was paid an hourly rate of $8.65 for a flat $69.20 daily rate. (Id.) These amounts are backed up by Plaintiffs' Damages Chart. (Damages Chart at 10).

Throughout his employment, Espinal alleges he was not paid overtime or spread-of-hours premiums. (Fifth Am. Compl. ¶ 131).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

G. Stephen Woskoska

Plaintiff Stephen Woskoska ("S. Woskoska") worked for Defendants as a server, busser, food prep employee, and counter employee from June 15, 2013 through July 1, 2019 at various New York City restaurant locations. (Id. ¶¶ 132-135; Damages Chart at 15).

According to the Fifth Amended Complaint, from June 15, 2013 to "September or October 2014," S. Woskoska worked as a server or a busser for 5 days per week for 13 hours per day, totaling 65 hours per week, making no wages. (Fifth Am. Compl. ¶ 133, 136). From "September or October 2014" to February 28, 2016, he worked as a food prep employee making $10.50 per hour or as a busser making no wages, 5 days per week for 7 hours per day and an additional 13-hour day per week, totaling 48 hours per week, though he does not allege how many hours he worked as a food prep employee or as a busser or his total pay during this period. (Id. ¶ 134, 137, 139). From March 1, 2016 to November 30, 2018, S. Woskoska worked 5 days per week for 7 hours per day and an additional 13-hour day per week, totaling 48 hours per week, making $15 per hour from March 1, 2016 to February 28, 2017; $18 per hour from March 1, 2017 to February 28, 2018; and $20 per hour from March 1, 2018 to November 30, 2018. (Id. ¶ 137, 139). From December 1, 2018 to July 1, 2019, S. Woskoska worked 4 days per week for 12.5 hours per day, totaling 50 hours per week, for $20 per hour. (Id. ¶ 138, 139).[8]

The Damages Chart shows a different story. According to the Damages Chart, S. Woskoska worked for an average of 67.5 hours per week from June 15, 2013 to September 20,

[8] S. Woskoska alleges that there was a one-month period at some point in the four years between October 2014 and December 2018 where he worked 3 or 4 extra hours per week. Because he does not allege when this period occurred, the Court declines to include the extra 3 or 4 hours worked in its analysis of S. Woskoska's claims.

2013 for no wages, then did not work at all from September 21, 2013 to March 14, 2014. (Damages Chart at 15). From March 15, 2014 to August 14, 2014, he worked an average of 47 hours per week for $10.50 per hour for 50 percent of all hours worked, a period during which the Fifth Amended Complaint alleges he made no wages, and during which the lowest end of the range of hours worked is 48 hours per week. (Id.) From March 15, 2014 to February 29, 2016, the Damages Chart depicts S. Woskoska working an average of 47 hours per week making no wages, a period during which the Fifth Amended Complaint alleges he was paid $10.50 for at least some hours worked, and during which the lowest end of the range of hours worked is 48 hours per week. (Id.) From March 1, 2016 through November 30, 2018, the Damages Chart matches the Fifth Amended Complaint in terms of the wages paid per hour, but the Chart applies a lower average hours worked per week than the range provided in the Fifth Amended Complaint. (Id.) From January 1, 2019 to July 1, 2019, the Damages Chart shows S. Wosksoka was paid $20 per hour for only 75 percent of all hours worked, but it does not explain how S. Woskoska was paid for the other 25 percent of hours each week. (Id.)

He alleges he was not paid overtime or spread-of-hours premiums throughout his employment. (Fifth Am. Compl. ¶ 141).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

H. Carlos Alatorre

Plaintiff Carlos Alatorre ("C. Alatorre") worked for Defendants as a busser at one New York City restaurant location from July 15, 2012 through March 31, 2019.[9] (Id. ¶ 142). He worked 3 days per week, 14 hours per day, for 42 weekly hours. (Id. ¶ 143). He was paid $40 per day plus tips. (Id. ¶ 144). He alleges that throughout his employment, he was not paid overtime or spread-of-hours premiums. (Id. ¶ 145).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

I. Carlos Ordoñez

Plaintiff Carlos Ordoñez worked as a server for Defendants mainly at one New York City restaurant location from September 15, 2012 through the end of his employment on September 15, 2014. (Id. ¶ 146; Damages Chart at 9). Except for a 3-month period in 2013, he worked 5 days per week, 11 hours per day, totaling 55 weekly hours. (Fifth Am. Compl. ¶ 147). For 3 months in 2013, he worked 60 hours per week over 5 days every week, but he does not allege if he worked the same number of hours each day. (Id. ¶ 147). From September 15, 2012 through December 31, 2013, Plaintiff Ordoñez was paid only tips. (Id. ¶ 148). From January 1, 2014 through the end of his employment on September 15, 2014, he was paid $60 per week plus tips.

[9] Plaintiff Alatorre limits his damages to the beginning of his employment through the date Defendants sold several restaurant locations, March 31, 2019, although he continued to work for Defendants after that date. (Third Mot. for Default Judgment at 9).

(Id. ¶ 149). He alleges that throughout his employment, he was not paid overtime or spread-of-hours premiums. (Id. ¶ 150).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

J. Marcos Alatorre

Plaintiff Marcos Alatorre ("M. Alatorre") worked as a food prep employee and pizza cook for Defendants at two New York City locations from April 2002 through beyond March 31, 2019.[10] (Id. ¶¶ 151-53). During his entire employment period, he worked 8 hours per day, 6 days per week, totaling 48 hours worked per week. (Id. ¶¶ 154, 155). From the beginning of the NYLL statute of limitations period on October 18, 2010 to December 31, 2015, he was paid $520 per week. (Id. ¶ 156; Damages Chart at 23). From January 1, 2016 through December 31, 2017, he was paid $700 per week. (Fifth Am. Compl. ¶ 157; Damages Chart at 23). From January 1, 2018 through December 31, 2018, he was paid $750 per week. (Fifth Am. Compl. ¶ 158; Damages Chart at 23). From January 1, 2019 through March 31, 2019, his pay decreased to $730 per week. (Fifth Am. Compl. ¶ 159; Damages Chart at 23).

He alleges that throughout his employment, he was not paid overtime premiums. (Fifth Am. Compl. ¶ 160).

He joins in Claims II (FLSA Unpaid Overtime) and IV (NYLL Unpaid Overtime).

[10] Plaintiff M. Alatorre alleges he worked for Defendants until April 2024. (Compl. ¶ 151). However, he limits his damages to the beginning of his employment through the date Defendants sold several restaurant locations, March 31, 2019. (Third Mot. for Default Judgment at 9).

K. Klajdi Shyti

Plaintiff Klajdi Shyti worked for Defendants as a server at a New York City restaurant location from September 15, 2013 through March 15, 2017. (Fifth Am. Compl. ¶ 161; Damages Chart at 6). He worked 5 days per week, 12 hours per day, or 60 weekly hours, and was paid only in tips. (Fifth Am. Compl. ¶¶ 162, 163).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

L. Miguel Adan

Plaintiff Miguel Adan worked for Defendants as a pizza cook from 1998 through December 15, 2018 at two New York City restaurant locations. (Fifth Am. Compl. ¶¶ 164-66; Damages Chart at 19). From October 18, 2010 through the end of his employment on December 15, 2018, Adan worked 6 days per week, 8 hours per day, totaling 48 weekly hours. (Fifth Am. Compl. ¶ 168). From October 18, 2010 through December 31, 2012, he was paid $400 per week. (Id. ¶ 169; Damages Chart at 19). From January 1, 2013 through December 31, 2014, he was paid $450 per week. (Fifth Am. Compl. ¶ 169; Damages Chart at 19). From January 1, 2015 through December 31, 2016, he was paid $500 per week. (Fifth Am. Compl. ¶ 169; Damages Chart at 19). From January 1, 2017 until the end of his employment on December 15, 2018, he was paid $550 per week. (Fifth Am. Compl. ¶ 169; Damages Chart at 19).

He alleges that throughout his employment, he was not paid overtime or spread-of-hours premiums. (Id. ¶ 171).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

M. David Lucero

Plaintiff David Lucero worked for Defendants as a food prep employee from May 2010 through December 15, 2013 at one New York City location. (Fifth Am. Compl. ¶¶ 172, 173; Damages Chart at 16). He worked 6 days per week, 8 hours per day, totaling 48 weekly hours. (Fifth Am. Compl. ¶ 174).[11] From the beginning of his employment through December 31, 2011, he was paid $400 per week; and from January 1, 2012 through the end of his employment on December 15, 2013, he was paid $450 per week. (Id. ¶ 175). He alleges that throughout his employment, he was not paid overtime premiums. (Id. ¶ 176).

He joins in Claims II (FLSA Unpaid Overtime), and IV (NYLL Unpaid Overtime).

N. Chistopher Woskoska

Plaintiff Christopher Woskoska ("C. Woskoska") worked for Defendants as a server and counter employee from May 15, 2012 through the March 31, 2019 at various New York City restaurant locations. (Fifth Am. Compl. ¶¶ 178, 179, 181, 183; Damages Chart at 14).

From May 15, 2012 to June 3, 2012, C. Woskoska worked 5 days per week, 7 hours per day, totaling 35 weekly hours. (Fifth Am. Compl. ¶ 179; Damages Chart at 14). From June 4, 2012 through December 31, 2012, he worked 7 days per week, 13 hours per day, totaling 91

[11] He also alleges he "frequently worked up to two (2) additional hours per shift." (Fifth Am. Compl. ¶ 174). As Plaintiff Lucero does not allege when he worked these shifts, the Court does not factor them into its analysis.

weekly hours. (Fifth Am. Compl. ¶ 180). From January 1, 2013 through December 2, 2018, he worked 4 days per week, 7 hours per day, and an additional 12 hour day, totaling 40 weekly hours. (Id. ¶ 182).[12] From December 3, 2018 through December 11, 2018, he worked 42 hours, but he does not allege how many hours per day he worked during this period. (Id. ¶ 188). From December 12, 2018 until the end of his employment on April 15, 2019, he worked 2 days per week, 10 hours per day, totaling 20 weekly hours. (Id. ¶ 183).

From May 15, 2012 through December 31, 2015, he was a server and was only paid in tips. (Id. ¶¶ 181, 184; Damages Chart at 14). From 2016 through December 2, 2018, C. Woskoska spent half his time as a server making only tips, and half his time as a counter employee making $20 per hour. (Fifth Am. Compl. ¶¶ 181, 185). From December 3, 2018 to December 11, 2018, he was not paid at all. (Id. ¶ 188). From December 12, 2018 until the end of his employment in April 2019, C. Woskosa was a counter employee making $20 per hour. (Id. ¶¶ 183, 185).

He alleges that throughout his employment, he was not paid overtime or spread-of-hours premiums. (Id. ¶ 186).

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), III (NYLL Unpaid Minimum Wage), IV (NYLL Unpaid Overtime), and V (NYLL Unpaid Spread-of-Hours).

---

[12] Plaintiff C. Woskoska also alleges that twice per month he would work an additional 7-hour shift. (Fifth Am. Compl. ¶ 182). He does not allege the timing of these shifts. Two additional 7-hour shifts in the same week would have a greater effect on his claims than if he worked the shifts in different weeks. Accordingly, the Court treats this allegation to mean he worked the additional shifts in different weeks.

O. Romeo Cordova

Plaintiff Romeo Cordova worked for Defendants as a food prep employee and pizza cook in a New York City restaurant location from February 2009 through March 31, 2020 and again in September 2020.[13] (Id. ¶ 189). Until his initial departure in March 2020, he worked 6 days per week, 8 hours per day, totaling 48 hours per week.[14] (Id. ¶ 191). In September 2020, he worked 5 days per week, 5 hours per day, or 25 weekly hours. (Id. ¶ 192).

From 2009 through December 31, 2010, he was paid $400 per week. (Id. ¶ 193; Damages Chart at 20). From January 1, 2011 through March 31, 2019, he was paid $500 per week. (Fifth Am. Compl. ¶ 194; Damages Chart at 20). According to the Fifth Amended Complaint, from this point until March 2020, he was paid $17 per hour for the first 40 hours worked and $19 per hour for hours worked in excess of 40. (Fifth Am. Compl. ¶ 195). When he returned in September 2020, Cordova was paid $18 per hour.[15] (Id. ¶ 196). His damages chart, however, cuts off after March 31, 2019. He also alleges that throughout his employment he did not receive overtime premiums.

---

[13] Plaintiff does not allege an exact date at which he stopped working in March 2020. However, the Complaint says he worked "through in or around March 2020." (Fifth Am. Compl. ¶ 189). Applying the plain meaning of the word "through" as used in the Fifth Amended Complaint, the Court infers that he worked throughout the entire month of March 2020. However, the Fifth Amended Complaint alleges that Plaintiff Cordova worked from "in or around September 2020 to in or around October 2020." (Id.) As this second allegation does not state that Cordova worked through the month of October, the Court infers that Cordova only worked throughout the month of September 2020.

[14] Plaintiff Cordova also alleges that "during summer months," he "often worked shifts lasting over 10 hours." (Fifth Am. Compl. ¶ 191). As he does not allege how often he worked these shifts or during which months he considers "summer months," the Court treats this as a range and applies only the lowest end of the range provided.

[15] Cordova alleges he was paid $20 per hour for all weekly hours worked in excess of 40 in September 2020. (Compl. ¶ 196). However, he alleges he only worked 25 hours per week during this period.

He joins in Claims I (FLSA Unpaid Minimum Wage), II (FLSA Unpaid Overtime), and IV (NYLL Unpaid Overtime).

P. Alberto Moreno

Plaintiff Alberto Moreno ("A. Moreno") worked as a pizza cook for Defendants from 1990 through November 2019.[16] (Fifth Am. Compl. ¶ 199). Although he alleges he worked primarily in a New York City location, he also assisted in opening stores and training employees on Long Island and in Arizona. (Id. ¶ 200). He does not allege when or where he did this work.

From October 18, 2010 through December 31, 2015, he worked 6 days per week, 8 hours per day, for 48 total weekly hours. (Id. ¶ 201). From January 1, 2016 through March 31, 2019, he worked 5 days per week, 8 hours per day, for 40 total weekly hours. (Id. ¶ 202). He was paid $750 per week from October 18, 2010 through December 31, 2011, $800 per week from January 1, 2012 through December 31, 2013, $900 per week from January 1, 2014 through December 31, 2016, $1,100 per week from January 1, 2017 through March 31, 2019. (Id. ¶¶ 203-07; Damages Chart at 12). He alleges that throughout his employment, he was not paid overtime premiums. (Fifth Am. Compl. ¶ 208).

He joins in Claims II (FLSA Unpaid Overtime) and IV (NYLL Unpaid Overtime).

[16] Plaintiff A. Moreno alleges he worked for Defendants until November 2019. (Compl. ¶ 199). However, he limits his damages to the beginning of his employment through the date Defendants sold several restaurant locations, March 31, 2019. (Third Mot. for Default Judgment at 9). The Court therefore only relies on allegations from the beginning of the NYLL statute of limitations period on October 18, 2010 until the end of A. Moreno's damages period.

Q. Juan De Gante

Plaintiff Juan De Gante worked for Defendants as a pizza cook and food prep employee from August 1995 through March 2020.[17] (Id. ¶ 211). From October 18, 2010 through February 28, 2019, he worked 6 days per week, 9 hours per day, totaling 54 weekly hours. (Id. ¶ 213). In March 2019, he worked 5 days per week, 8 hours per day, totaling 40 weekly hours. (Id. ¶ 214). He was paid $780 per week from October 18, 2010 through December 31, 2017 and $880 per week from January 1, 2018 through March 31, 2019. (Id. ¶¶ 215, 216; Damages Chart at 18). He alleges that throughout his employment, he was not paid overtime premiums. (Fifth Am. Compl. ¶ 219).

He joins in Claims II (FLSA Unpaid Overtime) and IV (NYLL Unpaid Overtime).

R. Felipe Martinez

Plaintiff Felipe Martinez worked for Defendants as a dishwasher, food prep employee, and porter in New York City from May 2009 through June 15, 2013. (Fifth Am. Compl. ¶ 220; Damages Chart at 17). Throughout his employment, he worked 6 days per week, 7 hours per day, or 54 total weekly hours. (Fifth Am. Compl. ¶ 221). From October 18, 2010 through the end of his employment, he was paid $500 per week. (Id. ¶ 223, 224; Damages Chart at 17). He alleges that throughout his employment, he was not paid overtime or spread-of-hours premiums. (Fifth Am. Compl. ¶ 224).

---

[17] Plaintiff De Gante alleges he worked for Defendants until March 2020. (Compl. ¶ 211). However, he limits his damages to the beginning of his employment through the date Defendants sold several restaurant locations, March 31, 2019. (Third Mot. for Default Judgment at 9). The Court therefore only relies on allegations from the beginning of the NYLL statute of limitations period on October 18, 2010 until the end of De Gante's damages period.

He joins in Claims IV (NYLL Unpaid Overtime) and V (NYLL Unpaid Spread-of-Hours).

S. Noe Rivera

Plaintiff Noe Rivera worked for Defendants as a dishwasher, porter, and food prep employee in New York City from May 2009 through June 15, 2013. (Fifth Am. Compl. ¶¶ 225, 226; Damages Chart at 24). He worked 6 days per week, 7 hours per day, totaling 42 weekly hours. (Fifth Am. Compl. ¶ 226). He was paid $430 per week for the entire period. (Id. ¶ 227). He alleges that throughout his employment, he was not paid overtime premiums. (Id. ¶ 228).

He joins in Claim IV (NYLL Unpaid Overtime).

T. Moises Moreno

Plaintiff Moises Moreno worked for Defendants as a pizza cook in New York City from July 1990 until 2021.[18] (Id. ¶ 229). From October 18, 2010 through March 31, 2019, in the months of October through February, he worked 6 days per week, 8 hours per day, totaling 48 weekly hours, and from March through September each year, he would work 57 hours per week, but he does not allege the number of days worked per week or the number of hours worked per day. (Id. ¶ 230). He was paid $900 per week from October 18, 2010 through December 31, 2018, and $1,000 per week from January 2019 through March 31, 2019. (Id. ¶ 234; Damages

[18] Plaintiff M. Moreno alleges he worked for Defendants through 2021. (Compl. ¶ 229). However, he limits his damages to the beginning of his employment through the date Defendants sold several restaurant locations, March 31, 2019. (Third Mot. for Default Judgment at 9). The Court therefore only relies on allegations from the beginning of the NYLL statute of limitations period on October 18, 2010 until the end of M. Moreno's damages period.

Chart at 13). He alleges that throughout his employment, he was not paid overtime premiums. (Fifth Am. Compl. ¶ 234).

He joins in Claims II (FLSA Unpaid Overtime) and IV (NYLL Unpaid Overtime).

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 establishes a two-step process for the entry of default judgment: first, the Clerk of Court enters default against a party who fails to defend, and second, the Court enters default judgment. Fed. R. Civ. P. 55(a)-(b). See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). At the second step, "the Court may, on plaintiff['s] motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." Bricklayers & Allied Craftworkers Lc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 187 (2d Cir. 2015). The district court "consider[s] whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (quoting Leider v. Ralfe, No. 01 CV 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)). In other words, "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Id. (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

The Second Circuit has "expressed 'a strong preference for resolving disputes on the merits'" because "default judgment is 'the most severe sanction which the court may apply.'" New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (quoting Powerserve Int'l, Inc. v. Lavi, 230 F.3d 508, 514 (2d Cir. 2001) and Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 2001)). Thus, the Second Court characterizes a district court's discretion in granting default judgment as

"circumscribed." City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011) (quoting Enron Oil Corp., 10 F.3d at 95). The Court must therefore resolve all doubts in favor of the defaulting party to carry out the Second Circuit's preference for resolving disputes on their merits, Henry v. Oluwole, 108 F.4th 45, 51 (2d Cir. 2024), and to afford "litigants a reasonable chance to be heard." Enron Oil Corp., 10 F.3d at 95–96.

Further, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 972 F.2d 155, 158 (2d Cir. 1992). "Rather, '[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty.'" Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 252 (E.D.N.Y. 2024) (alterations in original) (adopting Report and Recommendation) (quoting Balhetchet v. Su Caso Mktg. Inc., No. 19 CV 4475, 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020)). A plaintiff may substantiate his claim for damages with documentary evidence or detailed affidavits. Id. When a defendant fails to challenge a plaintiff's claim for damages with records kept by the employer, plaintiff's "recollection and estimates of hours worked are presumed to be correct." Santillan v. Henao, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (quotation omitted). The Court must still, however, "ensure that the plaintiff's approximations and estimates are reasonable and appropriate." Coley v. Vannguard Urb. Improvement Ass'n, Inc., No. 12 CV 5565, 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018). Thus, when a plaintiff provides the Court with a range of hours worked, the Court must "use[] the lowest end of the range provided…since it cannot say with reasonable certainty that [the plaintiff] worked more than the low end of the range provided." Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474

2022 WL 940504, at *9 (E.D.N.Y. Jan. 25, 2022), report and recommendation adopted, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

## DISCUSSION

### I. Personal Jurisdiction

When deciding on a motion for default judgment against a non-appearing defendant, the Court must engage in a preliminary personal jurisdiction analysis to avoid the risk of a later determination that the judgment is void. Karwowski v. Kira Cap., LLC, No. 23 CV 310, 2023 WL 4824486, at *3 (E.D.N.Y. June 2, 2023) (citing City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 138 (2d Cir. 2011) & Yao Wu v. BDK DSD, No. 14 CV 5402, 2015 WL 5664256, at *2 (E.D.N.Y. Aug. 31, 2015), report and recommendation adopted, 2015 WL 5664534 (Sept. 22, 2015)). Personal jurisdiction, however, is something that can be waived when a defendant "give[s] a plaintiff a reasonable expectation that [it] will defend the suit on the merits or…cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." Corporacion Mexicana De Mantenimiento Integral, S. De R.L. DE C.V. v. Pemex-Exploracion Y Produccion, 832 F.3d 92, 102 (2d Cir. 2016) (citation omitted). This occurs when a party "actively litigat[es] other issues and forgo[es] the opportunity to litigate that right or defense." Roberts v. Bennaceur, 658 F. App'x 611, 616 (2d Cir. 2016). The Second Circuit has found personal jurisdiction waived where a defendant participated in the litigation prior to the entry of default judgment. See, Cadles of Grassy Meadow II, LLC v. O'Connor, 330 F. App'x 293, 295 (2d Cir. 2009).

Here, Corporate Defendants were served via Secretary of State and Defendant Ciolli was served via nail and mail service. All of the parties are domiciled in New York and the alleged

injuries were incurred within the state. All Defendants actively litigated this action for years until their respective defaults in November 2020 and November 2024. The Court therefore finds it has personal jurisdiction over the Defendants.

## II. Applicability of the FLSA and NYLL

To establish liability under the FLSA and NYLL, Plaintiffs must show there existed an employer-employee relationship between themselves and Defendants. Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 117 (E.D.N.Y. 2023). The FLSA also requires a showing that the employment relationship is not exempted from the FLSA. Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 366 (E.D.N.Y. 2022) (adopting Report and Recommendation). Additionally, to be entitled to overtime protections under the FLSA, a plaintiff must show either that the employees are "engaged in commerce," or that the employer is an "enterprise engaged in commerce." Gomez Cruz v. Ding Feng Lin Constr. LLC, 24 CV 2657, 2025 WL 2933201, at *9 (E.D.N.Y. Aug. 15, 2025), report and recommendation adopted, 2025 WL 2602265 (E.D.N.Y. Sept. 9, 2025) (quoting Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96–97 (2d Cir. 2009)).

### 1. Defendants as Employers

In determining whether there is an employer-employee relationship between Plaintiffs and Defendants, Courts interpret the definition of "employer" under the NYLL coextensively with the definition under the FLSA. Zabrodin, 702 F. Supp. 3d at 117. Courts in the Second Circuit employ an "economic reality" test to determine if a defendant is an "employer," "examining 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employment records.'" Gomez Cruz, 2025 WL 2933201, at *11 (quoting Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This test also establishes whether multiple defendants are joint employers. Id. The NYLL's definition of an employer is "broader than that contained in the FLSA" and "includes any individual, partnership association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." Sanchez, 643 F. Supp. 3d at 369 (internal quotations omitted).

Here, Plaintiffs allege that Defendant Ciolli owned and operated the chain of restaurants at which the Plaintiffs worked and operated the chain as an enterprise through his ownership of the Corporate Defendants. He controlled the day-to-day operations of the chain and had the power to hire and fire employees, and determined their pay, and work schedules and conditions of employment. The Court is therefore satisfied that he and the Corporate Defendants are joint employers under both the FLSA and the NYLL.

2. Plaintiffs as Employees

An "employee" under the FLSA is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Again, Courts look to the economic reality of the parties' relationship to determine if Plaintiffs are "employees." See Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) ("the ultimate question is whether the putative employee is economically dependent on the putative employer. In other words, the court must determine whether, as a matter of economic reality, the worker depends upon someone else's business for the opportunity to render service or is in business for himself") (alterations omitted) (quoting Godoy v. Rest. Opportunity Ctr. of N.Y., Inc., 615 F. Supp. 2d 186, 192–93 (S.D.N.Y.2009)).

Under the NYLL, "a plaintiff who 'provides information in the complaint as to where he worked, his position[,] and the dates of his employment' has 'sufficiently alleged employee status' in the context of a default judgment motion." Sanchez, 643 F. Supp. 3d at 369 (quoting Suggs v. Crosslands Transp., Inc., No. 13 CV 6731, 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 26, 2015)).

Here, Plaintiffs each worked as servers, busboys, counter employees, dishwashers, pizza makers, food prep employees, and porters at Defendants' restaurants. Defendants set their work schedules and determined their pay and work conditions. Plaintiffs each allege their work schedules and dates of employment between October 10, 2018 and September 30, 2020. Thus, Plaintiffs are employees under both the FLSA and NYLL.

3. FLSA and NYLL Exemptions

"[T]he FLSA 'contains a litany of exemptions' to qualified employees." Fermin, 93 F. Supp. 3d at 32 (quoting Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), aff'd sub nom. Chen v. Major League Baseball Props., Inc., 798 F.3d 72 (2d Cir. 2015)). The FLSA exemptions "are substantially similar in scope under the NYLL, [and] the court considers them together." Pastuizaca v. Mihwa Jo Corp., No. 22 CV 5561, 2025 WL 437929, at *4 (E.D.N.Y. Feb. 8, 2025) (quoting Tamayo v. DHR Rest. Co., No. 14 CV 9633, 2017 WL 532460, at *5 n.5 (S.D.N.Y. Feb. 3, 2017)), on reconsideration in part sub nom. Pastuizaca v. Mihwa Jo Corp, 2025 WL 2371048 (E.D.N.Y. Aug. 14, 2025). On a motion for default judgment where an employer fails to raise this affirmative defense, "a court may find that litigants are not exempt employees if they do not allege any facts that would make them exempt under the FLSA or NYLL." Rodriguez v. MRC Bakery Corp., 802 F. Supp. 3d 393, 424

(E.D.N.Y. 2025) (quotation omitted). When an employer does raise this affirmative defense, the employer bears the burden of proof and courts narrowly construe the exemption against the employer. Chen, 6 F. Supp. 3d at 454. As a matter of law, however, these exemptions do not apply to cooks, servers, and other similar non-managerial restaurant workers. See Zabrodin, 702 F. Supp. 3d at 118; Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022).

Here, although Defendants raised the exemption defense in their Answer to the initial Complaint and the First, Second, Third, and Fourth Amended Complaints, they did not raise it in response to the Fifth Amended Complaint. The Court therefore finds the defense abandoned here. Even were the Court not to make that finding, Plaintiffs as servers, cooks, and non-managerial restaurant employees do not fall under any of the FLSA's exemptions.

4. "Engaged in Commerce"

The last requirement under the FLSA requires either that the employee be "engaged in the production of goods for commerce" or that the employer be an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a). To be an "enterprise engaged in commerce," an employer must have an annual gross sales volume of at least $500,000 and have "employees handling, selling, or otherwise working on goods or materials that have been moving in or produced for commerce by any person." 29 U.S.C. §§203(s)(A)(i)-(iii). The NYLL does not contain the same requirement. See Sanchez, 643 F. Supp. 3d at 366.

Here, Plaintiffs allege that, according to their information and belief, Defendants had a gross revenue in excess of $500,000. They also allege that the restaurants utilized goods for

commerce by using items imported from outside of New York. "Moreover, it is reasonable to infer that the tools and goods required to operate a restaurant engaging in interstate commerce of more than $500,000 do not exclusively come from New York State." Brito, 2022 WL 875099, at *8. Accordingly, Plaintiffs adequately allege that Defendants are engaged in commerce.

## III. Statute of Limitations

Before considering liability under the statutes, the Court considers whether Plaintiffs' claims are timely under each statute's respective statute of limitations. See Jimenez, 744 F. Supp. 3d at 245. The FLSA has a two-year statute of limitations or, in cases of willful violations, a three-year statute of limitations. 29 U.S.C. § 255(a). Willfulness is inferred in cases of default. Tambriz v. Taste & Sabor LLC, 577 F. Supp. 3d 314, 328 (S.D.N.Y. 2021), report and recommendation adopted, No. 20 CV 5409, 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022). The NYLL has a six-year statute of limitations. Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015) (citing N.Y. Lab. L. §§ 198(3); 663(3)). Although a plaintiff may not simultaneously recover under both the FLSA and NYLL for the same injury, courts allow plaintiffs to "recover under whichever statute provides the greater relief." Pineda v. Frisolino, Inc., No. 15 CV 3774, 2017 WL 3835882, at *11 (S.D.N.Y. Aug. 29, 2017) (citations omitted). Accordingly, plaintiffs may recover under the NYLL for those claims which are timely under the NYLL but fall outside of the FLSA statute of limitations. Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015).

When a class action is commenced, the statute of limitations is tolled "as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." In re Vivendi Universal, S.A. Sec. Litig., 281 F.R.D. 165, 166 (S.D.N.Y. 2012)

(quoting Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 538 (1974)). In other words, "the statute of limitations in a Rule 23 class action…is tolled for all putative class members upon the filing of the complaint." Jurowski v. Hunter Kroner Ltd., No. 10 CV 1708, 2011 WL 13382900, at *1 (S.D.N.Y. July 14, 2011). The statute of limitations "remains tolled for all members of the putative class until class certification is denied." In re Vivendi Universal, S.A. Sec. Litig., 281 F.R.D. at 167 (citation omitted). It also remains tolled until decertification. Scott v. Chipotle Mexican Grill, Inc., No. 12 CV 8333, 2017 WL 1434498, at *1 (S.D.N.Y. Apr. 19, 2017). This differs from FLSA collective actions where the statute of limitations runs until each plaintiff files his consent to join the collective. Jurowski, 2011 WL 13382900, at *1.

This action was commenced as a class action by Plaintiffs Omar, E. Gacria, and C. Garcia on October 18, 2016. Judge Pollak recommended class certification on January 8, 2019 (Dkt. No. 60), and the District Court adopted that recommendation on March 3, 2019. (Dkt. No. 70). The class was decertified on March 27, 2024. (Dkt. No. 165). The District Court ordered all individuals who intended to participate as named plaintiffs to consent by May 22, 2024. (Id.) Plaintiffs A. Moreno, C. Woskosa, Martinez, De Gante, M. Moreno, Rivera, Lucero, Adan, Shyti, Alatorre, Ordoñez, C. Alatorre, Espinal, S. Woskosa, Basantes, Gula, and Cordova all consented.[19] (Dkt. Nos. 166-181, 184). The Fifth Amended Complaint was then filed on August 21, 2024, including all newly named Plaintiffs. (Dkt. No. 185).

[19] Plaintiff Cordova received an extension and timely filed on August 19, 2024. (See Electronic Order, dated August 18, 2024; Dkt. No. 184).

The Court therefore finds that the statute of limitations was tolled from the filing of the initial Complaint alleging a class of plaintiffs on October 18, 2016. Accordingly, the three-year FLSA statute of limitations reaches all allegations having occurred on or after October 18, 2013, and the six-year NYLL statute of limitations reaches all allegations having occurred on or after October 18, 2010.[20]

IV. Violations of the FLSA and NYLL

A. Minimum Wage

Plaintiffs Omar, E. Garcia, C. Garcia, Gula, Basantes, Espinal, S. Woskoska, C. Alatorre, Ordoñez, Shyti, Adan, and C. Woskoska bring minimum wage claims under both the FLSA (Count I), and the NYLL (Count III). Plaintiff Cordova brings a minimum wage claim only under the FLSA (Count I). Plaintiffs M. Alatorre, Lucero, A. Moreno, De Gante, Martinez, Rivera, and M. Moreno do not bring any minimum wage claims.

Both the FLSA and NYLL set standards requiring employers to pay their employees minimum wage. See 29 U.S.C. § 206(a)(1); 12 NYCRR § 146-1.2. Employers who violate the FLSA minimum wage provision are liable to their employees "in the amount of their unpaid minimum wages…and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employer must pay the greater of the federal and state minimum wage. 29 U.S.C. §§ 206, 218(a). At all relevant times in this litigation, the federal minimum wage has been $7.25 per hour. See 26 U.S.C. § 206(a)(1)(c) (setting federal minimum hourly wage to $7.25 as of July

---

[20] Plaintiffs C. Alatorre, M. Alatorre, A. Moreno, De Gante, and M. Moreno have voluntarily limited their damages period to claims until March 31, 2019. (Third Mot. for Default Judgment at 9).

24, 2009). New York State set the minimum wage at $7.15 per hour on January 1, 2007 and increased it to $8.00 per hour on December 31, 2013, $8.75 per hour on December 31, 2014, and $9.00 per hour on December 31, 2015. N.Y. Lab. L. § 652(1).

For large employers, defined as an employer of eleven or more employees, in New York City, the minimum wage increased to $11.00 per hour on December 31, 2016, $13.00 per hour on December 31, 2017, and $15.00 per hour on December 31, 2018. N.Y. Lab. L. § 652(1); 12 NYCRR 146-1.2(a)(1)(i). For employers on Long Island, the minimum wage increased to $10.00 per hour on December 31, 2016, $11.00 per hour on December 31, 2017, $12.00 per hour on December 31, 2018, $13.00 per hour on December 31, 2019, $14.00 per hour on December 31, 2021, and $15.00 per hour on December 31, 2021. N.Y. Lab. L. § 652(1); 12 NYCRR 146-1.2(a)(1)(ii). Accordingly, for claims arising before December 31, 2013, the federal minimum wage of $7.25 applies. For claims arising on or after December 31, 2013, state minimum wage applies.

To determine whether a plaintiff was paid the proper minimum wage, the Court must determine his regular hourly rate of pay. Sanchez, 643 F. Supp. 3d at 371. "The regular rate is 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'" Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005) (citing Walling v. Youngerman–Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The regular rate of pay is therefore calculated by dividing his weekly salary by non-overtime hours worked. See Feng v. Kelai Corp., 727 F. Supp. 3d 423, 446 (S.D.N.Y. 2024), appeal dismissed (June 13, 2024) ("The New York Hospitality Wage Order…provides that where 'an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be

calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.'") (quoting 12 N.Y.C.R.R. § 146-3.5(b)).

One exception to the statutory minimum wage requirement is the "tip credit." "Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir. 2018) (quoting Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015)). See 29 U.S.C. § 203(m); 12 NYCRR 146-1.1(a), 146-1.3, 146-3.1(a). To be entitled to the tip credit, an employer must notify the employee of the tip credit and all tips received by the employee must be retained by the employee. Gamero, 272 F. Supp. 3d at 501; Fermin, 93 F. Supp. 3d at 39. The burden to show compliance with the tip credit requirements rests with the employer. Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 234 (S.D.N.Y. 2020), report and recommendation adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc., No. 16 CV 8782, 2021 WL 2139441 (S.D.N.Y. May 26, 2021). According to Plaintiffs' 56.1 Statement submitted alongside the now-withdrawn summary judgment motion, Defendants did not inform Plaintiffs they were taking the tip credit. (56.1 Stmt. ¶ 31). Thus, the Court finds that Defendants were not entitled to the tip credit.

1. Plaintiff Omar

From January 15, 2011 through December 31, 2012, Plaintiff Omar worked 12 hours per day, 4 days per week, totaling 48 hours per week. For the remainder of his employment until

August 13, 2016, he worked 16.5 hours per day, 4 days per week, totaling 66 hours per week. From January 15, 2011 until October 31, 2012, Omar was paid only in tips. After this period, he spent half his time as a server making $60 per week and the other half as a cashier making $16 per hour. As Plaintiff Omar was paid only tips from January 15, 2011 to October 31, 2012, the Court finds that he has established liability for failure to pay minimum wage for this period.

For the remainder of Omar's employment, he spent half his weekly time working as a server for $60 per week and the other half as a cashier making $16 per hour. From January 1, 2012 until December 31, 2012 when Omar worked 48 hours per week, he was therefore paid $444 per week. Dividing this weekly pay by non-overtime hours worked, Omar's regular rate of pay during this period was $11.10 per hour. For the remainder of his employment, he worked 66 hours per week and was paid $588 per week. His regular rate of pay from January 1, 2013 through August 13, 2016 was therefore $14.70 per hour. As each of these regular rates of pay exceeded the statutory minimum wage, Omar has not established a minimum wage violation from January 1, 2012 through the end of his employment.

The Court therefore respectfully recommends granting default judgment as to Plaintiff Omar's NYLL minimum wage claim limited to the period of January 15, 2011 to October 31, 2012. The Court respectfully recommends denying default judgment as to Omar's FLSA minimum wage claim because these allegations occurred outside of the FLSA statute of limitations.

2. <u>Plaintiff E. Garcia</u>

From the beginning of the statute of limitations period on October 18, 2010 through June 15, 2014, Plaintiff E. Garcia worked 12 hours per day, 5 days per week and was scheduled as a

counter employee for 1 or 2 of those days, and as a server the remaining 3 to 4 days. From the beginning of this period until March 2013, he was paid $60 per week for his time worked as a server, and $100 for every single shift or $200 for every double shift worked as a counter employee.

The Court cannot determine if there was a minimum wage violation. First, Plaintiff does not allege how much he was paid after March 2013, so it cannot recommend that the District Court find liability for a minimum wage violation from the period of March 2013 to June 2014. Second, Plaintiff E. Garcia does not allege how often he worked a single versus a double shift as a counter employee other than to say it was "relatively rare." His allegations are not sufficient for the Court to determine how often he worked 1 or 2 days per week as a counter employee. Depending on his schedule, he may have been paid anywhere from $160 to $460 per week. Dividing that number by the 40 non-overtime hours he worked each week, his regular rate of pay could have ranged from $4 per hour to $11.50 per hour.

Therefore, the Court respectfully recommends denying default judgment liability as to E. Garcia's NYLL and FLSA minimum wage claims.

3. Plaintiff C. Garcia

From the beginning of the statute of limitations period on October 18, 2010 through August 14, 2012, Plaintiff C. Garcia worked 12 hours per day, 4 days per week, totaling 48 hours per week and was paid $40 per week. From August 15, 2012 through the end of his employment on November 1, 2012, he worked 6 hours per day, 2 days per week, totaling 12 weekly hours, and was paid $40 per week.

Dividing his weekly pay by weekly non-overtime hours worked, the Court calculates that Plaintiff C. Garcia's regular rate of pay from October 18, 2010 through August 14, 2012 was $1 per hour and his regular rate of pay from August 15, 2012 through November 1, 2012 was $3.33 per hour. Each of these rates falls below the statutory minimum wage at all relevant times.

The Court therefore respectfully recommends granting default judgment as to C. Garcia's NYLL minimum wage claim. However, because he does not allege any facts occurring within the FLSA statute of limitations, the Court respectfully recommends denying default judgment as to Plaintiff C. Garcia's FLSA minimum wage claim.

4. Plaintiff Gula

From February 15, 2011 through May 2015, Plaintiff Gula worked 4 days per week, 12.5 hours per day, and an additional day for 10 hours per day, totaling 60 hours per week. During this time, he was paid $50 per week plus tips.

Dividing his weekly pay by non-overtime hours worked, Plaintiff Gula's regular rate of pay was $1.25 per hour. Defendants were not entitled to the tip credit, and the Court does not credit tips against Gula's minimum wage claims. Because Plaintiff Gula's regular rate of pay was below the statutory minimum wage at all relevant times, the Court respectfully recommends granting default judgment as to Plaintiff Gula's NYLL and FLSA minimum wage claims.

5. Plaintiff Basantes

From August 15, 2012 to August 15, 2016, Basantes worked 5 days per week, 13 hours per day, totaling 65 weekly hours, except for a 3-month period in 2012 when he worked 5 days per week, 12 hours per day, totaling 60 weekly hours worked. He does not specify which 3

months he worked 60 hours per week. During his entire employment, he was paid $60 per week plus tips.

Dividing his weekly pay by non-overtime hours worked, the Court calculates that Plaintiff Basantes's regular rate of pay for the first 40 hours he worked each week throughout his employment was $1.50 per hour. Defendants were not entitled to the tip credit, and the Court does not credit tips against Basantes's minimum wage claims. Because Plaintiff Basantes's regular rate of pay was below the statutory minimum wage at all relevant times, the Court respectfully recommends granting default judgment as to Plaintiff Basantes's FLSA and NYLL minimum wage claims.

6. Plaintiff Espinal

Plaintiff Espinal worked 4 days per week, 13 hours per day, totaling 52 hours per week from June 15, 2012 through March 14, 2013; 5 days per week, 13 hours per day, totaling 65 hours per week from March 15, 2013 through March 14, 2014; 4 days per week, 7 hours per day, totaling 28 hours per week from March 15, 2014 through August 15, 2016; zero hours from August 16, 2016 to October 8, 2016; and 5 days per week, 8 hours per day, totaling 40 hours per week from October 9, 2016 until the end of his employment on February 1, 2018. From June 15, 2012 through December 31, 2016, he was paid $60 per week plus tips. From January 1, 2017 through December 31, 2017, he was paid a flat $60 per day. From January 1, 2018 through February 1, 2018, he was paid a flat rate of $69.20 per day.

Dividing his weekly pay by number of non-overtime weekly hours worked, Plaintiff Espinal's regular rate of pay was $1.50 per hour from June 15, 2012 through March 14, 2014; $2.14 per hour from March 15, 2014 to August 15, 2016; $1.50 per hour from October 9, 2016 to

December 31, 2016; $7.50 per hour from January 1, 2017 to December 31, 2017; and $8.65 per hour from January 1, 2018 to February 1, 2018.

Because Plaintiff Espinal's regular rate of pay was below the statutory minimum wage at all times, the Court respectfully recommends granting default judgment as to Plaintiff Espinal's minimum wage claims under both the FLSA and NYLL.

7. Plaintiff S. Woskoska

As discussed *supra*, Plaintiff S. Woskoska's allegations are full of contradictions. For example, from March 15, 2014 to February 29, 2016, the Damages Chart depicts S. Woskoska working an average of 47 hours per week making no wages, a period during which the Fifth Amended Complaint alleges he was paid $10.50 for at least some hours worked, and during which the lowest end of the range of hours worked is 48 hours per week. Although the Court can determine that there were at least some points during which S. Woskoska was not paid any wages, it cannot determine exactly when those periods occurred. The Court therefore respectfully recommends denying default judgment as to S. Woskoska's FLSA and NYLL minimum wage claims with leave to renew.

8. Plaintiff C. Alatorre

Plaintiff C. Alatorre worked 3 days per week, 14 hours per day, totaling 42 weekly hours worked, from July 15, 2012 through March 31, 2019. He was paid a flat daily rate of $40. The Court calculates his regular rate of pay was $3.00 per hour, which is lower than the applicable minimum wage at all relevant times. The Court therefore respectfully recommends granting default judgment as to C. Alatorre's NYLL and FLSA minimum wage claims.

9. Plaintiff Ordoñez

From September 15, 2012 through the end of his employment in September 15, 2014, with the exception of a 3-month period in 2013, Plaintiff Ordoñez worked 55 total weekly hours. For 3 months in 2013, he worked 60 total weekly hours. From September 15, 2012 through December 31, 2013, Ordoñez was paid only in tips. Starting January 1, 2014, he was paid $60 per week.

Defendants are not entitled to the tip credit. In consequence, the Court finds that Plaintiff Ordoñez has adequately alleged a minimum wage claim for all hours worked from September 2012 through the end of 2013. The Court calculates his regular rate of pay for the remaining period as $1.50 per hour, which is lower than the applicable minimum wage at all relevant times. The Court respectfully recommends granting default judgment as to Ordoñez's NYLL and FLSA minimum wage claims.

10. Plaintiff Shyti

From September 15, 2013 through the end of his employment on March 15, 2017, Plaintiff Shyti worked 60 hours per week and was paid only in tips. Defendants are not entitled to any tip credit. In consequence, the Court finds that Plaintiff Shyti has adequately alleged a minimum wage violation under both the NYLL and the FLSA and the Court respectfully recommends granting default judgment as to Shyti's NYLL and FLSA minimum wage claims.

11. Plaintiff Adan

Throughout Adan's employment, he worked 48 hours per week. From the beginning of the NYLL statute of limitations period on October 18, 2010 through December 31, 2012, he was paid $400 per week. From January 1, 2013 through December 31, 2014, he was paid $450 per

week. From January 1, 2015 through December 30, 2016, he was paid $500 per week. From January 1, 2017 until the end of his employment on December 15, 2018, he was paid $550 per week.

Dividing his weekly pay by the number of non-overtime hours worked each week, the Court calculates that Plaintiff Adan's regular rate of pay from October 18, 2010 through December 2012 was $10.00 per hour. From January 2013 through December 2014, his regular rate of pay was $11.25 per hour. From January 2015 through December 2016, his regular rate of pay was $12.50 per hour. From January 2017 through December 2018, his regular rate of pay was $13.75 per hour. As these regular rates of pay exceeded the minimum wage at all relevant times, the Court respectfully recommends denying default judgment as to Adan's FLSA and NYLL minimum wage claims.

12. <u>Plaintiff C. Woskoska</u>

From May 15, 2012 through June 3, 2012, C. Woskoska worked 35 weekly hours. From June 4, 2012 through December 31, 2012, he worked 91 weekly hours. From January 1, 2013 through December 2, 2018, he worked 40 weekly hours. From December 3, 2018 through December 11, 2018 he worked 42 weekly hours. From December 12, 2018 through April 15, 2019, he worked 20 weekly hours. From May 15, 2012 through December 31, 2015, he was paid only in tips. From January 1, 2016 through December 2, 2018, he spent half his time as a server making only tips, and half his time as a counter employee making $20 per hour, or $400 per week. He was not paid at all from December 3 to December 11, 2018. On and after December 12, 2018, he was paid $20 per hour for all hours worked.

Defendants are not entitled to any tip credit. In consequence, the Court finds that C. Woskoska has established that Defendants have failed to pay him minimum wage from May 15, 2012, through December 31, 2015. From January 1, 2016 through December 2, 2018, C. Woskoska's regular rate of pay was $10 per hour, which was above the statutory minimum wage from January 1, 2016 to December 30, 2016 but below the minimum wage from December 31, 2016 to December 2, 1018. Defendants failed to pay C. Woskoska from December 3, 2018 to December 11, 2018. At all times on and after December 12, 2018, C. Woskoska's regular rate of pay was $20 per hour, which was in excess of the minimum wage.

The Court respectfully recommends granting default judgment as to Plaintiff C. Woskoksa's FLSA and NYLL minimum wage claims, limited to the periods of May 15, 2012 through December 31, 2015, and December 31, 2016 to December 11, 2018 .

13. Plaintiff Cordova

From the beginning of the FLSA statute of limitations period on October 18, 2013 through March 31, 2019, he worked 48 hours per week and was paid $500 per week. From April 1, 2019 through March 2020, he worked 40 hours per week at a rate of $17 per hour and another 8 hours per week at a rate of $19 per hour. When he returned to work for Defendants for one month in September 2020, he worked 25 hours per week at a rate of $18 per hour.

The Court calculates that Cordova's regular rate of pay from October 18, 2013 through March 31, 2019, his regular rate of pay was $12.50 per hour. From April 1, 2019 through March 2020, his regular rate of pay for non-overtime hours was $17 per hour. In September 2020, his regular rate of pay was $18 per hour.

Plaintiff Cordova's regular rate of pay exceeded the minimum wage until December 31, 2017. His regular rate of pay fell below the minimum wage on December 31, 2017 and remained below the minimum wage until April 1, 2019 when his pay increased to $17 per hour for all non-overtime hours worked.

The Court therefore respectfully recommends granting default judgment as to Cordova's FLSA minimum wage claims for the period of December 31, 2017 to March 31, 2019.

* * *

The Court respectfully recommends that the District Court: (1) grant default judgment for the FLSA minimum wage claims brought by Plaintiffs Gula, Basantes, Espinal, C. Alatorre, Ordoñez, and Shyti, and in part as to Plaintiffs C. Woskoska and Cordova; (2) deny default judgment for the FLSA minimum wage claims brought by Plaintiffs Omar, E. Garcia, C. Garcia, S. Woskoska, and Adan; (3) grant default judgment as to the NYLL minimum wage claims brought by Plaintiffs C. Garcia, Gula, Basantes, Espinal, C. Alatorre, Ordoñez, and Shyti, and in part as to Plaintiffs Omar, and C. Woskoksa; and (4) deny default judgment as to the NYLL minimum wage claims brought by Plaintiffs E. Garcia, S. Woskoska, and Adan.

B. Overtime

All Plaintiffs bring overtime claims under the NYLL (Count IV), and all Plaintiffs except Martinez and Rivera bring overtime claims under the FLSA (Count II).

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir.2013) (citing 29 U.S.C. § 207(a)). "The NYLL largely adopts the same standard as the FLSA with

respect to overtime compensation." Fermin, 93 F. Supp. 3d at 43. A plaintiff's bar to establish overtime liability on a motion for default judgment is low, and a plaintiff must simply "'provide sufficient detail about the length and frequency of the unpaid work to support a reasonable inference that the plaintiff worked more than forty hours in a given week.'" Gomez Cruz, 2025 WL 2933201, at *14 (alteration omitted) (quoting Nakahata, 723 F.3d at 201). "Absent statutory exceptions, a flat sum compensation arrangement generally violates the overtime requirements of the FLSA and the NYLL when an employee works in excess of 40 hours per week without additional hourly compensation." Sanchez, 643 F. Supp. 3d at 370.

1. Plaintiff Omar

Plaintiff Omar worked greater than 40 hours throughout his employment. From January 15, 2011 through October 31, 2012, he was not paid any wages at all and was therefore also not paid overtime wages. For the remainder of his employment, he was paid $60 per week for half of all hours worked and $16 per hour for the remaining hours worked. He alleges that during this time, he was not paid an overtime premium for hours worked in excess of 40. Accordingly, the Court respectfully recommends granting default judgment as to Plaintiff Omar's NYLL overtime claim. However, because Plaintiff Omar does not bring any allegations within the FLSA statute of limitations, the Court respectfully recommends denying default judgment as to Omar's FLSA overtime claim.

2. Plaintiff E. Garcia

Plaintiff E. Garcia worked in excess of 40 hours per week for the entirety of his employment. During this time, he was paid $60 per week for 3 or 4 days of work and for the remaining 1 or 2 days worked per week, he was paid $100 if he worked a single shift or $200 if

he worked a double shift, but he was not paid overtime premiums for hours worked in excess of 40.[21] The Court therefore respectfully recommends granting E. Gracia's FLSA and NYLL overtime claims.

3. Plaintiff C. Garcia

Plaintiff C. Garcia worked in excess of 40 hours per week from the beginning of the statute of limitations period on October 18, 2010 until August 14, 2012. He alleges that during this time he was paid a flat $40 weekly rate and was not paid overtime premiums for weekly hours worked in excess of 40. Accordingly, Plaintiff C. Garcia has established liability for both his NYLL and FLSA overtime claims for that period. He does not allege he worked any overtime hours after September or October 2012 and is therefore not entitled to overtime compensation for that period. The Court respectfully recommends granting default judgment as to C. Garcia's NYLL overtime claims from October 18, 2010 until August 14, 2012. However, because he does not allege any facts occurring within the FLSA statute of limitations, the Court respectfully recommends denying default judgment as to Plaintiff C. Garcia's FLSA overtime claim.

4. Plaintiff Gula

Plaintiff Gula worked greater than 40 hours per week for the entirety of his employment and was paid a flat $50 weekly without overtime compensation. The Court therefore respectfully recommends granting default judgment as to Plaintiff Gula's NYLL and FLSA overtime claims.

---

[21] The Fifth Amended Complaint does not allege how much E. Garcia was paid after March 2013. The Damages Chart, however, shows that E. Garcia worked the same schedule for the same total pay for the entirety of his employment.

5. Plaintiff Basantes

Plaintiff Basantes worked greater than 40 hours per week for the entirety of his employment and was paid a flat $60 weekly rate without overtime compensation. The Court therefore respectfully recommends granting default judgment as to Plaintiff Basantes's NYLL and FLSA overtime claims.

6. Plaintiff Espinal

Plaintiff Espinal worked more than 40 hours per week from June 15, 2012 through March 14, 2014 and was paid a flat weekly rate without overtime compensation. He does not allege that he worked greater than 40 hours per week during any other period of his employment. The Court therefore respectfully recommends granting default judgment as to Plaintiff Espinal's NYLL and FLSA overtime claims, limited to the period of June 15, 2012 to March 14, 2014.

7. Plaintiff S. Wosksoska

Plaintiff S. Woskoska worked greater than 40 hours per week for the entirety of his employment and was paid the same hourly rate for all hours worked. The Court therefore respectfully recommends granting default judgment as to S. Woskoksa's NYLL and FLSA overtime claims.

8. Plaintiff C. Alatorre

Plaintiff C. Alatorre worked greater than 40 hours per week for the entirety of his employment and was paid a flat daily rate without overtime premiums. The Court therefore respectfully recommends granting default judgment as to C. Alatorre's NYLL and FLSA overtime claims.

9. Plaintiff Ordoñez

Plaintiff Ordoñez worked greater than 40 hours per week for the entirety of his employment and was paid no wages from September 15, 2012 through December 31, 2013 and a flat $60 weekly rate from January 2014 until the end of his employment in September 2014 without overtime premiums. The Court therefore respectfully recommends granting default judgment as to Plaintiff Ordoñez's NYLL and FLSA overtime claims.

10. Plaintiff M. Alatorre

From the beginning of the NYLL statute of limitations period on October 18, 2010 until the end of M. Alatorre's damages period, he worked greater than 40 hours per week. During this time, he was paid a flat weekly rate for all hours worked and did not receive overtime premiums. The Court therefore respectfully recommends granting default judgment as to M. Alatorre's NYLL and FLSA overtime wage claims.

11. Plaintiff Shyti

Plaintiff Shyti worked greater than 40 hours per week for the entirety of his employment and was not paid any wages other than tips. The Court therefore respectfully recommends granting default judgment as to Plaintiff Shyti's NYLL and FLSA overtime claims.

12. Plaintiff Adan

Plaintiff Adan worked greater than 40 hours per week for the entirety of his employment and was paid a flat weekly rate without overtime premiums. The Court therefore respectfully recommends granting default judgment as to Adan's NYLL and FLSA overtime claims.

13. Plaintiff Lucero

Plaintiff Lucero worked greater than 40 hours per week for the entirety of his employment and was paid a flat weekly rate without overtime premiums. The Court therefore respectfully recommends granting default judgment as to Lucero's NYLL and FLSA overtime claims.

14. Plaintiff C. Woskoska

Plaintiff C. Woskoska worked 91 hours per week from June 4, 2012 through December 31, 2012, 40 hours per week from January 1, 2013 to December 2, 2018, 42 hours per week from December 3, 2018 to December 11, 2018, and 20 hours per week on and after December 12, 2018. Accordingly, C. Woskoska worked overtime hours only during the periods of June 3, 2012 through December 31, 2012 and December 3, 2018 to December 11, 2018.

From 2012 through 2015, C. Woskoska was not paid any wages at all other than tips and has therefore established he is entitled to overtime compensation for that period. From 2015 through December 11, 2018, C. Woskoska was either paid only tips or was paid $20 per hour without overtime premiums. The Court therefore respectfully recommends granting default judgment as to C. Woskoska's NYLL and FLSA overtime claims limited to the periods of June 4, 2012 through December 31, 2012 and December 3, 2018 to December 11, 2018.

15. Plaintiff Cordova

From the beginning of the NYLL statute of limitations period on October 18, 2010 through March 2020, Plaintiff Cordova worked greater than 40 hours per week. Until March 31, 2019, he was paid a flat weekly rate without overtime premiums. From April 1, 2019 through March 2020, he was paid a $17 hourly rate for the first 40 hours worked each week and $19 per

hour for all hours worked in excess of 40. As this falls below a time-and-a-half overtime premium, Cordova has established that Defendants failed to pay him overtime compensation from October 18, 2010 through March 2020. He does not allege that he worked any overtime hours when he returned to work for Defendants in September 2020.

The Court therefore respectfully recommends that the District Court grant default judgment as to Cordova's NYLL and FLSA overtime claims, limited to the period of October 18, 2010 through March 2020.

16. Plaintiff A. Moreno

From the beginning of the NYLL statute of limitations period on October 18, 2010 through December 31, 2019, Plaintiff A. Moreno worked greater than 40 hours per week and was paid a flat weekly rate without overtime premiums. He does not allege that he worked any overtime hours from January 1, 2016 through March 31, 2019. The Court therefore respectfully recommends granting default judgment as to A. Moreno's NYLL and FLSA overtime claims, limited to the period of October 18, 2010 to December 31, 2015.

17. Plaintiff De Gante

From the beginning of the NYLL statute of limitations period on October 18, 2010 through February 28, 2019, Plaintiff De Gante worked greater than 40 hours each week and was paid a flat weekly rate without overtime premiums. He does not allege that he worked any overtime hours in March 2019. The Court therefore respectfully recommends granting default judgment as to De Gante's NYLL and FLSA overtime claims, limited to the period of October 18, 2010 to February 28, 2019.

18. Plaintiff Martinez

From the beginning of the NYLL statute of limitations period on October 18, 2010 through the end of his employment on June 15, 2013, Plaintiff Martinez worked greater than 40 hours each week and was paid a flat weekly rate without overtime premiums. The Court therefore respectfully recommends granting default judgment as to Martinez's NYLL overtime claim.

19. Plaintiff Rivera

From the beginning of the NYLL statute of limitations period on October 18, 2010 until the end of his employment on June 15, 2013, Plaintiff Rivera worked greater than 40 hours each week and was paid a flat weekly rate without overtime premiums. The Court therefore respectfully recommends granting default judgment as to Rivera's NYLL overtime claim.

20. Plaintiff M. Moreno

From the beginning of the NYLL statute of limitations period on October 18, 2010 until the end of M. Moreno's damages period on March 31, 2019, Plaintiff M. Moreno worked greater than 40 hours each week and was paid a flat weekly rate without overtime premiums. The Court therefore respectfully recommends granting default judgment as to M. Moreno's NYLL and FLSA overtime claims.

* * *

The Court respectfully recommends that the District Court: (1) grant default judgment as to the FLSA overtime claims brought by Plaintiffs E. Garcia, Gula, Basantes, S. Woskoska, C. Alatorre, Ordoñez, M. Alatorre, Shyti, Adan, Lucero, and M. Moreno and in part as to Plaintiffs Espinal, C. Woskoska, Cordova, A. Moreno, and De Gante, limited to the periods specified

above; (2) deny default judgment as to the FLSA overtime claims brought by Plaintiffs Omar and C. Garcia; and (3) grant default judgment as to the NYLL overtime claims brought by Plaintiffs Omar, E. Garcia, Gula, Basantes, S. Woskoska, C. Alatorre, Ordoñez, M. Alatorre, Shyti, Adan, Lucero, Martinez, Rivera, and M. Moreno and in part as to the NYLL overtime claims brought by Plaintiffs C. Garcia, Espinal, C. Woskoska, Cordova, A. Moreno, and De Gante, limited to the periods specified above.

C. Spread-of-Hours

Plaintiffs Omar, E. Garcia, C. Garcia, Gula, Basantes, Espinal, S. Woskoska, C. Alatorre, Ordoñez, Shyti, Adan, C. Woskoska, and Martinez bring claims for unpaid spread-of-hours premiums under the NYLL (Claim V).

A "spread-of-hours claim, for which there is no counterpart under the FLSA, provides that 'an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours.'" Fermin, 93 F. Supp. 3d at 45 (adopting Report and Recommendation) (quoting Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014)). Ordinarily, only employees who earn the minimum wage or lower are entitled to spread-of-hours pay. Jenkins v. Hanac, Inc., 493 F. Supp. 2d 556, 558 (E.D.N.Y. 2007). However, the spread-of-hours provision applicable to hospitality workers "shall apply to all employees in restaurants…regardless of a given employee's regular rate of pay." 12 NYCRR § 146-1.6.

1. Plaintiff Omar

From January 15, 2011 through August 13, 2016, Plaintiff Omar worked 12 to 16.5 hours each work day and was not paid spread-of-hours premiums for days he worked greater than 10

hours. The Court therefore respectfully recommends granting default judgment as to Plaintiff Omar's NYLL spread-of-hours claim.

2. Plaintiff E. Garcia

From the beginning of the NYLL statute of limitations period on October 18, 2010 until June 15, 2014, Plaintiff E. Garcia worked 12 hours per day and was not paid spread-of-hours premiums for days he worked greater than 10 hours. The Court therefore respectfully recommends granting default judgment as to E. Garcia's NYLL spread of hours claim.

3. Plaintiff C. Garcia

From the beginning of the NYLL statute of limitations period on October 18, 2010 until August 14, 2012, Plaintiff C. Garcia worked 12 hours per day and was not paid spread-of-hours premiums for days he worked greater than 10 hours. He does not allege to have worked greater than 10 hours per day for any other period during his employment. The Court therefore respectfully recommends that the District Court grant default judgment as to C. Garcia's NYLL spread of hours claim, limited to the period of October 18, 2010 through August 14, 2012.

4. Plaintiff Gula

From February 15, 2011 through May 15, 2015, Plaintiff Gula worked 12.5 hours per day and was not paid spread-of-hours premiums for days he worked greater than 10 hours. The Court therefore respectfully recommends granting default judgment as to Gula's spread of hours claim.

5. Plaintiff Basantes

From August 15, 2012 through August 15, 2016, Plaintiff Basantes worked between 12 and 13 hours per day and was not paid spread of hours premiums for days he worked greater than

10 hours. The Court therefore respectfully recommends granting default judgment as to Basantes's NYLL spread of hours claim.

6. Plaintiff Espinal

From June 15, 2012 through March 14, 2014, Plaintiff Espinal worked 13 hours per day and was not paid spread of hours premiums for days he worked greater than 10 hours. He does not allege to have worked greater than 10 hours per day for any other period during his employment. The Court therefore respectfully recommends granting default judgment as to Plaintiff Espinal's NYLL spread of hours claim, limited to the period of June 15, 2012 through March 14, 2012.

7. Plaintiff S. Woskoska

From June 15, 2013 through July 1, 2019, Plaintiff S. Woskoska worked between 12.5 and 13 hours per day and was not paid spread-of-hours premiums for days he worked greater than 10 hours. The Court therefore respectfully recommends granting default judgment as to S. Woskoska's NYLL spread of hours claim.

8. Plaintiff C. Alatorre

From July 15, 2012 through the end of his damages period on March 31, 2019, Plaintiff C. Alatorre worked 14 hours per day and was not paid spread of hours premiums for days he worked greater than 10 hours. The Court therefore respectfully recommends granting default judgment as to C. Alatorre's NYLL spread of hours claim.

9. Plaintiff Ordoñez

Except for a 3-month period in 2013, Plaintiff Ordoñez worked 11 hours per day from September 15, 2012 through September 15, 2014 and was not paid spread of hours premiums for

days he worked greater than 10 hours. Ordoñez alleges there was a 3-month period in 2013 where he worked 60 hours over 5 days, which works out to 12 hours per day. The Court therefore respectfully recommends granting default judgment as to Ordoñez's NYLL spread of hours claim.

10. Plaintiff Shyti

From September 15, 2013 through March 15, 2017, Plaintiff Shyti worked 12 hours per day and was not paid spread of hours premiums for days he worked greater than 10 hours. The Court therefore respectfully recommends granting default judgment as to Plaintiff Shyti's NYLL spread of hours claim.

11. Plaintiff Adan

Plaintiff Adan does not allege he worked greater than 10 hours per day at any time from the start of the NYLL statute of limitations period on October 18, 2010 until the end of his employment. The Court therefore respectfully recommends denying default judgment as to Plaintiff Adan's NYLL spread of hours claim.

12. Plaintiff C. Woskoska

From June 4, 2012 through December 31, 2012, Plaintiff C. Woskoska worked 13 hours per day, 7 days per week and was not paid spread of overtime premiums for days he worked greater than 10 hours. From January 1, 2013 to December 2, 2018, he worked 1 day per week for 12 hours and was not paid spread of hours premiums. He does not allege he worked greater than 10 hours per day at any other period during his employment. The Court therefore respectfully recommends granting default judgment as to C. Woskoska's NYLL spread of hours claim, limited to the period of June 4, 2012 through December 31, 2018.

13. Plaintiff Martinez

Plaintiff Martines does not allege he worked greater than 10 hours per day at any time from the start of the NYLL statute of limitations period on October 18, 2010 until the end of his employment. The Court therefore respectfully recommends denying default judgment as to Plaintiff Martinez's NYLL spread of hours claim.

* * *

The Court respectfully recommends that the District Court: (1) grant default judgment as to the NYLL spread of hours claims brought by Plaintiffs Omar, E. Garcia, Gula, Basantes, S. Woskoska, C. Alatorre, Ordoñez, and Shyti, and in part as to Plaintiffs C. Garcia, Espinal, and C. Woskoska; and (2) deny default judgment as to the NYLL spread of hours claims brought by Plaintiffs Adan and Martinez.

V. Damages

A. Legal Standards

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Kim, 806 F. Supp. 3d at 308 (quoting Greyhound Exhibitgroup, Inc., 973 F.2d at 158). Rather, the plaintiff must establish his entitlement to damages to a "reasonable certainty." Gunawan v. Sushi Sake Rest., 897 F. Supp. at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). "'[T]he quantum of damages remains to be established by proof unless

the amount is liquidated or susceptible of mathematical computation.'" Guttman v. Klein, No. 03 CV 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). In the context of a default judgment motion brought for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan, 897 F. Supp. 2d at 83–84.

A plaintiff may not recover duplicative relief for unpaid wages under both the FLSA and NYLL. Sanchez, 643 F. Supp. 3d at 374. Accordingly, where the Court is faced with a choice between awarding damages under the NYLL or the FLSA, the Court awards damages under whichever statute provides for a greater recovery. Id.

1. Liquidated Damages

Under both the FLSA and the NYLL, an employee is entitled to liquidated damages in an amount equal to any unpaid minimum or overtime wages. Sanchez, 643 F. Supp. 3d at 374. The NYLL also entitles an employee to liquidated damages in an amount equal to any unpaid spread of hours premiums. See Cisneros-Calderon v. Salinas Enters., LLC, No. 08 CV 6406, 2016 WL 11483853, at *7 (S.D.N.Y. Sept. 14, 2016), report and recommendation adopted as modified, 2016 WL 6651383 (S.D.N.Y. Nov. 10, 2016); Olvera v. New Ko-Sushi, No. 10 CV 4643, 2011 WL 724699, at *4 (S.D.N.Y. Feb. 16, 2011). It is an employer's burden to show that liquidated damages are not warranted with a showing of subjective good faith and, where the employer defaults, they have not carried this burden. Id. However, the NYLL was not amended to include a 100% liquidated damages award until April 9, 2011 and any liquidated damages owed on wages earned prior to that date are calculated at the statute's original 25% increase. Fermin, 93 F. Supp. 3d at 47. When a plaintiff is entitled to liquidated damages for unpaid wages both

before and after April 9, 2011, the Court calculates the amount owed for each time period separately and then applies the 25% liquidated damages rule for unpaid wage claims that accrued on or before April 9, 2011 and the 100% liquidated damages for unpaid page claims that accrued after April 9, 2011.

The Second Circuit has determined that there is "no meaningful difference[]" between the FLSA's and NYLL's liquidated damages provisions, and thus a plaintiff cannot receive "duplicative liquidated damages for the same course of conduct." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018). A plaintiff may recover liquidated damages under either the NYLL or the FLSA, but not both. Because the NYLL has a longer statute of limitations period and can include recovery for unpaid spread of hours premiums in addition to unpaid minimum and overtime wages, the Court concludes that the NYLL will provide a greater overall liquidated damages amount. The Court therefore recommends applying the NYLL to Plaintiffs' liquidated damages requests.

2. Prejudgment Interest

"It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages." Begum v. Ariba Disc., Inc., No. 12 CV 6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)). Under the NYLL, however, prejudgment interest may be awarded in addition to liquidated damages. Id. "This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award." Sanchez, 643 F. Supp. 3d at 379

(citing Janus v. Regalis Constr., Inc., No. 11 CV 5788, 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012)).

When calculating prejudgment interest under the NYLL, the interest is calculated at a rate of 9% per annum on the unpaid wages due, but is not recoverable on the liquidated damages. Id. The interest is calculated at a simple rate, not a compounded rate. Fermin, 93 F. Supp. 3d at 49. Courts awarding prejudgment interest under the NYLL have wide discretion to determine a reasonable date from which to apply that interest. Id. (citing Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir.1994)). However, when damages were incurred at various times rather than in one single instance, courts calculate prejudgment interest from one midpoint date through the date judgment is entered. Gortat v. Capala Bros., 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013)

Using each Plaintiffs' dates of employment, the Court respectfully recommends that the District Court apply prejudgment interest at the statutory rate of 9 percent per annum using the following midpoints, calculated between Plaintiffs' employment start and end dates:

- Plaintiff Omar: October 29, 2013;
- Plaintiff E. Garcia: August 16, 2012;
- Plaintiff C. Garcia: October 25, 2011;
- Plaintiff Gula: March 31, 2013;
- Plaintiff Basantes: August 15, 2014;
- Plaintiff Espinal: April 9, 2015;
- Plaintiff S. Woskoska: June 22, 2016;
- Plaintiff C. Alatorre: November 22, 2015;
- Plaintiff Ordoñez: September 15, 2013;

- Plaintiff M. Alatorre: January 8, 2015;
- Plaintiff Shyti: June 15, 2015;
- Plaintiff Adan: November 16, 2014;
- Plaintiff Lucero: May 17, 2012;
- Plaintiff C. Woskoska: October 22, 2015;
- Plaintiff Cordova: January 8, 2015;
- Plaintiff A. Moreno: January 8, 2015;
- Plaintiff De Gante: January 8, 2015;
- Plaintiff Martinez: February 15, 2012;
- Plaintiff Rivera: February 15, 2012; and
- M. Moreno: January 8, 2015.

3. Post-Judgment Interest

Plaintiffs are entitled to post-judgment interest under 28 U.S.C. § 1961(a). Under Section 1961(a), interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). The Second Circuit has held that post-judgment interest is mandatory on all awards in civil cases as of the date judgment is entered. Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996). Accordingly, this Court respectfully recommends that Plaintiffs be awarded post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961, as calculated by the Clerk of Court, to the extent that any accrues after entry of judgment.

B. Calculating Damages

1. Plaintiff Omar

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Plaintiff Omar's NYLL minimum wage claims, limited to the period of January 15, 2011 through October 31, 2012. Omar was paid no wages and during this period, but thee minimum wage was $7.25 per hour. Multiplying this hourly rate by the 40 regular hours worked each week the Court calculates that Plaintiff Omar is owed $3,520.60 for the period of January 15, 2011 to April 9, 2011[22] and $23,655.30 for the period of April 10, 2011 to October 31, 2012[23] for a total of $27,175.90 in unpaid minimum wages.

b. Overtime

The Court has respectfully recommended granting default judgment as to Plaintiff Omar's NYLL and FLSA overtime claims.

From January 15, 2011 through December 31, 2012, Omar worked 8 overtime hours per week. From January 1, 2013 through the end of his employment on August 13, 2016, Omar worked 26 overtime hours per week. During the 93.71-week period between January 15, 2011 and October 31, 2012, Omar was paid only in tips. His overtime rate of pay is therefore calculated by multiplying the statutory minimum wage by 150 percent, resulting in an overtime rate of $10.87 per hour from January 15, 2011 to October 31, 2012 Multiplying that rate by the 8 overtime hours worked per week, the Court calculates that he is owed $1,055.69 for the period of

[22] $7.25 minimum wage x 40 non-overtime hours x 12.14 weeks = $3,520.60 unpaid minimum wage.
[23] $7.25 minimum wage x 40 non-overtime hours x 81.57 weeks = $23,655.30 unpaid minimum wage.

January 15, 2011 to April 9, 2011[24] and $7,093.32 for the period of April 10, 2011 to December 31, 2012,[25] totaling $8,149.01 in overtime wages.

From November 1, 2012 through December 31, 2012, Omar was paid a regular rate of pay of $11.10. Multiplied by 150 percent, his overtime rate of pay should have been $16.65 per overtime hour worked. The product of that overtime rate multiplied by the 8 overtime hours worked each week over the 8.71-week period results in unpaid overtime wages of $1,160.17.[26]

For the remainder of Omar's employment, he was paid a regular rate of pay of $14.70 per non-overtime hour worked. His overtime rate of pay should therefore have been $22.05 per overtime hour worked. Multiplying this amount by the 26 overtime hours worked each week over the 188.71-week period, the Court calculates that Omar is owed $108,187.44 in overtime wages for this period.[27]

In total, Omar is owed $117,497.62 in unpaid overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to Plaintiff Omar's NYLL spread-of-hours claim. As Omar worked greater than 10 hours per day for the entirety of his employment period, he is entitled to one extra hour of pay at the statutory minimum wage for all days worked. At all times, Omar worked 4 days per week. From January 15, 2011 through December 30, 2013, the minimum wage was $7.25 per hour. Multiplying the minimum wage, by days worked per week, by the weeks in the period, Omar should have been

---

[24] $10.87 overtime wage x 8 overtime hours x 12.14 weeks = $1,055.69 unpaid overtime wages.
[25] $10.87 overtime rate x 8 overtime hours x 81.57 weeks = $7,093.32 unpaid overtime wages.
[26] $16.65 overtime rate x 8 overtime hours x 8.71 weeks = $1,160.17 unpaid overtime wages.
[27] $22.05 overtime rate x 26 overtime hours x 188.71 weeks = $108,187.44 unpaid overtime wages.

paid $352.06 in spread of hours premiums from January 15, 2011 through April 9, 2011,[28] and $4,126.12 from April 10, 2011 to December 30, 2013.[29] From December 31, 2013 to December 30, 2014, the minimum wage was $8 per hour, and Omar should have been paid $1,668.48 in spread of hours premiums over the 52.14-week period.[30] From December 31, 2014 to December 30, 2015, the minimum wage was $8.75 per hour, and Omar should have been paid $1,824.90 in spread of hours premiums over the 52.14-week period.[31] From December 31, 2015 to the end of Omar's employment on August 13, 2016, the minimum wage was $9 per hour, and Omar should have been paid $1,167.12 in spread of hours premiums over the 32.42-week period.[32] In total, Omar is owed $9,138.68 in spread of hours premiums.

d. Liquidated Damages

Plaintiff Omar's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. The Court calculates that Omar is entitled to $150,114.93 in liquidated damages.[33]

---

[28] $7.25 minimum wage x 4 days per week x 12.14 weeks = $352.06 unpaid spread of hours premiums.

[29] $7.25 minimum wage x 4 days per week x 142.28 weeks = $4,126.12 unpaid spread of hours premiums.

[30] $8 per hour x 4 days per week x 52.14 weeks = $1,668.48 unpaid spread of hours premiums.

[31] $8.75 per hour x 4 days per week x 52.14 weeks = $1,824.90 unpaid spread of hours premiums.

[32] $9 per hour x 4 days per week x 32.42 weeks = $1,167.12 unpaid spread of hours premiums.

[33] The liquidated damages amount is calculated by adding all damages accrued on or before April 9, 2011 and multiplying them by 25%, then adding the result to damages that accrued on or after April 10, 2011. For example, for Plaintiff Omar, the calculation is: ($3,520.60 + $1,055.69 + $352.06) x 0.25) + ($23,655.30 + $7,093.32 + $1,160.17 + $108,187.44 + $4,126.12 + $1,668.48 + $1,824.90 + $1,167.12) = $150,114.93 liquidated damages.

2. Plaintiff E. Garcia

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to E. Garcia's FLSA and NYLL minimum wage claims. E. Garcia alleges that, from October 18, 2010 until the end of his employment, Plaintiff E. Garcia worked 12 hours per day, 5 days per week and was scheduled as a counter employee for 1 or 2 of those days, and as a server the remaining 3 to 4 days. He was paid $60 per week for his time worked as a server, and $100 for every single shift or $200 for every double shift worked as a counter employee. He does not, however, allege how long a single or double shift was or the frequency in which he worked each shift. He also does not allege how often he worked 3 days for $60 per week versus 4 days for $60 per week. Nor does he allege how he was paid after March 2013. The Court therefore cannot calculate damages for Plaintiff E. Garcia's minimum wage claims and recommends granting him leave to amend and renew his damages request.

b. Overtime

The Court has respectfully recommended granting default judgment as to E. Garcia's overtime wage claim. However, as discussed *supra*, the Court cannot calculate E. Garcia's regular rate of pay. In consequence, the Court also cannot calculate his overtime wages. The Court therefore recommends granting E. Garcia leave to amend and renew his damages request.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to E. Garcia's spread of hours claim. E. Garcia worked greater than 10 hours per day, 5 days per week throughout his employment. The Court calculates his unpaid spread of hours premiums by

multiplying the statutory minimum wage by the days worked in excess of 10 hours by the number of weeks E. Garcia was employed. The statutory minimum wage was $7.25 during the 167.14-week period between October 18, 2010 and December 30, 2013, and $8.00 per hour during the 23.85-week period between December 31, 2013 and June 15, 2014. In total, E. Garcia is owed $900.81 for the period of October 18, 2010 to April 9, 2011;[34] $5,157.65 for the period of April 10, 2011 to December 30, 2013;[35] and $954.00 for the period of December 31, 2013 and June 15, 2014,[36] totaling $7,012.46 in unpaid spread of hours premiums.[37]

d. Liquidated Damages

Plaintiff E. Garcia's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. The Court calculates that E. Garcia is entitled to $6,336.85 in liquidated damages.[38]

3. Plaintiff C. Garcia

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Plaintiff C. Garcia's NYLL minimum wage claim. The Court has already calculated C. Garcia's regular rate

---

[34] $7.25 minimum wage x 5 days x 24.85 weeks = $900.81 unpaid spread of hours premiums.
[35] $7.25 minimum wage x 5 days x 142.28 weeks = $5,157.65 unpaid spread of hours premiums.
[36] $8.00 minimum wage x 5 days x 23.85 weeks = $954.00 unpaid spread of hours premiums.
[37] ($7.25 per hour x 5 days per week x 167.14 weeks) + ($8 per hour x 5 days per week x 23.85 weeks) = $7,012.82 unpaid spread of hours premiums.
[38] ($900.81 x 25%) + ($5,157.65 + 954) = $6,336.85 liquidated damages.

of pay as $1 per hour from October 18, 2010 through August 14, 2012 and as $3.33 per hour from August 15, 2102 through November 1, 2012.

The minimum wage from October 18, 2010 through November 1, 2012 was $7.25 per hour. He was therefore underpaid by $6.25 per hour from October 18, 2010 through August 14, 2012 for all non-overtime hours. Multiplying this rate by the 40 non-overtime hours worked each week, the Court calculates that C. Garcia is owed $6,212.50 in unpaid minimum wages from October 18, 2010 to April 9, 2011;[39] and $17,605 from April 10, 2011 through August 14, 2012, totaling $23,817.50 in unpaid wages for this period.[40] For the remainder of his employment, C. Garcia was underpaid by $3.92 per hour for all non-overtime hours. Multiplying this rate by the 12 non-overtime hours worked over the 11.28-week period, C. Garcia is owed $530.61 for the period of August 14, 2012 to November 1, 2012.[41] In total, C. Garcia is owed $24,348.11 in unpaid minimum wages.

b. Overtime

The Court has respectfully recommended granting default judgment as to Plaintiff C. Garcia's NYLL overtime wage claim, limited to the period of October 18, 2010 through August 14, 2012. From October 18, 2010 through August 14, 2012, C. Garcia worked 8 overtime hours each week. As the minimum wage rate exceeded C. Garcia's regular rate of pay, the Court calculates C. Garcia's overtime rate by multiplying the minimum wage by 150 percent. The minimum wage during this period was $7.25 and the corresponding overtime rate was $10.87 per

---

[39] $6.25 per hour x 40 non-overtime hours x 24.85 weeks = $6,212.50 unpaid minimum wages.
[40] $6.25 per hour x 40 non-overtime hours x 70.42 weeks = $17,605 unpaid minimum wages.
[41] $3.92 per hour x 12 non-overtime hours x 11.28 weeks = $530.61 unpaid minimum wages.

hour. Multiplying this rate by the 8 overtime hours worked each week, the Court calculates that C. Garcia is owed $2,160.95 for the period between October 18, 2010 and April 9, 2011;[42] and $6,123.72 for the period between April 10, 2011 and August 14, 2012, totaling $8,284.67 in unpaid overtime wages.[43]

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to Plaintiff C. Garcia's NYLL spread of hours claim, limited to the period of October 18, 2010 through August 14, 2012. As C. Garcia worked greater than 10 hours per day for the entirety of this period, he is owed one extra hour of pay at the statutory minimum wage for all days worked during this period. During this period, he worked 4 days per week. Multiplying the minimum wage by days worked per week over the period, the Court calculates that C. Garcia is owed $720.65 for the period of October 18, 2010 through April 9, 2011;[44] and $2,042.18 for the period of April 10, 2011 through August 14, 2012,[45] totaling $2,762.83 in spread of hours premiums.

d. Liquidated Damages

Plaintiff C. Garcia's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those

---

[42] $10.87 per hour x 8 overtime hours x 24.85 weeks = $2,160.95 unpaid overtime wages.
[43] $10.87 per hour x 8 overtime hours x 70.42 weeks = $6,123.72 unpaid overtime wages.
[44] $7.25 minimum wage x 4 days per week x 24.85 weeks = $720.65 unpaid spread of hours premiums.
[45] $7.25 minimum wage x 4 days per week x 70.42 weeks = $2,042.18 unpaid spread of hours premiums.

occurring on or after April 10, 2011. In total, the Court calculates that C. Garcia is entitled to $28,575.02 in liquidated damages.[46]

4. Plaintiff Gula

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Plaintiff Gula's NYLL and FLSA minimum wage claims. The Court has already calculated that Gula's hourly regular rate of pay was $1.25. The statutory minimum wage was $7.25 from the beginning of his employment on February 15, 2011 through December 30, 2013, and was increased to $8 per hour from December 31, 2013 to December 30, 2014, and to $8.75 from December 31, 2014 until the end of Gula's employment on May 15, 2015. He was therefore underpaid by $6 per hour for all regular time hours worked between February 15, 2011 and December 30, 2013, $6.75 per hour for all regular time hours worked between December 31, 2013 and December 30, 2014, and $7.50 for all regular time hours worked between December 31, 2014 and May 15, 2015.

Multiplying his $6 per hour wage underpayment by the 40 non-overtime hours worked each week, the Court calculates that Gula is owed $1,850.40 for the period between February 15, 2011 and April 9, 2011;[47] and $34,147.20 for the period between April 10, 2011 and December 30, 2013,[48] totaling $35,997.60 in unpaid minimum wages for this first period. Multiplying his $6.75 per hour wage underpayment by the 40 non-overtime hours worked each week over the 52.14-week period between December 31, 2013 and December 30, 2014, the Court calculates

[46] (($6,212.50 + $2,160.95 + $720.65) x 25%) + ($17,605 + $530.61 + $ 6,123.72 + $2,042.18) = $28,575.02 liquidated damages.
[47] $6 per hour x 40 non-overtime hours x 7.71 weeks = $1,850.40 unpaid minimum wages.
[48] $6 per hour x 40 non-overtime hours x 142.28 weeks = $34,147.20 unpaid minimum wages.

that Gula is owed $14,077.80 in unpaid minimum wages for this second period.[49] Multiplying his $7.50 per hour wage underpayment by the 40 non-overtime hours worked each week over the 19.42-week period between December 31, 2014 and May 15, 2015, the Court calculates that Gula is owed $5,826 in unpaid wages for this third period.[50] In total, Gula is owed $55,901.40 in unpaid minimum wages.

b. Overtime

The Court has respectfully recommended granting default judgment as to Plaintiff Gula's NYLL and FLSA overtime wage claims. For the entirety of his employment, Gula worked 20 overtime hours per week. As the minimum wage rate exceeded Gula's regular rate of pay throughout his employment, the Court calculates Gula's overtime rate by multiplying the minimum wage by 150 percent. Gula's overtime rate was $10.87 per overtime hour worked from February 15, 2011 to December 30, 2013; $12 per overtime hour worked from December 31, 2013 to December 30, 2014; and $13.12 per overtime hour worked from December 31, 2014 to May 15, 2015. Multiplying each overtime rate by the 20 overtime hours worked each week and by the number of weeks in each period, the Court calculates that Gula is owed $1,676.15 in overtime wages from February 15, 2011 to April 9, 2011;[51] $30,931.67 from April 10, 2011 to December 30, 2013;[52] $12,513.60 in overtime wages from December 31, 2013 to December 30,

---

[49] $6.75 per hour x 40 non-overtime hours x 52.14 weeks = $14,077.80 unpaid minimum wages.
[50] $7.50 per hour x 40 non-overtime hours x 19.42 weeks = $5,826 unpaid minimum wages.
[51] $10.87 per hour x 20 overtime hours x 7.71 weeks = $1,676.15 unpaid overtime wages.
[52] $10.87 per hour x 20 overtime hours x 142.28 weeks = $30,931.67 unpaid overtime wages.

2014;[53] and $5,095.80 in overtime wages from December 31, 2014 to May 15, 2015.[54] In total, Gula is owed $50,217.22 in unpaid overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to Plaintiff Gula's NYLL spread of hours claim. As Gula worked greater than 10 hours per day, 4 days per week for the entirety of his employment, he is owed one extra hour of pay at the statutory minimum wage for those days. Multiplying the minimum wage by the number of days Gula worked greater than 10 hours by the number of weeks at each minimum wage period, the Court calculates that Gula is owed $223.59 in unpaid spread of hours premiums between February 15, 2011 and April 9, 2011;[55] $4,126.12 from April 10, 2011 to December 30, 2013;[56] $1,668.48 from December 31, 2013 and December 30, 2014,[57] and $679.70 from December 31, 2014 and May 15, 2015.[58] In total, Gula is owed $6,697.89 in unpaid spread of hours premiums.

d. Liquidated Damages

Plaintiff Gula's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring

---

[53] $12.00 per hour x 20 overtime hours x 52.14 weeks = $12,513.60 unpaid overtime wages.
[54] $13.12 per hour x 20 overtime hours x 19.42 weeks = $5,095.80 unpaid overtime wages.
[55] $7.25 minimum wage x 4 days per week x 7.71 weeks = $223.59 unpaid spread of hours premiums.
[56] $7.25 minimum wage x 4 days per week x 142.28 weeks = $4,126.12 unpaid spread of hours premiums.
[57] $8.00 minimum wage x 4 days per week x 52.14 weeks = $1,668.48 unpaid spread of hours premiums.
[58] $8.75 minimum wage x 4 days per week x 19.42 weeks = $679.70 unpaid spread of hours premiums.

on or after April 10, 2011. The Court calculates that Gula is entitled to $110,003.90 in liquidated damages.[59]

5. Plaintiff Basantes

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Plaintiff Basantes's FLSA and NYLL minimum wage claims. Subtracting his regular rate of pay from the statutory minimum wage, the Court calculates that Plaintiff Basantes was underpaid for all non-overtime hours worked by $5.75 from August 15, 2012 to December 30, 2013; $6.50 from December 31, 2013 to December 30, 2014; $7.25 from December 31, 2014 to December 30, 2015; and $7.50 from December 31, 2015 to August 15, 2016.

Multiplying these rates by the 40 non-overtime hours worked each week and by the number of weeks in each period, the Court calculates that Basantes is owed $16,525.50 for the 71.85-week period between August 15, 2012 and December 30, 2013;[60] $13,556.40 for the 52.14-week period from December 31, 2013 to December 30, 2014;[61] $15,120.60 for the 52.14-week period between December 31, 2014 and December 30, 2015;[62] $9,813 for the 32.71-week period between December 31, 2015 and August 15, 2016.[63] In total, Basantes is owed $55,015.50 in unpaid overtime wages.

---

[59] (($1,850.40 + $1,676.16 + $223.59) x 25%) + ($34,147.20 + $14,077.80 + $5,826 + $30,931.67 + $12,513.60 + $5,095.80) = $110,003.90 liquidated damages.

[60] $5.75 per hour x 40 non-overtime hours x 71.85 weeks = $16,525.50 unpaid minimum wages.

[61] $6.50 per hour x 40 non-overtime hours x 52.14 weeks = $13,556.40 unpaid minimum wages.

[62] $7.25 per hour x 40 non-overtime hours x 52.14 weeks = $15,120.60 unpaid minimum wages.

[63] $7.50 per hour x 40 non-overtime hours x 32.71 weeks = $9,813.00 unpaid minimum wages.

b. Overtime

The Court has respectfully recommended granting default judgment as to Plaintiff Basantes's NYLL and FLSA overtime claims. As the minimum wage rate exceeded Basantes's regular rate of pay throughout his employment, the Court calculates Basantes's overtime rate by multiplying the minimum wage by 150 percent. Basantes's overtime rate for all weekly hours worked in excess of 40 should have been $10.87 from August 15, 2012 through December 30, 2013; $12 from December 31, 2013 through December 30, 2014; $13.12 from December 31, 2014 through December 30, 2015; and $13.50 from December 31, 2015 through August 15, 2016.

Basantes worked 25 overtime hours per week throughout his employment, except for a 3-month period in 2012 when he worked only 20 overtime hours per week. Basantes worked 19.85 weeks in 2012, and for three months, or 13 of those weeks, he worked 20 overtime hours,[64] and for the remaining 6.85 weeks, he worked 25 overtime hours per week. Multiplying his overtime rate by each respective number of overtime hours, the Court calculates that Basantes is owed $1,861.48 for the 6.85 weeks he worked 25 weekly overtime hours, and $2,826.20 for the 13 weeks he worked 20 weekly overtime hours, totaling $4,687.68. [65]

Multiplying the overtime rates by 25 overtime hours worked each week by the number of weeks in each period for the remainder of Basantes's employment, the Court calculates that

[64] Plaintiff Basantes alleges he worked 20 overtime hours per week for 3 months. The Court has approximated the number of weeks by dividing the 52.28 weeks in the year 2012 by 12 months, which results in approximately 4.35 weeks per month, or 13 weeks in a 3-month period.

[65] ($10.87 per hour x 25 overtime hours x 6.85 weeks) + ($10.87 per hour x 20 overtime hours x 13 weeks) = $4,687.68 unpaid overtime wages.

Basantes is owed $14,131 in overtime wages from January 1, 2013 to December 30, 2013;[66] $15,642 from December 31, 2013 to December 30, 2014;[67] $17,101.92 from December 31, 2014 to December 30, 2015;[68] and $11,039.62 from December 31, 2015 to August 15, 2016.[69] In total, Basantes is owed $62,602.22 in overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to Basantes's NYLL spread of hours claim. As Basantes worked greater than 10 hours per day, 5 days per week for the entirety of his employment, he is owed one extra hour of pay at the statutory minimum wage for those days. Multiplying the minimum wage by the number of days Basantes worked greater than 10 hours by the number of weeks at each minimum wage period, the Court calculates that Basantes is owed $2,604.56 for the 71.85-week period between August 15, 2012 and December 30, 2013;[70] $2,085.60 for the 52.14-week period between December 31, 2013 and December 30, 2014;[71] $2,281.12 for the 52.14-week period between December 31, 2014 and December 30, 2015;[72] $1,471.95 for the 32.71-week period between December 31, 2015 and August 15, 2016.[73] In total, Basantes is owed $8,443.24 in spread of hours premiums.

---

[66] $10.87 per hour x 25 overtime hours x 52 weeks = $14,131 unpaid overtime wages
[67] $12 per hour x 25 overtime hours x 52.14 weeks = $15,642 unpaid overtime wages.
[68] $13.12 per hour x 25 overtime hours x 52.14 weeks = $17,101.92 unpaid overtime wages.
[69] $13.50 per hour x 25 overtime hours x 32.71 weeks = $11,039.62 unpaid overtime wages.
[70] $7.25 minimum wage x 5 days x 71.85 weeks = $2,604.56 unpaid spread of hours premiums.
[71] $8.00 minimum wage x 5 days x 52.14 weeks = $2,085.60 unpaid spread of hours premiums.
[72] $8.75 minimum wage x 5 days x 52.14 weeks = $2,281.12 unpaid spread of hours premiums.
[73] $9.00 minimum wage x 5 days x 32.71 weeks = $1,471.95 unpaid spread of hours premiums.

d. Liquidated Damages

Plaintiff Basantes's allegations all occur after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the post-amendment 100% liquidated damages increase to all minimum wage and overtime premiums owed. In total, the Court calculates that Basantes is entitled to $126,060.95 in liquidated damages.

6. Plaintiff Espinal

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Plaintiff Espinal's minimum wage claims under both the FLSA and NYLL. Subtracting his regular rate of pay from the statutory minimum wage, the Court calculates that Plaintiff Espinal was underpaid for all non-overtime hours worked by $5.75 per hour June 15, 2012 to December 30, 2013; $6.50 per hour from December 31, 2013 to March 14, 2014; $5.86 per hour from March 15, 2014 to December 30, 2014; $6.61 per hour from December 31, 2014 to December 30, 2015; $6.86 from December 31, 2015 to August 15, 2016; $7.50 per hour from October 9, 2016 to December 30, 2016; $9.50 per hour on December 31, 2016; $3.50 per hour from January 1, 2017 to December 30, 2017; $5.50 per hour on December 31, 2017; and $8.65 per hour from January 1, 2018 to February 1, 2018.

Multiplying these rates by the non-overtime hours worked during each period, the Court calculates that Espinal is owed $8,970 for the period of June 15, 2012 to March 14, 2013;[74]

[74] $5.75 per hour x 40 non-overtime hours x 39 weeks = $8,970 unpaid minimum wages.

$9,561.10 for the period from March 15, 2013 to December 30, 2013;[75] $2,748.20 for the period of December 31, 2013 to March 14, 2014;[76] $6,820.80 for the period of March 15, 2014 to December 30, 2014;[77] $9,650.07 for the period of December 31, 2014 to December 30, 2015;[78] $6,282.93 for the period of December 31, 2015 to August 15, 2016;[79] $3,555 for the period of October 9, 2016 to December 30, 2016;[80] $53.20 for the day of December 31, 2016;[81] $7,299.60 for the period of January 1, 2017 to December 30, 2017;[82] $30.80 for the day of December 31, 2017;[83] and $795.18 for the period of January 1, 2018 to February 1, 2018.[84] In total, Espinal is owed $55,766.16 in unpaid minimum wages.

b. <u>Overtime</u>

The Court has respectfully recommended granting default judgment as to Plaintiff Espinal's NYLL and FLSA overtime claims. Espinal worked 12 overtime hours per week from June 15, 2012 to March 14, 2013 and 25 overtime hours per week from March 15, 2013 to March 14, 2014. As the minimum wage rate exceeded Espinal's regular rate of pay throughout his employment, the Court calculates Espinal's overtime rate by multiplying the minimum wage

---

[75] $5.75 per hour x 40 non-overtime hours per week x 41.57 weeks = $9,561.10 unpaid minimum wages.

[76] $6.50 per hour x 40 non-overtime hours per week x 10.57 weeks = $2,748.20 unpaid minimum wages.

[77] $5.86 per hour x 28 non-overtime hours per week x 41.57 weeks = $6,820.80 unpaid minimum wages.

[78] $6.61 per hour x 28 non-overtime hours per week x 52.14 weeks = $9,650.07 unpaid minimum wages.

[79] $6.86 per hour x 28 non-overtime hours per week x 32.71 weeks = $6,282.93 unpaid minimum wages.

[80] $7.50 per hour x 40 non-overtime hours x 11.85 weeks = $3,555 unpaid minimum wages.

[81] $9.50 per hour x 40 non-overtime hours x 0.14 weeks = $53.20 unpaid minimum wages.

[82] $3.50 per hour x 40 non-overtime hours x 52.14 weeks = $7,299.60 unpaid minimum wages.

[83] $5.50 per hour x 40 non-overtime hours x 0.14 weeks = $30.08 unpaid minimum wages.

[84] $4.35 per hour x 40 non-overtime hours x 4.57 weeks = $795.18 unpaid minimum wages.

by 150 percent. Espinal's overtime rate was $10.87 per overtime hour from June 15, 2012 to December 30, 2013 and $12 per overtime hour from December 31, 2013 to March 14, 2014.

Multiplying these rates by the number of overtime hours worked and the number of weeks in each period, the Court calculates that Espinal is owed $5,087.16 in overtime wages from June 15, 2012 to March 14, 2013;[85] $11,296.64 from March 15, 2013 to December 30, 2013;[86] and $3,171 from December 31, 2013 to March 14, 2014.[87] In total, Espinal is owed $19,554.80 in overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to Plaintiff Espinal's NYLL spread of hours claim, limited to the period of June 15, 2012 through March 14, 2012. From June 15, 2012 to March 14, 2013, Espinal worked greater than 10 hours per day for 4 days each week. From March 15, 2013 to March 14, 2014, he worked greater than 10 hours per day for 5 days each week. Multiplying the number of days worked in excess of 10 hours by the minimum wage and the number of weeks in each period, the Court calculates that Espinal is owed $1,131 in spread of hours premiums from June 15, 2012 to March 14, 2013;[88] $1,506.91 from March 15, 2013 to December 30, 2013;[89] and $422.80 from December 31, 2013 to March 14, 2014.[90] In total, Espinal is owed $3,060.71 in spread of hours premiums.

---

[85] $10.87 per hour x 12 overtime hours x 39 weeks = $5,087.16 unpaid overtime wages.
[86] $10.87 per hour x 25 overtime hours x 41.57 weeks = $11,296.64 unpaid overtime wages.
[87] $12 per hour x 25 overtime hours x 10.57 weeks = $3,171 unpaid overtime wages.
[88] $7.25 minimum wage x 4 days x 39 weeks = $1,131 unpaid spread of hours premiums.
[89] $7.25 minimum wage x 5 days x 41.57 weeks = $1,506.91 unpaid spread of hours premiums.
[90] $8.00 minimum wage x 5 days x 10.57 weeks = $422.80 unpaid spread of hours premiums.

d. Liquidated Damages

Plaintiff Espinal's allegations all occur after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the post-amendment 100% liquidated damages increase to all minimum wage and overtime premiums owed. In total, the Court calculates that Espinal is entitled to $78,381.67 in liquidated damages.

7. Plaintiff S. Woskoska

The Court has respectfully recommended granting default judgment as to S. Woskoksa's NYLL and FLSA overtime claim and NYLL spread of hours claim. However, due to the contradictory allegations discussed *supra*, the Court cannot calculate S. Woskoska's regular rate of pay or the amount of overtime owed. The Court therefore cannot calculate damages for Plaintiff S. Woskoksa's claims and recommends granting him leave to amend and renew his damages request.

8. Plaintiff C. Alatorre

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to C. Alatorre's NYLL and FLSA minimum wage claims. Because C. Alatorre's regular rate of pay was $3 per hour for the entirety of his employment, he was underpaid by $4.25 per hour from July 15, 2012 to December 30, 2013; $5 per hour from December 31, 2013 to December 30, 2014; $5.75 per hour from December 31, 2014 to December 30, 2015; $6 per hour from December 31, 2015 to December 30, 2016; $8 per hour from December 31, 2016 to December 30, 2017; $10 per hour from December 31, 2017 to December 30, 2018; and $12 per hour from December 31, 2018 to March 31, 2019.

Multiplying the wage underpayments for each period by the number of weeks in each period and the number of non-overtime hours worked in each week, the Court calculates that C. Alatorre is owed $12,943.80 for the period of July 15, 2012 to December 30, 2013;[91] $10,428 for the period of December 31, 2013 to December 30, 2014;[92] $11,992.20 for the period of December 31, 2014 to December 30, 2015;[93] $12,547.20 for the period of December 31, 2015 to December 30, 2016;[94] $16,684.80 for the period of December 31, 2016 to December 30, 2017;[95] $20,856 for the period of December 31, 2017 to December 30, 2018;[96] and $6,168 for the period of December 31, 2018 to March 31, 2019.[97] In total, C. Alatorre is owed $91,620.00 in unpaid minimum wages.

b. Overtime

The Court has respectfully recommended granting default judgment as to C. Alatorre's NYLL and FLSA overtime claims. At all times during his employment C. Alatorre worked 2 overtime hours per week. As the minimum wage rate exceeded C. Alatorre's regular rate of pay throughout his employment, the Court calculates C. Alatorre's overtime rate by multiplying the minimum wage by 150 percent and finds that his overtime rate was $10.87 per hour for the period of July 15, 2012 to December 30, 2013; $12 per hour for the period of December 31, 2013 to December 30, 2014; $13.12 per hour for the period of December 31, 2014 to December 30,

---

[91] $4.25 per hour x 40 non-overtime hours x 76.14 weeks = $12,943.80 unpaid minimum wages.
[92] $5.00 per hour x 40 non-overtime hours x 52.14 weeks = $10,428 unpaid minimum wages.
[93] $5.75 per hour x 40 non-overtime hours x 52.14 weeks = $11.992.20 unpaid minimum wages.
[94] $6 per hour x 40 non-overtime hours x 52.28 weeks = $12,547.20 unpaid minimum wages.
[95] $8 per hour x 40 non-overtime hours x 52.14 weeks = $16,684.80 unpaid minimum wages.
[96] $10 per hour x 40 non-overtime hours x 52.14 weeks = $20,856 unpaid minimum wages.
[97] $12 per hour x 40 non-overtime hours x 12.85 weeks = $6,168 unpaid minimum wages.

2015; $13.50 per hour for the period of December 31, 2015 to December 30, 2016; $16.50 for the period of December 31, 2016 to December 30, 2017; $19.50 per hour for the period of December 31, 2017 to December 30, 2018; and $22.50 per hour for the period of December 31, 2018 to March 31, 2019.

Multiplying these overtime rates by the 2 hours of overtime worked each week and by the number of weeks in each period, the Court calculates that C. Alatorre is owed $1,655.28 in overtime wages for the period of July 15, 2012 to December 30, 2013;[98] $1,251.36 for the period of December 31, 2013 to December 30, 2014;[99] $1,368.15 for the period of December 31, 2014 to December 30, 2015;[100] $1,411.56 for the period of December 31, 2015 to December 30, 2016;[101] $1,720.62 for the period of December 31, 2016 to December 30, 2017;[102] $2,033.46 for the period of December 31, 2017 to December 30, 2018;[103] and $578.25 for the period of December 31, 2018 to March 31, 2019.[104] In total, C. Alatorre is owed $10,018.68 in unpaid overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to C. Alatorre's NYLL spread of hours claim. Throughout his entire employment period, C. Alatorre worked greater than 10 hours per day, 3 days per week. Multiplying 3 days per week by the minimum

---

[98] $10.87 per hour x 2 overtime hours x 76.14 weeks = $1,655.28 unpaid overtime wages.
[99] $12 per hour x 2 overtime hours per week x 52.14 weeks = $1,251.36 unpaid overtime wages.
[100] $13.12 per hour x 2 overtime hours per week x 52.14 weeks = $1,368.15 unpaid overtime wages.
[101] $13.50 per hour x 2 overtime hours per week x 52.28 weeks = $1,411.56 unpaid overtime wages.
[102] $16.50 per hour x 2 overtime hours per week x 52.14 weeks = $1,720.62 unpaid overtime wages.
[103] $19.50 per hour x 2 overtime hours per week x 52.14 weeks = $2,033.46 unpaid overtime wages.
[104] $22.50 per hour x 2 overtime hours per week x 12.85 weeks = $578.25 unpaid overtime wages.

wage and the number of weeks in his employment period, the Court calculates C. Alatorre is owed $1,656.04 for the period of July 15, 2012 to December 30, 2013;[105] $1,251.36 for the period of December 31, 2013 to December 30, 2014;[106] $1,368.67 for the period of December 31, 2014 to December 30, 2015;[107] $1,411.56 for the period of December 31, 2015 to December 30, 2016;[108] $1,720.62 for the period of December 31, 2016 to December 30, 2017;[109] $2,033.46 for the period of December 31, 2017 to December 30, 2018;[110] and $578.25 for the period of December 31, 2018 to March 31, 2019,[111] for a total of $10,001.96 in spread of hours premiums.

d. Liquidated Damages

Plaintiff C. Alatorre's allegations all occur after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the post-amendment 100% liquidated damages increase to all minimum wage and overtime premiums owed. In total, the Court calculates that C. Alatorre is entitled to $111,640.64 in liquidated damages.

9. Plaintiff Ordoñez

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Ordoñez's NYLL and FLSA minimum wage claims. Ordoñez was paid no wages other than tips from September 15, 2012 through December 31, 2013. Multiplying the $7.25 minimum wage from

---

[105] $7.25 minimum wage x 3 days x 76.14 weeks = $1,656.04 unpaid spread of hours premiums.
[106] $8.00 minimum wage x 3 days x 52.14 weeks = $1,251.36 in unpaid spread of hours premiums.
[107] $8.75 minimum wage x 3 days x 52.14 weeks = $1,368.67 in unpaid spread of hours premiums.
[108] $9.00 minimum wage x 3 days x 52.28 weeks = $1,411.56 in unpaid spread of hours premiums.
[109] $11.00 minimum wage x 3 days x 52.14 weeks = $1,702.62 in unpaid spread of hours premiums.
[110] $13.00 minimum wage x 3 days x 52.14 weeks = $2,033.46 in unpaid spread of hours premiums.
[111] $15 minimum wage x 3 days x 12.85 weeks = $578.25 in unpaid spread of hours premiums.

September 15, 2012 through December 30, 2013 by the 40 non-overtime hours Ordoñez worked each week by the number of weeks in the period, the Court calculates that Ordoñez is owed $19,551.80 for the period.[112] The minimum wage increased to $8 per hour on December 31, 2013 and the Court calculates he is owed $44.80 for that day.[113]

From January 1, 2014 to September 15, 2014, Ordoñez was paid a regular rate of pay of $1.50 per hour. The Court calculates that he was therefore underpaid by $6.50 per hour. Multiplying this wage underpayment by the 40 non-overtime hours worked each week and by the number of weeks in the period, the Court calculates that Ordoñez is owed $9,581 for this period.[114] In total, Ordoñez is owed $29,177.60 in unpaid minimum wages.

b. <u>Overtime</u>

The Court has respectfully recommended granting default judgment as to Plaintiff Ordoñez's NYLL and FLSA overtime claims. As the minimum wage rate exceeded Ordoñez's regular rate of pay throughout his employment, the Court calculates Ordoñez's overtime rate by multiplying the minimum wage by 150 percent, and finds that Ordoñez's overtime rate should have been $10.87 per hour from September 15, 2012 through December 30, 2013 and $12 per hour from December 31, 2013 through September 15, 2014.

Ordoñez worked 15 overtime hours per week throughout his employment, except for a 3-month period in 2013 when he worked 20 overtime hours per week. Ordoñez worked 52.14 weeks in 2013, and for 3 months, or 13 of those weeks, he worked 20 hours of overtime, and for

---

[112] $7.25 per hour x 40 non-overtime hours x 67.42 weeks = $19,551.80 unpaid minimum wages.
[113] $8.00 per hour x 40 non-overtime hours x 0.14 weeks = $44.80 unpaid minimum wages.
[114] $6.50 per hour x 40 non-overtime hours x 36.85 weeks = $9,581 unpaid minimum wages.

the remaining 39.14 weeks, he worked 15 hours of overtime per week.[115] Multiplying his overtime rate by each respective amount of overtime hours, the Court calculates that Ordoñez is owed $2,826.20 for the period of time he worked 20 weekly overtime hours,[116] and $6,381.77 for the period of time he worked 15 weekly overtime hours,[117] totaling $9,207.97.

Multiplying the overtime rates by 15 overtime hours worked each week by the number of weeks in each period for the remainder of Ordoñez employment, the Court calculates that Ordoñez is owed $2,514.23 in overtime wages for the period of September 15, 2012 to December 31, 2012;[118] and $6,633 in overtime wages for the period of January 1, 2014 to September 15, 2014.[119] In total, Ordoñez is owed $18,355.20 in unpaid overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to Ordoñez's NYLL spread of hours claim. At all times during his employment, Ordoñez worked greater than 10 hours per day for 5 days each week.[120] Multiplying the number of days worked each week by the number of weeks in the period and by the minimum wage, the Court calculates that Ordoñez is owed $2,443.97 in unpaid spread of hours premiums from September 15, 2012 to December

[115] Plaintiff Ordoñez alleges he worked 20 overtime hours per week for 3 months. The Court has approximated the number of weeks by dividing the 52.14 weeks in the year 2013 by 12 months, which results in approximately 4.34 weeks per month, or 13 weeks in a 3-month period.

[116] $10.87 per hour x 20 overtime hours x 13 weeks = $2,826.20 unpaid overtime wages.

[117] $10.87 per hour x 15 overtime hours x 39.14 weeks = $6,381.77 unpaid overtime wages.

[118] $10.87 per hour x 15 overtime hours x 15.42 weeks = $2,514.23 unpaid overtime wages.

[119] $12 per hour x 15 overtime hours x 36.85 weeks = $6,633 unpaid overtime wages.

[120] During a 3-month period in 2013, Ordoñez alleges he worked 60 hours per week over 5 days each week. The Court infers that he worked 12 hours per day.

30, 2013;[121] and $1,480 in unpaid spread of hours premiums from December 31, 2013 to September 15, 2014,[122] totaling $3,923.97 in unpaid spread of hours premiums.

d. Liquidated Damages

Plaintiff Ordoñez's allegations all occur after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the post-amendment 100% liquidated damages increase to all minimum wage and overtime premiums owed. In total, the Court calculates that Ordoñez is entitled to $51,456.77 in liquidated damages.

10. Plaintiff M. Alatorre

a. Overtime

The Court has respectfully recommended granting default judgment as to M. Alatorre's NYLL and FLSA overtime wage claims..

From the beginning of the NYLL statute of limitations period on October 18, 2010 until the end of M. Alatorre's damages period on March 31, 2019, Plaintiff M. Alatorre worked 48 hours per week. He was paid $520 per week until December 31, 2015, $700 per week from January 1, 2016 through December 31, 2017, $750 per week from January 1, 2018 through December 31, 2018, and $730 per week from January 1, 2019 through March 31, 2019. The Court calculates that M. Alatorre's regular rate of pay from October 18, 2010 through December 2015 was $10.83 per hour; from January 2016 through December 2017 was $14.50 per hour; from January 2018 through December 2018 was $15.62 per hour; and from January 2019 through March 31, 2019 was $15.20 per hour.

---

[121] $7.25 minimum wage x 5 days x 67.42 weeks = $2,443.97 unpaid spread of hours premiums.
[122] $8.00 minimum wage x 5 days x 37 weeks = $1,480 unpaid spread of hours premiums.

As M. Alatorre's regular rate of pay exceeded the minimum wage at all times, the Court calculates his overtime rate by multiplying his regular rate of pay by 150 percent and finds that his overtime rate was $16.24 from October 18, 2010 through December 31, 2015; $21.87 from January 1, 2016 to December 31, 2017; and $23.43 from January 1, 2018 to December 31, 2018; and $22.80 for the period of January 1, 2019 to March 31, 2019.

Multiplying these rates by the number of weeks in each period, the Court calculates that M. Alatorre is owed $3,228.51 in overtime wages for the period of October 18, 2010 through April 9, 2011;[123] $32,052.56 from April 10, 2011 through December 31, 2015;[124] $18,269.32 in overtime wages for the period of January 1, 2016 to December 31, 2017;[125] $9,773.12 for the period of January 1, 2018 to December 31, 2018;[126] and $2,318.30 for the period of January 1, 2018 to March 31, 2019.[127] In total, M. Alatorre is owed $65,641.81 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff M. Alatorre's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those

[123] $16.24 per hour x 8 overtime hours x 24.85 weeks = $3,228.51 unpaid overtime wages.
[124] $16.24 per hour x 8 overtime hours x 246.71 weeks = $32,052.56 unpaid overtime wages.
[125] $21.87 per hour x 8 overtime hours x 104.42 weeks = $18,269.32 unpaid overtime wages.
[126] $23.43 per hour x 8 overtime hours x 52.14 weeks = $9,773.12 unpaid overtime wages.
[127] $22.80 per hour x 8 overtime hours x 12.71 weeks = $2,318.30 unpaid overtime wages.

occurring on or after April 10, 2011. The Court calculates that M. Alatorre is entitled to $63,220.42 in liquidated damages.[128]

11. Plaintiff Shyti

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Shyti's NYLL and FLSA minimum wage claims. Plaintiff Shyti was paid no wages other than tips throughout his employment, and the Court calculates his wages owed by multiplying the statutory minimum wage by the 40 hours of non-overtime hours worked each week and by the number of weeks throughout Shyti's employment. The Court calculates that Shyti is owed $4,390.60 from September 15, 2013 to December 30, 2013;[129] $16,684.80 from December 31, 2013 to December 30, 2014;[130] $18,249 from December 31, 2014 to December 30, 2015;[131] $18,820.80 from December 31, 2015 to December 30, 2016;[132] and $4,650 from December 31, 2016 to March 15, 2017,[133] totaling $62,795.20 in unpaid minimum wages.

b. Overtime

The Court has respectfully recommended granting default judgment as to Plaintiff Shyti's NYLL and FLSA overtime claims. As Shyti was paid no wages other than tips for the entirety of his employment, the Court calculates his overtime wages owed by multiplying the statutory

---

[128] ($3,228.51 x 25%) + ($32,052.56 + $18,269.32 + $9,773.12 + $2,318.30) = $63,220.42 liquidated damages.

[129] $7.25 per hour x 40 non-overtime hours x 15.14 weeks = $4,390.60 unpaid minimum wages.

[130] $8.00 per hour x 40 non-overtime hours x 52.14 weeks = $16,684.80 unpaid minimum wages.

[131] $8.75 per hour x 40 non-overtime hours x 52.14 weeks = $18,249 unpaid minimum wages.

[132] $9.00 per hour x 40 non-overtime hours x 52.28 weeks = $18,820.80 unpaid minimum wages.

[133] $11.00 per hour x 40 non-overtime hours x 10.57 weeks = $4,650 unpaid minimum wages.

minimum wage by 150 percent, the number of weeks Shyti was employed, and by the 20 hours of overtime he worked each week. The Court calculates that Shyti is owed $3,291.43 from September 15, 2013 to December 30, 2013;[134] $12,513.60 from December 31, 2013 to December 30, 2014;[135] $13,681.53 from December 31, 2014 to December 30, 2015;[136] $14,115.60 from December 31, 2015 to December 30, 2016;[137] and $3,488.10 from December 31, 2016 to March 15, 2017,[138] totaling $47,090.26 in unpaid overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to Plaintiff Shyti's NYLL spread of hours claim. Shyti worked greater than 10 hours each day for 5 days each week throughout his entire employment. The Court calculates his spread of hours premiums owed by multiplying the statutory minimum wage by the number of days he worked greater than 10 hours each week and by the number of weeks Shyti was employed. The Court calculates that Shyti is owed $548.82 from September 15, 2013 to December 30, 2013;[139] $2,085.60 from December 31, 2013 to December 30, 2014;[140] $2,281.12 from December 31, 2014 to December 30, 2015;[141] $2,352.60 from December 31, 2015 to December 30, 2016;[142] and $581.35 from December 31, 2016 to March 15, 2017,[143] totaling $7,849.49 in unpaid spread of hours premiums.

---

[134] $10.87 per hour x 20 overtime hours x 15.14 weeks = $3,291.43 unpaid overtime wages.
[135] $12.00 per hour x 20 overtime hours x 52.14 weeks = $12,513.60 unpaid overtime wages.
[136] $13.12 per hour x 20 overtime hours x 52.14 weeks = $13,681.53 unpaid overtime wages
[137] $13.50 per hour x 20 overtime hours x 52.28 weeks = $14,115.60 unpaid overtime wages.
[138] $16.50 per hour x 20 overtime hours x 10.57 weeks = $3,488.10 unpaid overtime wages.
[139] $7.25 minimum wage x 5 days x 15.14 weeks = $548.82 unpaid spread of hours premiums.
[140] $8.00 minimum wage x 5 days x 52.14 weeks = $2,085.60 unpaid spread of hours premiums.
[141] $8.75 minimum wage x 5 days x 52.14 weeks = $2,281.12 unpaid spread of hours premiums.
[142] $9.00 minimum wage x 5 days x 52.28 weeks = $2,352.60 unpaid spread of hours premiums.
[143] $11.00 minimum wage x 5 days x 10.57 weeks = $581.35 unpaid spread of hours premiums.

d. Liquidated Damages

Plaintiff Shyti's allegations all occur after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the post-amendment 100% liquidated damages increase to all minimum wage and overtime premiums owed. In total, the Court calculates that Shyti is entitled to $117,734.95 in liquidated damages.

12. Plaintiff Adan

a. Overtime

The Court has respectfully recommended granting default judgment as to Adan's NYLL and FLSA overtime claims. As Plaintiff Adan's regular rate of pay exceeded the minimum wage at all relevant times, the Court calculates his overtime rate of pay by multiplying his regular rate of pay by 150 percent, and finds that Adan's overtime rate of pay was $15 per hour from October 18, 2010 to December 31, 2012; $16.87 per hour from January 1, 2013 to December 31, 2014; $18.75 from January 1, 2015 through December 31, 2016; and $20.62 from January 1, 2017 to December 15, 2018. Multiplying these rates by the 8 overtime hours worked each week and by the number of weeks in each period, the Court calculates that Adan is owed $3,222 from October 18, 2010 through April 9, 2011;[144] $10,833.60 from April 10, 2011 to December 31, 2012;[145] $14,073.63 from January 1, 2013 through December 31, 2014;[146] $15,663 from January 1, 2015

[144] $15 per hour x 8 overtime hours x 26.85 weeks = $3,222 unpaid overtime wages.
[145] $15 per hour x 8 overtime hours x 90.28 weeks = $10,833.60 unpaid overtime wages.
[146] $16.87 per hour x 8 overtime hours x 104.28 weeks = $14,073.63 unpaid overtime wages.

through December 31, 2016;[147] and $16,825.92 from January 1, 2017 through December 15, 2018,[148] totaling $60,618.15 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff Adan's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that Adan is entitled to $58,201.65 in liquidated damages.[149]

13. Plaintiff Lucero

a. Overtime

The Court has respectfully recommended granting default judgment as to Lucero's NYLL and FLSA overtime claims. From October 18, 2010 to December 31, 2011, Lucero was paid $400 per week, and from January 1, 2012 to December 15, 2013, he was paid $450 per week. Dividing this weekly pay rate by the 40 non-overtime hours worked each week, the Court calculates that Lucero's regular rate of pay from October 18, 2010 to December 31, 2011 was $10 per hour and that it was $11.25 for the remainder of his employment. As these rates exceed the statutory minimum wage at all relevant times, the Court calculates his overtime rate of pay by multiplying Lucero's regular rate of pay by 150 percent and finds that Lucero's overtime

---

[147] $18.75 per hour x 8 overtime hours x 104.42 weeks = $15,663 unpaid overtime wages.
[148] $20.62 per hour x 8 overtime hours x 102 weeks = $16,825.92 unpaid overtime wages.
[149] ($3,222 x 25%) + ($10,833.60 + $14,073.63 + $15,663 + $16,825.92) = $58,201.65 liquidated damages.

wage should have been $15 from October 18, 2010 to December 31, 2011 and $16.87 from January 1, 2012 to December 15, 2013. Multiplying these rates by the 8 overtime hours worked each week and by the number of weeks Lucero was employed, the Court calculates that Lucero is owed $2,982 for the period of October 18, 2010 to April 9, 2011;[150] $4,560 for the period of April 10, 2011 to December 31, 2011;[151] and $13,784.81 for the period of January 1, 2012 to December 15, 2013,[152] totaling of $21,326.81 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff Lucero's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that Lucero is entitled to $19,090.31 in liquidated damages.[153]

14. Plaintiff C. Woskoska

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Plaintiff C. Woskoksa's FLSA and NYLL minimum wage claims, limited to the period of May 15, 2012 through December 31, 2015 and from December 31, 2016 to December 11, 2018. As C. Woskoska was paid no wages other than tips from May 15, 2012 to December 31, 2015 and from

---

[150] $15 per hour x 8 overtime hours x 24.85 weeks = $2,982 unpaid overtime wages.
[151] $15 per hour x 8 overtime hours x 38 weeks = $4,560 unpaid overtime wages.
[152] $16.87 per hour x 8 overtime hours x 102.14 weeks = $13,784.81 unpaid overtime wages.
[153] ($2,982 x 25%) + ($4,560 + $13,784.81) = $19,090.31 liquidated damages.

December 3, 2018 to December 11, 2018, and was paid below the minimum wage from December 31, 2016 to December 2, 2018, the Court calculates the minimum wage owed for this period by multiplying the statutory minimum wage by the number of non-overtime hours worked and by the number of weeks in the period. The Court calculates C. Woskoska is owed $723.18 for the period of May 15, 2012 to June 3, 2012;[154] $23,820.60 for the period of June 4, 2012 to December 30, 2013;[155] $16,684.80 for the period of December 31, 2013 to December 30, 2014;[156] $18,249 for the period of December 31, 2014 to December 30, 2015;[157] $50.40 for December 31, 2015;[158] $2,085.60 for the period of December 31, 2016 to December 30, 2017;[159] $5,776.80 for the period of December 31, 2017 to December 2, 2018;[160] and $665.60 for the period of December 3, 2018 to December 11, 2018,[161] totaling $68,055.98 in unpaid minimum wages.

b. Overtime

The Court has respectfully recommended granting default judgment as to C. Woskoska's NYLL and FLSA overtime claims limited to the periods of June 3, 2012 through December 31, 2012 and December 3, 2018 to December 11, 2018. During both period, C. Woskoska was paid no wages other than tips, and the Court calculates his overtime wages owed by multiplying the statutory minimum wage by 150 percent, the number of overtime hours worked, and the number

---

[154] $7.25 per hour x 35 non-overtime hours x 2.85 weeks = $723.18 unpaid minimum wages.
[155] $7.25 per hour x 40 non-overtime hours x 82.14 weeks = $23,820.60 unpaid minimum wages.
[156] $8 per hour x 40 non-overtime hours x 52.14 weeks = $16,684.80 unpaid minimum wages.
[157] $8.75 per hour x 40 non-overtime hours x 52.14 weeks = $18,249 unpaid minimum wages.
[158] $9.00 per hour x 40 non-overtime hours x 0.14 weeks = $50.40 unpaid minimum wages.
[159] $1.00 per hour x 40 non-overtime hours x 52.14 weeks = $2,085.60 unpaid minimum wages.
[160] $3.00 per hour x 40 non-overtime hours x 48.14 weeks = $5,776.80 unpaid minimum wages.
[161] $13.00 per hour x 40 non-overtime hours x 1.28 weeks = $665.60 unpaid minimum wages.

of weeks during the period. The Court therefore calculates that C. Woskoska is owed $16,708.71 for the period of June 4, 2012 to December 31, 2012;[162] and $49.92 for the period of December 3, 2018 to December 11, 2018,[163] totaling $16,758.63 in unpaid overtime wages.

c. Spread of Hours

The Court has respectfully recommended granting default judgment as to C. Woskoska's NYLL spread of hours claim, limited to the period of June 4, 2012 through December 2, 2018. Multiplying the statutory minimum wage by the number of days each week C. Woskoska worked greater than 10 hours and by the number of weeks in the period, the Court calculates that C. Woskoska is owed $1,529.60 for the period of June 4, 2012 through December 31, 2012;[164] $377 for the period of January 1, 2013 to December 30, 2013;[165] $417.12 for the period of December 31, 2013 to December 30, 2014;[166] $456.22 for the period of December 31, 2014 to December 30, 2015;[167] $9 for December 31, 2015;[168] $469.26 for the period of January 1, 2016 through December 30, 2016;[169] $573.54 for the period of December 31, 2016 to December 30, 2017;[170] and $625.82 for the period of December 31, 2017 to December 2, 2018;[171] totaling $4,457.56 in unpaid spread of hours premiums.

---

[162] $10.87 per hour x 51 overtime hours x 30.14 weeks = $16,708.71 unpaid overtime wages.
[163] $19.50 per hour x 2 overtime hours x 1.28 weeks = $49.92 unpaid overtime wages.
[164] $7.25 minimum wage x 7 days x 30.14 weeks = $1,529.60 unpaid spread of hours premiums.
[165] $7.25 minimum wage x 1 day x 52 weeks = $377 unpaid spread of hours premiums.
[166] $8 minimum wage x 1 day x 52.14 weeks = $417.12 unpaid spread of hours premiums.
[167] $8.75 minimum wage x 1 day x 52.14 weeks = $456.22 unpaid spread of hours premiums.
[168] $9.00 minimum wage x 1 day = $9 unpaid spread of hours premiums.
[169] $9 minimum wage x 1 day x 52.14 weeks = $469.26 unpaid spread of hours premiums.
[170] $11.00 minimum wage x 1 day x 52.14 weeks = $573.54 unpaid spread of hours premiums.
[171] $13.00 minimum wage x 1 day x 48.14 weeks = $625.82 unpaid spread of hours premiums.

d. Liquidated Damages

Plaintiff C. Woskoska's allegations all occur after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the post-amendment 100% liquidated damages increase to all minimum wage and overtime premiums owed. In total, the Court calculates that C. Woskoska is entitled to $89,272.17 in liquidated damages.

15. Plaintiff Cordova

a. Minimum Wage

The Court has respectfully recommended granting default judgment as to Cordova's FLSA and NYLL minimum wage claims for the period of December 31, 2017 to March 31, 2019. Cordova's regular rate of pay during this period was $12.50 per hour. The minimum wage from December 31, 2017 to December 30, 2018 was $13 and Cordova was therefore underpaid by $0.50 per hour. The minimum wage from December 31, 2018 to April 31, 2019 was $15 and Cordova was therefore underpaid by $2.50 per hour. Multiplying these rates by the number of non-overtime hours worked and by the number of hours worked during the period, the Court calculates that Cordova is owed $1,042.80 for the period of December 31, 2018 to December 30, 2018;[172] and $1,300 for the period of December 31, 2018 to March 31, 2019,[173] totaling $2,342.80 in unpaid minimum wages.

b. Overtime

The Court has respectfully recommended that the District Court grant default judgment as to Cordova's NYLL and FLSA overtime claims, limited to the period of October 18, 2010

---

[172] $0.50 per hour x 40 non-overtime hours x 52.14 weeks = $1,042.80 unpaid minimum wages.
[173] $2.50 per hour x 40 non-overtime hours x 13 weeks = $1,300 unpaid minimum wages.

through March 31, 2020. At all points during which Cordova's regular rate of pay fell below the minimum wage, the Court calculates Cordova's overtime wage by multiplying the statutory minimum wage by 150 percent. At all other times, the Court multiplies Cordova's actual wage by 150 percent to determine his overtime rate of pay.

The Court calculates that Cordova's overtime rate was $15 per hour from October 18, 2010 to December 31, 2010; $18.75 from January 1, 2011 to March 31, 2019; and $25.50 from April 1, 2019 to March 31, 2020. From October 18, 2010 to March 31, 2019, Cordova was paid no overtime wages. Multiplying his overtime rate by the 8 weekly hours of overtime worked, by the number of weeks in each period, the Court calculates that Cordova is owed $1,285.20 in overtime wages for the period between October 18, 2010 and December 31, 2010 when his overtime rate was $15 per hour;[174] $2,121 from January 1, 2011 to April 9, 2011 when his overtime rate was $18.75 per hour;[175] and $62,421 from April 10, 2011 to March 31, 2019 when his overtime rate remained $18.75 per hour.[176]

From April 1, 2019 to March 31, 2020, he was paid a regular wage of $17 per hour and an overtime wage of $19 per hour. Cordova was therefore underpaid by $6.50 per overtime hour worked. Multiplying this underpayment by the 8 hours of overtime worked each week over the 52.28-week period, the Court calculates that Cordova is owed $2,718.56 in unpaid overtime wages for the period of April 1, 2019 and March 31, 2020.[177] In total, the Court calculates that Cordova is owed $68,545.76 in unpaid overtime wages.

---

[174] $15 per hour x 8 overtime hours x 10.71 weeks = $1,285.20 unpaid overtime wages.
[175] $18.75 per hour x 8 overtime hours x 14.14 weeks = $2,121 unpaid overtime wages.
[176] $18.75 per hour x 8 overtime hours x 416.14 weeks = $62,421 unpaid overtime wages.
[177] $6.50 per hour x 8 overtime hours x 52.28 weeks = $2,718.56 unpaid overtime wages.

c. Liquidated Damages

Plaintiff M. Cordova's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that Cordova is entitled to $70,888.56 in liquidated damages.

16. Plaintiff A. Moreno

a. Overtime

The Court has respectfully recommended granting default judgment as to A. Moreno's NYLL and FLSA overtime claims, limited to the period of October 18, 2010 to December 31, 2015. A. Moreno was paid $750 per week from October 18, 2010 to December 31, 2011; $800 per week from January 1, 2012 to December 31, 2013, and $900 per week from January 1, 2015 to December 31, 2015. Dividing these weekly pay rates by the 40 hours of non-overtime hours worked each week, the Court calculates that A. Moreno's regular rate of pay was $18.75 per hour from October 18, 2010 to December 31, 2015; $20 per hour from January 1, 2012 to December 31, 2013, and $22.50 from January 1,2014 to December 31, 2015.

Multiplying these regular rates of pay by 150 percent, the 8 hours of overtime worked each week, and the number of weeks in the period, the Court calculates that A. Moreno is owed $5,590.25 for the period of October 18, 2010 to April 9, 2011;[178] $8,548.48 for the period of

[178] $28.12 per hour x 8 overtime hours x 24.85 weeks = $5,590.25 unpaid overtime wages.

April 10, 2011 to December 31, 2011;[179] $37,540.80 for the period of January 1, 2012 through December 30, 2014;[180] and $14,115.60 for the period of December 31, 2014 through December 31, 2015,[181] totaling $65,795.13 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff A. Moreno's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that A. Moreno is entitled to $61,602.44 in liquidated damages.[182]

17. Plaintiff De Gante

a. Overtime

The Court has respectfully recommended granting default judgment as to De Gante's NYLL and FLSA overtime claims, limited to the period of October 18, 2010 to February 28, 2019. Plaintiff De Gante was paid $780 per week from October 18, 2010 to December 31, 2017 and $880 per week from January 1, 2018 to March 31, 2019. Dividing this weekly pay rate by the 40 hours of non-overtime hours worked, the Court calculates that De Gante received a regular rate of pay of $19.50 per hour from October 18, 2010 to December 31, 2017 and $22 per hour from January 1, 2017 to February 28, 2019. Multiplying these rates by 150 percent, the 14

---

[179] $28.12 per hour x 8 overtime hours x 38 weeks = $8,548.48 unpaid overtime wages.
[180] $30 per hour x 8 overtime hours x 156.42 weeks = $37,540.80 unpaid overtime wages.
[181] $33.75 per hour x 8 overtime hours x 52.28 weeks = $14,115.60 unpaid overtime wages.
[182] ($5,590.25 x 25%) + ($8,548.48 + $37,540.80 + $14,115.60) = $61,602.44 liquidated damages.

hours of overtime worked each week, and the number of weeks in the period, the Court calculates that De Gante is owed $10,176.07 for the period of October 18, 2010 to April 9, 2011;[183] $143,791.83 for the period of April 10, 2011 to December 31, 2017;[184] and $27,983.34 for the period of January 1, 2018 through February 28, 2019,[185] totaling $181,951.24 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff De Gante's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that De Gante is entitled to $174,319.18[186] in liquidated damages.

18. Plaintiff Martinez

a. Overtime

The Court has respectfully recommended granting default judgment as to Martinez's NYLL and FLSA overtime claims. Martinez was paid $500 per week from October 18, 2010 to June 15, 2013. Dividing this number by the 40 non-overtime hours worked each week, the Court calculates his regular rate of pay was $12.50. Multiplying this rate by 150 percent, the 14 hours

---

[183] $29.25 per hour x 14 overtime hours x 24.85 weeks = $10,176.07 unpaid overtime wages.
[184] $29.25 per hour x 14 overtime hours x 351.14 weeks = $143,791.83 unpaid overtime wages.
[185] $33 per hour x 14 overtime hours x 60.57 weeks = $27,983.34 unpaid overtime wages.
[186] $10,176.07 x 25%) + ($143,791.83 + $27,983.34) = $174,319.18 liquidated damages.

of overtime hours worked each week, and the number of weeks in the period, the Court calculates that Martinez is owed $6,523.12 for the period of October 18, 2010 to April 9, 2011;[187] and $29,925 for the period of April 10, 2011 through June 15, 2013,[188] totaling $36,448.12 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff Martinez's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that Martinez is entitled to $31,555.78 in liquidated damages.[189]

19. Plaintiff Rivera

a. Overtime

The Court has respectfully recommended granting default judgment as to Rivera's NYLL and FLSA overtime claims. Rivera was paid $430 hours per week from October 18, 2010 to June 15, 2013. Dividing this number by the 40 non-overtime hours worked each week, the Court calculates his regular rate of pay was $10.75 per hour. Multiplying this rate by 150 percent, the 2 hours of overtime hours worked each week, and the number of weeks in the period, the Court calculates that Rivera is owed $762.40 for the period of October 18, 2010 to April 9, 2011;[190]

---

[187] $18.75 per hour x 14 overtime hours x 24.85 weeks = $6,523.12 unpaid overtime wages.
[188] $18.75 per hour x 14 overtime hours x 114 weeks = $29,925 unpaid overtime wages.
[189] ($6,523.12 x 25%) + $29,925 = $31,555.78 liquidated damages.
[190] $15.34 per hour x 2 overtime hours x 24.85 weeks = $762.40 unpaid overtime wages.

and $3,497.52 for the period of April 19, 2011 through June 15, 2013,[191] totaling $4,259.92 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff Rivera's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that Rivera is entitled to $3,688.12 in liquidated damages.

20. Plaintiff M. Moreno

a. Overtime

The Court has respectfully recommended granting default judgment as to M. Moreno's NYLL and FLSA overtime claims. His pay and the number of overtime hours he worked varied throughout his employment. From October 18, 2010 until December 31, 2018, M. Moreno was paid $900 per week. From January 1, 2019 to March 31, 2019, he was paid $1,000 per week. Dividing these rates by the 40 non-overtime hours worked each week, the Court calculates his regular rate of pay was $22.50 from October 18, 2010 to December 31, 2018 and $25 per hour from January 1, 2019 through March 31, 2019. Multiplying this rate by 150 percent, the overtime hours worked each week, and the number of weeks in the period, the Court calculates that M. Moreno is owed $5,167.80 for the period of October 18, 2010 through February 28,

[191] $15.34 per hour x 2 overtime hours x 114 weeks = $3,497.52 unpaid overtime wages.

2011;[192] $17,539.53 for the period of March 1, 2011 through April 9, 2011;[193] $14,257.68 for the period of April 10, 2011 through September 30, 2011;[194] $5,861.70 for the period of October 1, 2011 through February 29, 2012;[195] $17,539.53 for the period of March 1, 2012 through September 30, 2012;[196] $5,823.90 for the period of October 1, 2012 through February 28, 2013;[197] $17,539.53 for the period of March 1, 2013 through September 30, 2013;[198] $3,510 for the period of October 1, 2013 through December 30, 2013; [199] $2,313.90 for the period of December 31, 2013 through February 28, 2014;[200] $17,539.53 for the period of March 1, 2014 through September 30, 2014;[201] $3,510 for the period of October 1, 2014 through December 30, 2014; [202] $2,313.90 for the period of December 31, 2014 through February 28, 2015;[203] $17,539.53 for the period of March 1, 2015 through September 30, 2015;[204] $3,510 for the period of October 1, 2015 through December 30, 2015; [205] $2,351.70 for the period of December 31, 2015 through February 29, 2016;[206] $17,539.53 for the period of March 1, 2016 through September 30, 2016;[207] $3,510 for the period of October 1, 2016 through December 30, 2016;[208]

---

[192] $33.75 per hour x 8 overtime hours x 19.14 weeks = $5,167.80 unpaid overtime wages.
[193] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[194] $33.75 per hour x 17 overtime hours x 24.85 weeks = $14,257.68 unpaid overtime wages.
[195] $33.75 per hour x 8 overtime hours x 21.71 weeks = $5,861.70 unpaid overtime wages.
[196] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[197] $33.75 per hour x 8 overtime hours x 21.57 weeks = $5,823.90 unpaid overtime wages.
[198] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[199] $33.75 per hour x 8 overtime hours x 13 weeks = $3,510 unpaid overtime wages.
[200] $33.75 per hour x 8 overtime hours x 8.57 weeks = $2,313.90 unpaid overtime wages.
[201] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[202] $33.75 per hour x 8 overtime hours x 13 weeks = $3,510 unpaid overtime wages.
[203] $33.75 per hour x 8 overtime hours x 8.57 weeks = $2,313.90 unpaid overtime wages.
[204] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[205] $33.75 per hour x 8 overtime hours x 13 weeks = $3,510 unpaid overtime wages.
[206] $33.75 per hour x 8 overtime hours x 8.71 weeks = $2,351.70 unpaid overtime wages.
[207] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[208] $33.75 per hour x 8 overtime hours x 13 weeks = $3,510 unpaid overtime wages.

$2,351.70 for the period of December 31, 2016 to February 28, 2017;[209] $17,539.53 for the period of March 1, 2017 through September 30, 2017;[210] $3,510 for the period of October 1, 2017 through December 30, 2017;[211] $2,351.70 for the period of December 31, 2017 through February 28, 2018;[212] $17,539.53 for the period of March 1, 2018 through September 30, 2018;[213] $3,547.80 for the period of October 1, 2018 through December 31, 2018; [214] and $2,526 for the period of January 1, 2019 through February 28, 2019; [215] $2,817.75 for the period of March 1, 2019 through March 31, 2019,[216] totaling $209,551.77 in unpaid overtime wages.

b. Liquidated Damages

Plaintiff M. Moreno's allegations occur both before and after the NYLL liquidated damages provision was amended on April 9, 2011. The Court applies the pre-amendment 25% liquidated damages increase on all unpaid minimum wages and overtime premiums accrued on and before April 9, 2011, and the post-amendment 100% liquidated damages increase to all those occurring on or after April 10, 2011. In total, the Court calculates that M. Moreno is entitled to $205,675.92 in liquidated damages.[217]

---

[209] $33.75 per hour x 8 overtime hours x 8.71 weeks = $2,351.70 unpaid overtime wages.
[210] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[211] $33.75 per hour x 8 overtime hours x 13 weeks = $3,510 unpaid overtime wages.
[212] $33.75 per hour x 8 overtime hours x 8.71 weeks = $2,351.70 unpaid overtime wages.
[213] $33.75 per hour x 17 overtime hours x 30.57 weeks = $17,539.53 unpaid overtime wages.
[214] $33.75 per hour x 8 overtime hours x 13.14 weeks = $3,547.80 unpaid overtime wages.
[215] $37.50 per hour x 8 overtime hours x 8.42 weeks = $2,526 unpaid overtime wages.
[216] $37.50 per hour x 17 overtime hours x 4.42 weeks = $2,817.75 unpaid overtime wages.
[217] ($5,167.80 x 25%) + ($17,539.53 + $14,257.68 + $5,861.70 + $17,539.53 + $5,823.90 + $17,539.53 + $3,510 + $2,313.90 + $17,539.53 + $3,510 + $2,313.90 + $17,539.53 + $3,510 + $2,351.70 + $17,539.53 + $3,510 + $2,351.70 + $17,539.53 + $3,510 + $2,351.70 + $17,539.53 + $3,547.80 + $2,526 + $2,817.75) = $205,675.92 liquidated damages.

21. <u>Total Damages</u>

In total, the Court respectfully recommends awarding $3,057,884.25 in damages as follows:

| **Plaintiff** | **Minimum Wages** | **Overtime Wages** | **Spread of Hours Premiums** | **Midpoint** | **Liquidated Damages** | |
|---|---|---|---|---|---|---|
| Omar | $27,175.90 | $117,497.62 | $9,138.68 | Oct. 29, 2013 | $150,114.93 | |
| E. Garcia | $0 | $0 | $7,012.46 | Aug. 16, 2013 | $6,336.85 | |
| C. Garcia | $24,348.11 | $8,284.67 | $2,762.83 | Oct. 25, 2011 | $28,575.03 | |
| Gula | $55,901.40 | $50,217.22 | $6,697.89 | Mar. 31, 2013 | $110,003.90 | |
| Basantes | $55,015.50 | $62,602.22 | $8,443.24 | Aug. 15, 2014 | $126,060.95 | |
| Espinal | $55,766.16 | $19,554.80 | $3,060.71 | Apr. 9, 2015 | $78,381.67 | |
| S. Woskoska | $0 | $0 | $0 | June 22, 2016 | $0 | |
| C. Alatorre | $91,620.00 | $10,018.68 | $10,001.96 | Nov. 22, 2015 | $111,640.64 | |
| Ordoñez | $29,177.60 | $18,355.20 | $3,923.97 | Sept. 15, 2013 | $51,456.77 | |
| M. Alatorre | $0 | $65,641.81 | $0 | Jan. 8, 2015 | $63,220.42 | |
| Shyti | $62,795.20 | $47,090.26 | $7,849.49 | June 15, 2015 | $117,734.95 | |
| Adan | $0 | $60,618.15 | $0 | Nov. 16, 2014 | $58,201.65 | |
| Lucero | $0 | $21,326.81 | $0 | May 17, 2012 | $19,090.31 | |
| C. Woskoska | $68,055.98 | $16,758.63 | $4,457.56 | Oct. 22, 2015 | $89,272.17 | |
| Cordova | $2,342.80 | $68,545.76 | $0 | Jan. 8, 2015 | $70,888.56 | |
| A. Moreno | $0 | $65,795.13 | $0 | Jan. 8, 2015 | $61,602.44 | |
| De Gante | $0 | $181,951.24 | $0 | Jan. 8, 2015 | $174,319.18 | |
| Martinez | $0 | $36,448.12 | $0 | Feb. 15, 2012 | $31,555.78 | |
| Rivera | $0 | $4,259.92 | $0 | Feb. 15, 2012 | $3,688.12 | |
| M. Moreno | $0 | $209,551.77 | $0 | Jan. 8, 2015 | $205,675.92 | **Combined Total:** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Subtotals:** | $472,198.65 | $1,064,518.01 | $63,348.79 | | $1,557,820.24 | $3,157,885.69 |

VI. Attorneys' Fees and Costs

Plaintiffs seek reimbursement of $1,484,708.99 in attorneys' fees, which they calculate as one third of Plaintiffs' recovery and $8,928.45 in costs for service, mailings, depositions and transcripts, filing fees in this Court and bankruptcy court, and mediation costs. (Third Mot. for Default Judgment at 13).

Although both the FLSA and the NYLL provide for a recovery of attorneys' fees and costs for successfully prosecuting wage and hour claims, "[i]t is more efficient to evaluate an award of costs and fees after determination of all claims, rather than on a piecemeal basis." Yurman Studio, Inc. v. Castaneda, No. 07 CV 1241, 2008 WL 4298582, at *2 (S.D.N.Y. Sept. 19, 2008). Here, the Court has not recommended granting default judgment as to all Plaintiffs and it would therefore be inefficient to award attorneys' fees and costs before awarding final judgment on all claims. The Court therefore respectfully recommends denying attorneys' fees and costs without prejudice to renew the fee application once final judgment has been entered as to all claims.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the District Court grant in part Plaintiffs' Motion for Default Judgment and deny in part without prejudice to renew. The Court also respectfully recommends that the District Court grant Plaintiffs $3,157,885.69 in damages, along with pre-judgment interest from the midpoint of each Plaintiff's employment, and post-judgment interest. The Court respectfully recommends

denying without prejudice Plaintiffs' request for attorneys' fees and costs with leave to renew once final judgment has been resolved as to all Plaintiffs.

Plaintiffs are directed to serve this Report and Recommendations on Defendants by **September 2, 2026** and file an affidavit or declaration of service on the docket immediately thereafter.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 1, 2026

/s/ Peggy Cross-Goldenberg
Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York